**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CYNTHIA BROWN, CARLOS BUFORD, and**
**JENNY SUE ROWE**,

Plaintiffs,

v.                                                                       CASE NO._____

**DAVID YOST**,
in his Official Capacity as **Ohio**
**Attorney General**,

Defendant.

**EMERGENCY ELECTION LITIGATION**

**PRELIMINARY INJUNCTION and TRO REQUESTED**

_____/

**VERIFIED COMPLAINT**

**Introduction**

1.     This is an original action brought under 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, against David Yost, Ohio's Attorney General, in his official capacity, seeking declaratory and injunctive relief ordering Yost to certify Plaintiffs' proposed citizen-initiated constitutional amendment, "Protecting Ohioans' Constitutional Rights," along with its summary, *see* Exhibit 3, to Ohio' Ballot Board as required by O.R.C. § 3519.01(A).

2.     Plaintiffs are three Ohio voters who constitute the committee that is required under Ohio law, O.R.C. § 3519.02, to propose statewide citizen-initiated constitutional

1

amendments.

3.     Plaintiffs, acting as that committee, have proposed an amendment to Ohio's Constitution entitled "Protecting Ohioans' Constitutional Rights." *See* Exhibit 3.

4.     Defendant is Ohio's Attorney General.

5.     Under O.R.C. § 3519.01(A), Defendant is charged with determining whether an otherwise properly proposed[1] constitutional amendment's summary represents a "fair and truthful statement of the proposed law or constitutional amendment" submitted by the committee. If it does, then he is required to "so certify and then forward the submitted petition to the Ohio ballot board for its approval …." *Id*.

6.     On March 5, 2024, Plaintiffs properly submitted to Defendant, Ohio's Attorney General, their proposed constitutional amendment, along with a summary and one thousand supporting signatures for his review under O.R.C. § 3519.01(A). *See* Exhibit 3.

7.     Rather than certify the proposed constitutional amendment to the Ballot Board, Defendant on March 14, 2024 rejected Plaintiffs' summary as not being "fair and truthful." *See* Exhibit 4.

8.     Defendant used four reasons to support his rejection: First, Defendant objected to summary's inclusion of the phrase "or any subset thereof" with its description of the "immunities and defenses" that the amendment abrogated. Because Defendant's objection contradicts his prior objection levied on November 17, 2023 against Plaintiffs' summary for not including this phrase in its description of government actors' immunities and defenses, it makes no sense. Inclusion and omission of the exact same phrase cannot both be objectionable. But that is the

---

[1] That is, one that comes from a committee organized under § 3519.02 and that is supported by at least one thousand voters' signatures.

kind of inverted logic Defendant has used to keep Plaintiffs' amendment off the ballot.

9.      Next, Defendant objected that Plaintiffs' revised summary misleadingly omitted the phrase "or any subset thereof" immediately following the words "government actors." *See* Exhibit 4. The text of Plaintiffs' proposed amendment (which Defendant has no authority to review) states that "[i]n any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof." *See* Exhibit 3. Plaintiffs' revised summary now accurately describes this text by stating that "[i]n any action filed under this Amendment, no government actor shall enjoy or may rely upon any immunities or defenses, or any subset thereof, which are only available to government actors." *See* Exhibit 3 at 1.

10.      Notwithstanding this practically verbatim summary, Defendant objected that "the misstatement [i.e., omission of the phrase "or any subset thereof" following "government actors"] results in the summary's omission of this broader, undefined category of 'any subset' of 'government actors' created by the proposed amendment." *See* Exhibit 4. This resulted, according to Defendant, in the summary's not being fair and truthful.

11.      Defendant's objection is nonsensical and illogical. The summary is practically a verbatim quotation of the amendment's text. To be sure, it omits saying "subsets" of government actors, but such a phrase would and could add nothing to its meaning. Subsets, after all, cannot be larger than the sets that encompasses them. They cannot contain a "broader" group of government actors, as claimed by Defendant, that has somehow been omitted. *See* CHRISTOPHER CLAPHAM, THE CONCISE OXFORD DICTIONARY OF MATHEMATICS: PAPERBACK REFERENCE 269 (2d ed. 1996) ("The set A is a subset of the set B if every element of A is an element of B."); WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1661 (2d ed. 1983) (stating that the

noun "set" may include "a group of persons"). No reasonable reader would think that the summary had omitted a "broader" group of government actors by omitting mention of a smaller subset group. Defendant's objection is ridiculous.

12.     Defendants' third objection in his March 14, 2024 rejection letter was that Plaintiffs had misrepresented the proposed amendment's statute of limitations is laughable. The proposed amendment's statute of limitations states that "[a] claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred." *See* Exhibit 3. Plaintiffs' March 2024 summary, by way of comparison, states that "[a] claim made under this Amendment must be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred." *See* Exhibit 3 at 2. The two are virtually identical.

13.     Because Plaintiffs also added a reiterative sentence stating that "[a]ll claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred," *id.*, however, Defendant objected that Plaintiffs' description was misleading. "These sentences," he claimed, "read together pose a significant risk of confusing and misleading any reader of the summary." *See* Exhibit 4 at 2. "The sentences lead the reader to believe" he claimed, "that there is some distinction or difference in the proposed amendment between the statute of limitations applicable to '[a] claim made under this Amendment' as opposed to '[a]ll claims." *Id*.

14.     No reasonable reader would infer from Plaintiffs' description of the proposed amendment's statute of limitations that it was meant to alter statutes of limitations across the board in Ohio. No reasonable reader would conclude that the six-year statute of limitations applied to everything. The summary was clear that it only applied to claims "under this

Amendment." Only someone intent on contriving misunderstanding would read the summary in any other way.

15.     Defendant's fourth objection was that the title of the proposed amendment, which is contained in its text, is itself misleading. The textual title of the proposed amendment, as stated above, is "Protecting Ohioans' Constitutional Rights." *See* Exhibit 3 at 3. Plaintiffs' summary accurately describes this title by verbatim quoting it, stating that "[t]he Protecting Ohioans' Constitutional Rights Amendment creates a private cause of action …." *Id.* at 1. Plaintiffs' summary was thus a verbatim statement of the proposed amendment's title. The summary could not be misleading. It was nothing less than "fair and truthful."

16.     Because the proposed amendment's title is part of the proposed amendment's text, moreover, Defendant has no lawful authority to address it. His job is to judge whether the <u>summary</u> accurately describes what is in the text, not to decide whether the <u>text</u> of the proposed amendment is "fair and truthful."

17.     Even assuming that Defendant has the authority to review a proposed amendment's title, Defendant's objection that Plaintiffs' title "offers a subjective hypothesis (that eliminating such defenses will 'protect' the constitutional rights of citizens) regarding the proposed amendment in lieu of an objective description of its character and purpose (that it creates a cause of action notwithstanding those defenses)," *id.*, ignores decades of understandings going back to passage of the Forty-second Congress's passage of the Ku Klux Klan Act of 1871 (also known as 42 U.S.C. § 1983), that objectively recognize that the prophylactic creation of a private constitutional cause of action, like that found in § 1983, deters constitutional violations and thereby protects constitutional rights. *See*, *e.g.*, *Board of Regents v. Tomanio*, 446 U.S. 478, 488 (1980) (observing that "two of the principal policies embodied in § 1983 [have been

5

recognized] as deterrence and compensation"); Stephen W. Miller, Note, *Rethinking Prisoner Litigation: Shifting from Qualified Immunity to a Good Faith Defense in § 1983 Prisoner Lawsuits*, 84 NOTRE DAME L. REV. 929, 933 (2009) ("The general purposes underlying § 1983 litigation are deterring officials from using their positions to deprive individuals of their rights protected by the Constitution or federal statutes, and providing victims of such deprivations with a remedy in federal court."). That Defendant does not like the content of Plaintiffs' proposed amendment, or agree with its thesis that deterring constitutional violations protects individual rights, is no reason for his rejecting its summary.

18.     Defendant improperly and without foundation rejected Plaintiffs' summary and unlawfully refused to certify it and its accompanying proposed amendment to the Ohio Ballot Board as required by O.R.C. § 3519.01(A).

19.     Defendant's refusal to certify Plaintiffs' summary means that Plaintiffs cannot begin collecting the hundreds of thousands of signatures they will need by July 3, 2024 in order to have their citizen-initiative placed on Ohio's November 5, 2024 general election ballot.

20.     Defendant's rejection (regardless of the reasons) and Ohio's accompanying failure to provide timely de novo judicial review violate the First Amendment.

### Ohio Law

21.     Under Ohio law, for Plaintiffs to place their proposed citizen-initiative on Ohio's November 5, 2024 ballot they must first provide a summary of their proposed amendment, together with 1000 supporting signatures and the text of the proposed amendment, to Defendant. *See* O.R.C. § 3519.01(A).

22.     Defendant then has ten days to certify that the summary is a "fair and truthful" description of the proposed amendment and then immediately send both it and the proposed

amendment to Ohio's Ballot Board for its review.

23.     Should Defendant refuse to certify a summary, as he has done in this case, the proposed amendment is stopped dead in its tracks.

24.     A proposed amendment's supporters cannot begin collecting the hundreds of thousands of signatures needed by July 3, 2024 to place their proposed amendment on Ohio's ballot if Defendant refuses to certify it, and must instead start all over again and lose each day of signature-collection that otherwise could be taking place.

25.     The Ohio Supreme Court recently summarized this process in *State ex rel. DeBlase v. Ohio Ballot Board*, 2023-Ohio-1823, ¶¶ 4 & 5 (June 1, 2023):

> Under R.C. 3519.01(A), proponents of a constitutional amendment must submit a preliminary initiative petition and summary thereof to the attorney general. The petition must contain the signatures of at least 1,000 qualified electors of the state. *Id.* If the attorney general determines that the summary is "a fair and truthful statement" of the proposed amendment, the attorney general "shall so certify" and forward the petition to the ballot board for its approval. *Id.*
>
> After receiving a certified preliminary initiative petition from the attorney general, the ballot board must examine it within ten days "to determine whether it contains only one proposed * * * constitutional amendment so as to enable the voters to vote on a proposal separately." R.C. 3505.062(A). If the board determines that the petition contains only one proposed amendment, "it shall certify its approval to the attorney general." *Id.* The attorney general shall then file with the secretary of state a verified copy of the proposed amendment and the summary of it certified by the attorney general. *Id.* and R.C. 3519.01(A).

26.     Once all of this is done, the Secretary of State selects a formal title for the initiative that will appear on the ballot. *See id.; id.* Sec. 1g; R.C. 3505.062(A) and 3519.01(A).

27.     The capstone of this long and arduous process is the collection of more than 400,000 signatures from at least 44 of Ohio's 88 counties. The crux, meanwhile, is the Attorney General's certification. Nothing can happen until he certifies the proposed amendment's summary, and that is what is preventing Plaintiffs from moving forward

with their proposed amendment.

28.    Without the Attorney General's certification, a proposed amendment's supporters must either start all over again, write a new summary, gather 1000 signatures from voters, and submit this once again to the Attorney General, or file an original action in the Ohio Supreme Court challenging the Attorney General's decision. Either choice involves delay.

29.    Section 3519.01(C) of the Ohio Revised Code vests in the Ohio Supreme Court original jurisdiction to review the Attorney General's decision.

30.    Ohio law fails to require that any such challenge in the Ohio Supreme Court must be expedited or promptly considered.

31.    Nothing in the Ohio Supreme Court's rules of practice require expedited proceedings of election challenges that are filed more than 90 days before election day. Instead, the Ohio Supreme Court's rules only require that election proceedings be expedited when they are filed within 90 days of election day.

32.    Outside this limited 90-day time-frame, whether and how to expedite election challenges, including those under O.R.C. § 3519.01(C), are left to the discretion of the Ohio Supreme Court.

33.    Ohio's mandamus process of review, which applied under O.R.C. § 3519.01(C), is not de novo. Instead, executive ballot decisions that are challenged by mandamus can only be reviewed for an abuse of discretion. This means that so long as the decisions are not arbitrary, capricious or clearly violative of law they will not be set aside. *See*, *e.g*., *State ex rel. Hawkins v. Pickaway County Board of Elections*, 1991-Ohio-221, 75 Ohio St.3d 275, 277, 662 N.E.2d 17, 19 (citing *State ex rel. Rife v. Franklin Cty. Bd. of Elections* (1994), 70 Ohio St.3d 632, 633–634, 640 N.E.2d 522, 523–524). This is consistent with Ohio's treatment of mandamus generally,

whereby an abuse of discretion can be found only when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10; *see also State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015); *State ex rel. Sensible Norwood v. Hamilton County Board of Elections*, 148 Ohio St.3d 176, 69 N.E.3d 696 (2016).

### Application of Ohio Law to Plaintiffs

34.    Plaintiffs -- after having their proposed amendment and summary rejected by the Attorney General on several occasions between February of 2023 and March of 2024 – finally gave up on the Attorney General's review process and sought review by mandamus under O.R.C. § 3519.01(C) in the Ohio Supreme Court on March 20, 2024.

35.    Plaintiffs' complaint in the Ohio Supreme Court was filed just six days after Defendant's rejection of their summary.

36.    On the same day they filed their complaint in the Ohio Supreme Court, the Plaintiffs moved that Court to expedite the proceedings. The deadline of July 3, 2024, after all, was closely approaching and the Plaintiffs still needed to begin collecting hundreds of thousands of signatures.

37.    Plaintiffs specifically and formally moved the Ohio Supreme Court to conclude briefing by April 1, 2024.

38.    Defendant had previously rejected this proposed schedule -- stating in an email to Plaintiffs' counsel that "This is not an expedited election matter so the normal timelines apply," when Plaintiffs asked Defendant to agree to expedited briefing.

39.    After being ordered to respond to Plaintiffs' March 20, 2024 motion to expedite by March 25, 2024, Defendant argued to the Ohio Supreme Court that "very limited

circumstances in which an original action can be expedited" exist, *see State ex rel. Brown v. Yost*, No. 2024-0409, Respondent's Opposition to Relators' Motion to Expedite this Original Action in Mandamus, at 1,[2] Plaintiffs "cannot establish any necessity for an expedited schedule in this case," *id.* at 2, expedited review would somehow interfere with "the Attorney General's ability to prepare and defend his decision to reject Relators' summary of the proposed constitutional amendment," *id*. at 3, and that Plaintiffs' initiative would likely never "see a general election ballot" anyway given Ohio's demanding remaining requirements (including signature collection), and thus the motion to expedite should be denied. *Id*. at 4.

40.     The Ohio Supreme Court on March 26, 2024 denied expedited review. *See State ex rel. Brown v. Yost*, No. 2024-0409, Order (Ohio S. Ct., March 26, 2024) (https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2024/2024-ohio-1131.pdf).

## Jurisdiction and Venue

41.     Federal jurisdiction is claimed under the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

42.     Venue lies in this district under 28 U.S.C.§ 1391(b).

## Count One (Facial First Amendment Challenge)

43.     Plaintiffs herein incorporate the allegations made in the paragraphs above.

44.     Ohio's delegation to Defendant of the authority to reject summaries of proposed constitutional amendments pursuant to O.R.C. § 3519.01(A) coupled with its failure to provide for immediate judicial review and resolution in the Ohio Supreme Court under O.R.C. § 3519.01(C) facially violates the First Amendment (as incorporated through the Fourteenth

---

[2] file:///C:/Users/markr/Documents/Initiatives/YostOppositionExpedite.pdf.

Amendment) to the United States Constitution and 42 U.S.C. § 1983.

45.     Defendant's enforcement of O.R.C. § 3519.01(A) without the availability of immediate judicial review and resolution facially violates the First Amendment (as incorporated through the Fourteenth Amendment) to the United States Constitution and 42 U.S.C. § 1983.

### Count Two (As-Applied First Amendment Challenge)

46.     Plaintiffs herein incorporate the allegations made in the paragraphs above.

47.     Defendant refused to agree to any form of expedited review in the Ohio Supreme Court.

48.     Defendant formally objected to expedited review in the Ohio Supreme Court.

49.     The Ohio Supreme Court's Rules of Practice only provide for expedited review when election matters are filed within 90 days of elections.

50.     In order to qualify a statewide citizen-initiative for Ohio's November general election ballot a committee must complete all necessary steps 125 days before the election.

51.     Statewide citizen-initiative challenges that involve Defendant's refusal to certify summaries, like that in Plaintiffs' case here, cannot be considered under the Ohio Supreme Court's rule that mandates expedited review in election proceedings.

52.     The Ohio Supreme Court retains discretion to expedite reviews in challenges like Plaintiffs' challenge in the present case.

53.     Defendant refused to agree to expedited review in the Ohio Supreme Court.

54.     Defendant formally objected to expedited review in the Ohio Supreme Court.

55.     The Ohio Supreme Court refused to expedite review and hear Plaintiffs challenge under any form of emergency scheduling.

56.     In the absence of expedited proceedings in the Ohio Supreme, Defendant's

answer is not due for 21 days, motions to dismiss are allowed, and the Ohio Rules of Civil Procedure supplement the Ohio Supreme Court's Rules of Practice.

57.     In the absence of expedited proceedings, the Ohio Supreme Court is not likely to resolve Plaintiffs' case within weeks or months.

58.     In the absence of expedited proceedings, when the Ohio Supreme Court might resolve Plaintiffs' mandamus action cannot be determined.

59.     Defendant's and Ohio's application of its laws and rules in this case have denied Plaintiffs' a "timely resolution" of their challenge to Defendant's rejection of their summary.

60.     Defendant, applying and following Ohio law, has violated Plaintiffs' First Amendment rights as-applied.

## **RELIEF REQUESTED**

61.     WHEREFORE, Plaintiffs request the following relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b):

A.     a declaration under 28 U.S.C. § 2201 that O.R.C. §§ 3519.01(A) & (C) are facially unconstitutional under the First Amendment;

B.      a declaration under 28 U.S.C. § 2201 that O.R.C. §§ 3519.01(A) & (C) are unconstitutional as-applied under the First Amendment;

C.     a preliminary injunction or TRO under 42 U.S.C. § 1983 requiring that Defendant certify Plaintiffs' summary and proposed amendment to the Ohio Ballot Board pursuant to O.R.C. § 3519.01(A);

D.     a permanent injunction under 42 U.S.C. § 1983 prohibiting Defendant from enforcing O.R.C. §§ 3519.01(A) without a proper form of immediate, expedited judicial review and resolution;

E.      reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

F.      such other and further relief as may be just and proper.

Dated: March 27, 2024

Respectfully submitted,

*Mark R. Brown*

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall**
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

*Counsel for Relators*

* For purpose of identification only

** Pro hac vice application forthcoming

## CERTIFICATE OF SERVICE

I certify that copies of this Verified Complaint, Exhibits, Motion for Preliminary Injunction and accompanying Memorandum in Support were emailed this day to Defendant, David Yost, Ohio Attorney General.


_/s/ Mark R. Brown_____

## VERIFICATION of CYNTHIA BROWN
### (Pursuant to 28 U.S.C. § 1746(2))

I, Cynthia Brown, verify under penalty of perjury that the foregoing is true and correct.

Executed on March 26 2024.

Cynthia Brown

**VERIFICATION of CARLOS BUFORD**
**(Pursuant to 28 U.S.C. § 1746(2))**

I, Carlos Buford, verify under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2024.

_____

Carlos Buford

## VERIFICATION of JENNY SUE ROWE
### (Pursuant to 28 U.S.C. § 1746(2))

I, Jenny Sue Rowe, verify under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2024.

_____

Jenny Sue Rowe

17

# Brown, et al. v. Yost

# EXHIBIT 1

**COUNTY:** _Butler_     **NUMBER:** _00094_

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

## AMENDMENT

### TITLE

Protecting Ohioans' Constitutional Rights

## SUMMARY

This Amendment would add a new section 22 to Article I of the Ohio Constitution:

The Protecting Ohioans' Constitutional Rights Amendment creates a private cause of action on behalf of persons whose rights under Ohio's Constitution are violated, or caused to be violated, by (1) the State of Ohio, its officers, departments and instrumentalities, (2) political subdivisions of Ohio, including municipal corporations, townships, counties and school districts, (3) public employees of the State or its political subdivisions, and (4) independent contractors of the State or its political subdivisions. Liability for public employees is limited to those instances where their conduct is authorized by their governmental employers and within the scope of their employments. Liability of independent contractors is limited to conduct that is authorized and under color of law. The State of Ohio is liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority granted to that public employee by the State of Ohio. A political subdivision is liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority that has been granted by the political subdivision to that to the public employee.

Qualified immunity, sovereign immunity, prosecutorial immunity, and any immunity provided to the State, political subdivision, or public employee by statute are eliminated. Remedies for constitutional violations include compensation for economic and non-economic damages, equitable and injunctive relief, any other remedies prescribed by State law, federal law, or common law, and awards of reasonable attorney's fees. Courts are also authorized to order government actors found to have violated Ohio's Constitution to take reasonable measures to prevent similar violations from occurring in the future. Any finding of liability against a public employee under this Amendment provides just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

The private cause of action created by this Amendment may be tried before the bench or a jury, but in either case violations must be proven by a preponderance of evidence. Jurisdiction and venue over the private cause of action created by this Amendment lie in the Court of Common Pleas for the county where the public employee who is named as a defendant resides or works at the time the action is filed. When only the State or a political subdivision is the defendant the action may be filed in the Court of Common Pleas for any county in Ohio. If both a public employee and the State or a political subdivision are named in the same action, the venue is restricted to the county where the named public employee resided or worked at the time of filing. All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred. This amendment contains a severability clause. The effective date would be January 1, 2025.

1

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 2692 Arcola Road, Columbus, Ohio 43207 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Derrick Jamison | 3015 Hackberry Street, Cincinnati, Ohio 45206 |
| Hamza Khabir | 26 Gould Avenue, Bedford, Ohio 44146 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

# FULL TEXT OF THE PROPOSED AMENDMENT

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is hereby amended to add the following Section:

## Section 22. Protecting Ohioans' Constitutional Rights

(A) Definitions

   (1) "State" means the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio.

   (2) "Political subdivision" means any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district.

   (3) "Public employee" means any entity who is:

      (a) an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision; or

      (b) an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law.

   (4) "Government actor" means the State, any political subdivision thereof, or any public employee of the State or of any political subdivision thereof.

   (5) "Person" means any individual resident of Ohio or individual within the State.

   (6) "Constitutional right" means any right, privilege or immunity secured pursuant to the constitution of Ohio.

(B) Claim for Deprivation of Rights Guaranteed by the Constitution of Ohio

   (1) No government actor shall cause any person to be subjected to deprivation of any constitutional right.

   (2) A person who claims to have suffered a deprivation of any constitutional right due to acts or omissions of any government actor or actors may bring a civil action against said government actor or actors.

   (3) A civil action pursuant to this Section may be brought in the following jurisdictions:

      (a) An action naming a public employee as a defendant may be brought in any Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed.

      (b) An action naming the State or a political subdivision as a defendant may be brought in the Court of Common Pleas for any county in the State. However, if a public employee is also named as a defendant to the same action, then the action may only be brought in a Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed.

(C) Immunity Defenses Prohibited

(1) In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to:

    (a) Qualified immunity;

    (b) Sovereign immunity;

    (c) Prosecutorial immunity; or

    (d) Any immunity provided to the State, political subdivisions, or public employees by statute.

(D) Determination Of Liability

    (1) The person bringing an action pursuant to this Section may elect whether the action will be tried in a bench trial or jury trial.

        (a) In a bench trial, the court's decision on any claim brought hereunder shall be supported by findings of facts and conclusions of law.

        (b) In a jury trial, any party may submit interrogatories to the jury asking for its findings of fact and application of the court's instructions as to the law.

    (2) Any government actor is liable for the deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right.

    (3) In addition, if a public employee is found liable for the deprivation of a person's constitutional rights pursuant to subsection (D)(2), and it is proven by a preponderance of evidence that the public employee was acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision, then the State or political subdivision shall be held liable to that person for the conduct of the public employee.

    (4) Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

(E) Remedies Upon A Determination Of Liability

    (1) If a government actor is found liable for the deprivation of a person's constitutional rights, that person shall be entitled to any or all of the following relief:

        (a) Compensation for economic and non-economic damages, without limitation;

        (b) Equitable or injunctive relief;

        (c) Recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and

        (d) Any other remedies prescribed by State or federal law or available pursuant to common law.

    (2) In addition to the relief awarded to the person, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

(F) Statute of Limitations

       (1) A claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

(G) Termination of Contract, Agreement, or Employment
       (1) A finding of liability against a public employee pursuant to this Section is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

(H) Severability Clause
       (1) All provisions of this section shall be self-executing and severable.

(I) Effective Date
       (1) This section shall take effect on January 1, 2025.

# Brown, et al. v. Yost

# EXHIBIT 2



Constitutional Offices
Section
Office: 614-466-2872

November 17, 2023

Mark Brown, Esq.
Capital University Law School
303 E. Broad St.
Columbus, Ohio 43215
Email: MBrown@law.capital.edu

***Via regular U.S. Mail and E-mail***

Re:     Submitted Petition for Initiated Constitutional Amendment to Add Article I, Section 22
        of the Ohio Constitution– "Protecting Ohioans' Constitutional Rights"

Dear Mr. Brown,

On November 8, 2023, in accordance with Ohio Revised Code Section 3519.01(A), I received a written petition containing (1) a copy of a proposed constitutional amendment, and (2) a summary of the same measure. One of my statutory duties as Attorney General is to send all of the part-petitions to the appropriate county boards of elections for signature verification. With all of the county boards of elections reporting back, at least 1,000 signatures have been verified.

It is also my statutory duty to determine whether the submitted summary is a "fair and truthful statement of the proposed law or constitutional amendment." R.C. 3519.01(A). The Ohio Supreme Court has defined "summary" relative to an initiated petition as "a short, concise summing up," which properly advises potential signers of a proposed measure's character and purport. *State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24 (1931). If I conclude that the summary is fair and truthful, I am to certify it as such within ten days of receipt of the petition. In this instance, the tenth day falls on November 17, 2023.

Having reviewed the renewed submission, I am unable to certify the summary as a fair and truthful representation of the proposed amendment. Upon review of the summary, we identified omissions and misstatements that, as a whole, would mislead a potential signer as to the actual scope and effect of the proposed amendment.

*First,* the summary fails to fairly and truthfully summarize the scope of potential party makeup, potential venue, and nonparty liability under the proposed amendment. With respect to venue, the proposed amendment provides that an action naming a public employee as a defendant "may be brought in any Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed." Proposed Amendment, Section (B)(3)(a). It further provides that an action naming the State or a political subdivision may be brought in any county, with the exception that "if a public employee is also named a defendant, then the action may only be brought in a Court of Common Pleas for a county in which that public employee resided or

worked at the time the action was filed. Id., Section (B)(3)(b). The Amendment is silent on proper venue for actions against multiple public-employee defendants who do not reside or work in the same county at the time the action is filed.

In turn, the summary provides that jurisdiction and venue lies "in the Court of Common Pleas for the county where the public employee who is named as a defendant resides or works at the time the action is filed," and that "[w]hen only the State or a political subdivision is the defendant the action may be filed in the Court of Common Pleas for any County in Ohio," but "[i]f both a public employee and the State or a political subdivision are named in the same action, the venue is restricted to the county where the named public employee resided or worked at the time of filing." Summary, paragraph 3. In this regard, the summary is misleading in two ways.

It is misleading to the extent that it falsely purports to set forth an exhaustive list of potential venues. The summary does not address proper venue in actions where a plaintiff names two public-employee defendants who do not share a common county where they live or work. While the amendment also does not expressly account for venue in such actions, nothing in the proposed amendment limits a plaintiff to a single public-employee defendant. Therefore, the summary is misleading to the extent it purports to set forth all potential venues for an action authorized by the amendment.

By the same token, a reader would also be misled into believing that the proposed amendment limits the type and number of potential governmental defendants. The summary's limited description of potential venues outlined above further misleads a reader into believing that the proposed amendment limits the makeup of governmental defendants to either (1) one public employee, (2) the State or one political subdivision, or (3) one public employee and the State or one political subdivision. This is driven home by the summary's reference to a singular public employee in the third foregoing scenario: in such a case, the summary states, venue is restricted to the country where "*the* named public employee" resided or worked. Summary, paragraph 3 (emphasis added.). In actuality, the proposed amendment contains none of the foregoing limitations implied in the summary. In fact, the proposed amendment authorizes actions brought against a "government actor or *actors*." Proposed Amendment, Section (B)(2).

The summary is also misleading with respect to the nonparty liability created by the proposed amendment. The amendment provides that, if a public employee is found liable for deprivation of a person's constitutional right, and it is proven by a preponderance that the public employee was acting on behalf of, under color of, or within the scope of authority granted by the State or political subdivision, "then the State or political subdivision shall be held liable to that person for the conduct of the public employee." Proposed Amendment, Section (D)(3).

Critically, the proposed amendment does not require the State or a political subdivision to be a named party in order to be held liable to the plaintiff under Section (D)(3). This is a significant departure from general legal principles and raises a host of potential substantive issues. But without regard to whether such a provision is legally sound or advisable, the fact that the proposed amendment creates nonparty liability of a State or political subdivision that is never named in a plaintiff's action is significant. A fair and truthful summary must, at the least, explain that nonparty State or political subdivision liability may arise as a result of the proposed amendment. This summary completely omits this significant aspect and, consequently, is misleading.

*Second*, the summary omits critical words and would materially mislead a potential signer with respect to defined terms. For example, the summary materially misstates the amendment's definition of "public employee." In particular, the proposed amendment states that a "public employee means any *entity* who is….." but the word "entity," which is a much broader term encompassing more than individuals, is omitted from the summary. This changes the character of the defined term. The summary also fails to articulate the difference between a public employee as an "entity" versus the common meaning and understanding of a public employee as a human being.  This Office expressly noted this flaw in its prior August 18, 2023 declination letter sent in response to the previous iteration of this petition. It remains uncorrected.

Additionally, the proposed amendment defines "State" to mean "the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio." Proposed Amendment, Section (A)(1). In contrast, the summary provides that the amendment creates a private cause of action for violations of Ohio Constitutional rights by "the State of Ohio, its officers, departments and instrumentalities …." The summary omits that the proposed amendment provides for liability of "the offices of all elected state officers." The summary's description of liability for the State's "officers" does not fairly and truthfully summarize the potential for liability of the offices of elected state officers as set forth in the amendment. This is particularly true when considered with the fact that the State's "officers" are included within the amendment's definition of "public employee" rather than within the definition of the "State." Compare Proposed Amendment, Section (A)(1) with Section (A)(3)(a). The omission of potential liability of the offices of elected state officers is materially misleading.

The summary further omits that the definition of "public employee" includes those individuals and entities that are "not compensated." Proposed Amendment, Section (A)(3)(a). In light of the ordinary, everyday definition of "employee" as generally *not* including uncompensated persons, this omission is misleading. A reader of the summary would not likely understand that the proposed amendment provides for liability of, for instance, uncompensated volunteers, because the definition's inclusion of "public employees" that are "not compensated" is omitted from the summary.

Moreover, "public employee" is defined in the proposed amendment as including an independent contractor "who is *authorized to act* and is acting under color of law." (emphasis added.). Proposed Amendment, Section (A)(3)(b). However, the summary states differently: it provides that liability of independent contractors is "limited to *conduct that is authorized* and under color of state law." Summary, paragraph 1 (emphasis added.). This is a significant distinction. The summary misleads a reader into believing that an independent contractor is liable only when the specific conduct at issue has been authorized by the State, rather than, as the proposed amendment more broadly provides, when the independent contractor was merely "authorized to act."

*Third,* the summary's statements on remedies and bench-or-jury-trial election are also inaccurate and misleading. The summary states that, as a remedy, "[c]ourts are also *authorized* to order government actors found to have violated Ohio's Constitution to take reasonable measures to prevent similar violations from occurring in the future." Summary, paragraph 2 (emphasis added.). This is inaccurate. Instead, the proposed amendment provides that, upon a finding of liability against a government actor, "the court *shall*" order the government actor found liable to take such reasonable measures. Proposed Amendment, Section (E)(2) (emphasis added.). The language

"courts are also authorized" in the summary incorrectly suggests that courts have discretionary authority to order a liable party to take such measures. In reality, the proposed amendment would require courts to do so.

Further, the summary states that remedies under the proposed amendment include "reasonable attorney's fees," Summary, paragraph 2, but omits that a prevailing party is entitled to those fees "regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis." Proposed Amendment, Section (E)(1)(c). This omission potentially misleads a reader into believing that a prevailing party is entitled only to fees that were actually incurred and are owed by that party.

Finally, the summary provides that "the private cause of action created by this Amendment may be tried before the bench or a jury …." Summary, paragraph 3. The summary omits that it is the plaintiff who is entitled to this election: the proposed amendment is clear that "[t]he person bringing an action pursuant to this Section may elect whether the action will be tried in a bench or jury trial." Proposed Amendment, Section (D)(1). By omitting this portion of Section (D)(1), the summary may mislead a reader into believing that a named defendant – be it the State, a political subdivision, or a public employee – also has the right to insist upon a jury or bench trial.

*Fourth,* the summary's statements on the liability of a "public employee" are incorrect and misleading. The summary provides that "[l]iability for public employees is limited to those instances where their conduct is authorized by their governmental employers and within the scope of their employments." Summary, paragraph 1. This tracks the first definitional category of "public employee" contained in the proposed amendment. Proposed Amendment, Section (A)(3)(a). However, this sentence is inaccurate because it ignores that the proposed amendment's definition of "public employees" also includes "an independent contractor who is authorized to act and is acting under color of law." Id., Section (A)(3)(b). Thus, it is incorrect and misleading to state that public-employee liability "is limited" to instances falling under Section (A)(3)(a), as the summary purports. The summary does appear to attempt to reconcile this with its next sentence: "Liability for independent contractors is limited to conduct that is authorized and under color of law." Summary, paragraph 1. Nonetheless, the first sentence purporting to state the limits of public-employee liability remains incorrect and misleading.

Similarly, the summary further provides that the State and political subdivisions are "liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority granted to that public employee" by the State or subdivision. Summary, paragraph 1. This, too, is inaccurate because it again fails to contemplate that the proposed amendment's definition of "public employee" also includes "an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law." Proposed Amendment, Section (A)(3)(b). The summary's language here is again incorrect and misleads a reader into believing that liability for the State or a political subdivision for conduct by its public employee is limited to the categories of "public employee" set forth in Section (A)(3)(a), when the proposed amendment also defines independent contractors acting under color of state law as "public employees" under Section (A)(3)(b).

*Fifth,* the summary materially misstates that the proposed amendment's immunity defenses are "eliminated." The summary states that "[q]ualified immunity, sovereign immunity, prosecutorial

immunity, and any immunity provided to the State, political subdivision, or public employee by statute are eliminated." Summary, paragraph 2 (emphasis added.). However, the proposed amendment is not so broad – it provides only that in "*any action pursuant to this Section*, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to" qualified immunity, sovereign immunity, prosecutorial immunity, or any immunity provided to government actors by statute. Proposed Amendment, Section (C)(1) (emphasis added.). Thus, the statement that those types of immunity are "eliminated" in all instances is overbroad and fails to fairly summarize that the proposed amendment precludes the use of immunity defenses only "[i]n any action pursuant to this Section[.]" The blanket term "eliminated" would mislead a reader into believing the proposed amendment's effect on immunity defenses is broader than what the proposed amendment actually provides.

The summary's statement regarding "elimination" of immunity is overbroad in this respect, but it is also too narrow in another. That is, the purport of the proposed amendment is not limited to immunity. Indeed, the proposed amendment precludes a government actor from enjoying or relying upon "any immunities *or defenses* which are only available to government actors or any subset thereof …." Proposed Amendment, Section (C)(1) (emphasis added.). Additionally, the proposed amendment's list of immunities and defenses to which Section (C)(1) is expressly non-exhaustive. *Id.* ("…including but not limited to…").

In contrast, the summary mentions only immunity. It omits entirely any reference to the proposed amendment's effect on these "other defenses." Worse, it omits that these "other defenses" include not just those "only available to government actors," but also those "only available to … any subset thereof." The proposed amendment leaves this broad category—"subsets" of "government actors"—undefined. Thus, the summary fails to encapsulate the broader swath of defenses contemplated by the text of the proposed amendment.

The problem is exacerbated because the summary also omits that the types of immunities which are enumerated therein are part of an expressly non-exhaustive list. By limiting its description of the proposed amendment's effect to the enumerated types of immunity, the summary fails to fairly and truthfully summarize the full extent of the proposed amendment (i.e., as extending to additional defenses beyond those enumerated types). As a result, a reader would be misled into believing that the types of immunity listed in the summary are the only defenses affected by the proposed amendment, when the proposed amendment's effects are, as shown, broader.

The above instances are just a few examples of the summary's omissions and misstatements.  It is significant to ask voters to make factual findings at the ballot box.  A summary that fails to inform a signer of the existence of such findings does not fairly and truthfully reflect the amendment's import.  Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment.

Yours,

Dave Yost
Ohio Attorney General

cc: Committee Representing the Petitioners

Derrick Jamison
3015 Hackberry Street
Cincinnati, Ohio 45206

Cynthia Brown
2692 Arcola Road
Columbus, Ohio 43207

Carlos Buford
2130 Della Drive
Dayton, Ohio 45417

Hamza Khabir
26 Gould Avenue
Bedford, Ohio 44146

Jenny Sue Rowe
3340 Peterson Road
Mansfield, Ohio 44903

# Brown, et al. v. Yost

# EXHIBIT 3

**COUNTY:** _ALLEN_    **NUMBER** _0001_

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

# AMENDMENT

## TITLE

Protecting Ohioans' Constitutional Rights

## SUMMARY

This Amendment would add a new section 22 to Article I of the Ohio Constitution:

The Protecting Ohioans' Constitutional Rights Amendment creates a private cause of action on behalf of persons whose rights, privileges and immunities under Ohio's Constitution are violated, or caused to be violated, by "government actors." Government actors under the terms of this Amendment include (1) the "State" of Ohio, which is defined to include, but is not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio, (2) "political subdivisions" of Ohio, which is defined to mean any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district, and (3) "public employees" of the State or its political subdivisions, which is defined to mean any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full-time or part-time, if that individual is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision, as well as any individual or "business entity," which is defined to include corporations, associations, firms, limited liability companies, partnerships, sole proprietorships, or other entities engaged in business, that is an independent contractor of the State or one of its political subdivisions and who is authorized to act and is acting under the color of law.

A "government actor," as defined above, is liable under this Amendment for its deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right under the Ohio Constitution. In addition to being liable as government actors for causing deprivations of persons' constitutional rights under the Ohio Constitution, the State and its political subdivisions, whether or not joined as defendants in any civil action created by this Amendment, are also liable for the conduct of their public employees, including independent contractors, who are found liable based on a preponderance of the evidence for deprivations of a person's constitutional rights under this Amendment, and who are also proven by a preponderance of evidence to have been acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision.

Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Amendment. Venue over the civil action created by this Amendment shall be determined by Ohio's laws and rules of venue that are applicable to civil actions.

In any action filed under this Amendment, no government actor shall enjoy or may rely upon any immunities or defenses, or any subset thereof, which are only available to government actors, including but not limited to (1) qualified immunity; (2) sovereign immunity; (3) prosecutorial immunity; and (4) any immunity provided to the State,

1

political subdivisions, or public employees by statute.

Remedies for constitutional violations by government actors under this Amendment include any or all of the following relief: (1) compensation for economic and non-economic damages, without limitation; (2) equitable or injunctive relief; (3) recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and (4) any other remedies prescribed by State or federal law or available pursuant to common law. In addition to the relief awarded to the person bringing the action under this Amendment, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

A finding of liability against a public employee under this Amendment is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

The private cause of action created by this Amendment may be tried before the bench or a jury, at the election of the person bringing the action pursuant to this Amendment, but in either case all violations must be proven by a preponderance of evidence. A claim made under this Amendment must be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred. All provisions of this Amendment shall be self-executing and severable. This Amendment shall take effect on January 1, 2025.

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 2692 Arcola Road, Columbus, Ohio 43207 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Derrick Jamison | 3015 Hackberry Street, Cincinnati, Ohio 45206 |
| Hamza Khabir | 26 Gould Avenue, Bedford, Ohio 44146 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

# FULL TEXT OF THE PROPOSED AMENDMENT

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is hereby amended to add the following Section:

## Section 22. Protecting Ohioans' Constitutional Rights

(A) Definitions
 (1) "State" means the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio.
 (2) "Political subdivision" means any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district.
 (3) "Public employee" means:
  (a) any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision; or
  (b) any individual or business entity that is an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law.
 (4) "Government actor" means the State, any political subdivision thereof, or any public employee of the State or of any political subdivision thereof.
 (5) "Person" means any individual resident of Ohio or individual within the State.
 (6) "Constitutional right" means any right, privilege or immunity secured pursuant to the constitution of Ohio.
 (7) "Business entity" means an entity with employees that is a corporation, association, firm, limited liability company, partnership, sole proprietorship, or other entity engaged in business.

(B) Claim for Deprivation of Rights Guaranteed by the Constitution of Ohio
 (1) No government actor shall cause any person to be subjected to deprivation of any constitutional right.
 (2) A person who claims to have suffered a deprivation of any constitutional right due to acts or omissions of any government actor or actors may bring a civil action against said government actor or actors.
 (3) Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Section.
 (4) Venue over the civil action created by this Section shall be determined by Ohio's venue laws and rules that are applicable to civil actions.

(C) Immunity Defenses Prohibited
 (1) In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to:
  (a) Qualified immunity;

3

      (b)  Sovereign immunity;

      (c)  Prosecutorial immunity; or

      (d)  Any immunity provided to the State, political subdivisions, or public employees by statute.

(D) Determination Of Liability

    (1)  The person bringing an action pursuant to this Section may elect whether the action will be tried in a bench trial or jury trial.

      (a)  In a bench trial, the court's decision on any claim brought hereunder shall be supported by findings of facts and conclusions of law.

      (b)  In a jury trial, any party may submit interrogatories to the jury asking for its findings of fact and application of the court's instructions as to the law.

    (2)  Any government actor is liable for the deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right.

    (3)  In addition, if a public employee is found liable for the deprivation of a person's constitutional rights pursuant to subsection (D)(2), and it is proven by a preponderance of evidence that the public employee was acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision, then the State or political subdivision shall be held liable to that person for the conduct of the public employee.

    (4)  Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

(E) Remedies Upon A Determination Of Liability

    (1)  If a government actor is found liable for the deprivation of a person's constitutional rights, that person shall be entitled to any or all of the following relief:

      (a)  Compensation for economic and non-economic damages, without limitation;

      (b)  Equitable or injunctive relief;

      (c)  Recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and

      (d)  Any other remedies prescribed by State or federal law or available pursuant to common law.

    (2)  In addition to the relief awarded to the person, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

(F) Statute of Limitations

    (1)  A claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

(G) Termination of Contract, Agreement, or Employment

    (1)  A finding of liability against a public employee pursuant to this Section is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

(H) Severability Clause
    (1) All provisions of this section shall be self-executing and severable.

(I) Effective Date
    (1) This section shall take effect on January 1, 2025.

# Brown, et al. v. Yost

# EXHIBIT 4



**DAVE YOST**

OHIO ATTORNEY GENERAL

Constitutional Offices
Section
Office: 614-466-2872

March 14, 2024

***Via regular U.S. Mail and E-mail***

Mark Brown, Esq.
Capital University Law School
303 E. Broad Street
Columbus, Ohio 43215
MBrown@law.capital.edu

Re:     Submitted Petition for Initiated Constitutional Amendment to Add Article I, Section 22
        of the Ohio Constitution– "Protecting Ohioans' Constitutional Rights"

Dear Mr. Brown,

On March 5, 2024, in accordance with Ohio Revised Code Section 3519.01(A), I received a written
petition containing (1) a copy of a proposed constitutional amendment, and (2) a summary of the
same measure. One of my statutory duties as Attorney General is to send all of the part-petitions
to the appropriate county boards of elections for signature verification. With all of the county
boards of elections reporting back, at least 1,000 signatures have been verified.

It is also my statutory duty to determine whether the submitted summary is a "fair and truthful
statement of the proposed law or constitutional amendment." R.C. 3519.01(A). The Ohio
Supreme Court has defined "summary" relative to an initiated petition as "a short, concise
summing up," which properly advises potential signers of a proposed measure's character and
purport. *State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24 (1931). If I conclude that the summary
is fair and truthful, I am to certify it as such within ten days of receipt of the petition. In this
instance, the tenth day falls on March 14, 2024.

Having reviewed the renewed submission, I am unable to certify the submitted summary as a fair
and truthful representation of the proposed amendment. Upon review of the summary, we
identified omissions and misstatements that, would mislead a potential signer as to the actual scope
and effect of the proposed amendment.

I understand that I have rejected the Petitioners' summaries on multiple previous occasions.
Sometimes the language of the proposed amendment has changed and the summaries have failed
the fair and truthful test, which I have always explained in detail. Regrettably, the Petitioners have
submitted summaries that repeat the misstatements and/or omissions that I have specifically
identified in previously rejected summaries. That is the case with my rejection today.

For example, the current summary is misleading with respect to the scope of subsection (C) of the
proposed amendment. The summary and proposed amendment say two different things. That is,

the qualifier "or any subset thereof" as used in the proposed amendment modifies and broadens the phrase "government actors". Proposed Amendment, Section (C)(1). The summary, on the other hand, says differently: it rewords the amendment such that "or any subset thereof" directly follows and modifies the comma-separated clause "immunities or defenses." Summary, paragraph 5. But the proposed amendment actually abrogates the immunities or defenses available to "any subset" of *government actors.* This renders the summary misleading in two aspects. First, this misstatement affirmatively misleads the reader into believing that the proposed amendment broadly abrogates "any subset" of *immunities or defenses available* to "government actors." Second, the misstatement results in the summary's omission of this broader, undefined category of "any subset" of "government actors" created by the proposed amendment. **This latter problem was identified as one of the reasons that I was unable to certify Petitioners' previous summary on November 17, 2023.** Thus, again, the summary fails to fairly and truthfully reflect the scope of the proposed amendment's effect as set forth in its subsection (C).

Second, in subsection (F), the proposed amendment provides that "[a] claim made under this Section shall be commenced no later than six years from the date that deprivation of a constitutional right is alleged to have occurred." Proposed Amendment, Subsection (F). On the other hand, the summary confusingly provides in consecutive sentences: "A claim made under this Amendment must be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred. All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred." Summary, Paragraphs 8-9. These sentences read together pose a significant risk of confusing and misleading any reader of the summary. The sentences lead the reader to believe that there is some distinction or difference in the proposed amendment between the statute of limitations applicable to "[a] claim made under this Amendment" as opposed to "[a]ll claims." In reality, the proposed amendment makes no such distinction or difference. Nonetheless, a reader will likely assign significance to the fact that the summary repeats itself in this manner while using different language.

 Finally, the title "Protecting Ohioans' Constitutional Rights" does not fairly and accurately reflect the nature and scope of the proposed amendment. "A title 'provides notice of the proposal to the signers of an initiative petition. More so than the text, the title immediately alerts signers to the nature of [the] proposed legislation.'" *State ex rel. Hildreth v. LaRose*, No. 2023-1213, 2023-Ohio-3667, ¶ 17, quoting *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597, 575 N.E.2d 835 (1991). The use of the word "protect" in the summary's title is especially misleading because the amendment does not seek to proactively "protect" Ohioans from violations of constitutional rights. Instead, the nature of the amendment is to *abrogate*: specifically, governmental immunity and similar defenses available to defined government actors. Accordingly, the summary's title offers a subjective hypothesis (that eliminating such defenses will "protect" the constitutional rights of citizens) regarding the proposed amendment in lieu of an objective description of its character and purport (that it creates a cause of action notwithstanding those defenses). Given the Supreme Court's holding on the import of petition titles, I find that the proposed summary's title is not a fair and truthful recitation of the proposed amendment.

The above instances are just a few examples of the summary's omissions and misstatements. Any of these omissions or misrepresentations, together or alone, are sufficient to reject the submitted petition. As I have said before, it is significant to ask voters to make factual findings at the ballot box.  A summary that fails to inform a signer of the existence of such findings does not fairly and

truthfully reflect the amendment's import. Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment.

Yours,

Dave Yost
Ohio Attorney General

cc: Committee Representing the Petitioners

Cynthia Brown
2692 Arcola Road
Columbus, Ohio 43207

Carlos Buford
2130 Della Drive
Dayton, Ohio 45417

Derrick Jamison
3015 Hackberry Street
Cincinnati, Ohio 45206

Hamza Khabir
26 Gould Avenue
Bedford, Ohio 44146

Jenny Sue Rowe
3340 Peterson Road
Mansfield, Ohio 44903