## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CYNTHIA BROWN, et al.,** | : | |
| | : | |
| *Plaintiffs,* | : | **Case No. 2:24-cv-01401** |
| | : | |
| **v.** | : | **Judge James Lowell Graham** |
| | : | |
| **DAVID YOST, in his official capacity as** | : | **Mag. Judge Elizabeth Preston Deavers** |
| **Ohio Attorney General,** | : | |
| | : | |
| *Defendant.* | : | |

---

## DEFENDANT OHIO ATTORNEY GENERAL DAVID YOST'S COMBINED MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069792)*
*Counsel Of Record*
STEPHEN P. TABATOWSKI (0099175)
ELIZABETH H. SMITH (0076701)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Elizabeth.Smith@OhioAGO.gov

*Counsel for Defendant David Yost*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iii

Memorandum ............................................................................................................... 1

I.    Introduction ....................................................................................................... 1

II.    Background ........................................................................................................ 2

III.    Law and Argument .......................................................................................... 3

  A.    Standards of Review ..................................................................................... 3

      1.    Motion to Dismiss................................................................................. 3

      2.    Temporary Restraining Order and Preliminary Injunction ........................ 4

  B.    Attorney General Yost, in his official capacity, is entitled to immunity under the Eleventh Amendment.................................................................................. 5

  C.    Plaintiffs lack standing to seek a declaration that O.R.C. § 3519.01(C) is unconstitutional................................................................................................. 7

  D.    The Court should abstain regardless. ........................................................... 9

      1.    *Pullman* abstention............................................................................. 9

      2.    *Colorado River* abstention ................................................................ 11

  E.    Plaintiffs fail to state a claim upon which relief can be granted and, for the same reasons, are not likely to succeed on the merits................................... 14

      1.    O.R.C. 3519.01(A) and (C) are content-neutral regulations of election mechanics which easily survive rational-basis review. ............................ 14

      2.    Even if heightened scrutiny applies, O.R.C. § 3519.01(A) and (C) pass constitutional muster. ........................................................................... 19

      3.    Plaintiffs' as-applied challenge fails as well........................................... 23

F.    The remaining preliminary-injunction factors weigh against injunctive relief. ........... 25

IV.    Conclusion ............................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                 **Page(s)**

*Alshaibani v. Litton Loan Servicing, LP*,
   528 F. App'x 462 (6th Cir. 2013) ............................................................................4

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983)...............................................................................................20

*Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*,
   556 F.3d 459 (6th Cir. 2009) ................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................4

*Bates v. Van Buren Twp.*,
   122 Fed. Appx 803 (6th Cir. 2004)...............................................................11, 12

*Bays v. City of Fairborn*,
   668 F.3d 814 (6th Cir. 2012) ..................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................4

*Biddulph v. Mortham*,
   89 F.3d 1491 (11th Cir.1996) ...............................................................................14

*Buckley v. Am. Const. Law Found.*,
   525 U.S. 182 (1999)...............................................................................................15

*Burdick v. Takushi*,
   504 U.S. 428 (1992)...............................................................................................20

*Campbell v. Buckley*,
   203 F.3d 738 (10th Cir.2000) ...............................................................................15

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010)...............................................................................................23

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ("*Colorado River* abstention") ..........................................9, 11

*Colorado River. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)............................................................................1, 11, 12, 14

*Comm. to Impose Term Limits on the Ohio Sup. Ct. v. Ohio Ballot Bd.*,
   275 F. Supp 3d 849 (S.D. Ohio 2017) ..............................................................5, 6, 7

iv

**Cases**                                                                                              **Page(s)**

*Comm. to Impose Term Limits on the Ohio Supreme Ct. v. Ohio Ballot Bd.*,
   885 F.3d 443 (6th Cir. 2018) ............................................................................................18, 23

*Connection Distrib. Co. v. Reno*,
   154 F.3d 281 (6th Cir. 1998) .................................................................................................26

*Dobrovolny v. Moore*,
   126 F.3d 1111 (8th Cir. 1997), *cert. denied*, 523 U.S. 1005, 118 S. Ct. 1188,
   140 L. Ed. 2d 319 (1998) ......................................................................................................24

*State ex rel. Ethics First-You Decide Ohio PAC v. DeWine*,
   147 Ohio St. 3d 373, 2016-Ohio-3144 .................................................................................19

*GTE North, Inc. v. Strand*,
   209 F.3d 909 (6th Cir.2000) .................................................................................................10

*Harris Cty. Comm'rs Court v Moore*,
   420 U.S. 77 (1975) ......................................................................................................9, 10, 11

*Haw. Hous. Auth. v. Midkiff*,
   467 U.S. 22 (1984) ...............................................................................................................10

*Healthcare Co. v. Upward Mobility, Inc.*,
   784 Fed. Appx. 390 (6th Cir. 2019) ........................................................................11, 12, 13

*Hendricks v. Kasich*,
   No. 2:12-cv-729, 2013 U.S. Dist. LEXIS 71991 (S.D. Ohio May 21, 2013) .....................5, 7

*Hunter v. Hamilton Cty. Bd. of Elections*,
   635 F. 3d 219 (2011).............................................................................................................11

*Initiative & Referendum Inst. v. Walker*,
   450 F.3d 1082 (10th Cir.2006) (en banc) ..................................................................... *passim*

*John Doe No. 1 v. Reed*,
   561 U.S. 186 (2010 ..............................................................................................................14

*Jones v. Coleman*,
   848 F.3d 744 (6th Cir.2017) ................................................................................................10

*Marijuana Policy Project v. United States*,
   304 F.3d 82 (D.C. Cir.2002) ...............................................................................15, 16, 18, 22

*Maryland v. King*,
   133 S.Ct. 1 (2012).................................................................................................................27

**Cases**                                                                           **Page(s)**

*Meyer v. Grant,*
    486 U.S. 414 (1988) ..................................................................15, 20

*Munaf v. Geren,*
    553 U.S. 674 (2008) ............................................................................4

*National Rifle Assoc. of Am. v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ............................................................8

*Pest Committee v. Miller,*
    626 F.3d 1097 (9th Cir.2010) ..........................................................15

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) ..............................................................................27

*R.R. Com. of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941) ...........................................................1, 9, 10, 11

*Romine v. Compuserve Corp.,*
    160 F.3d 337 (6th Cir. 1998) .....................................................11, 12

*S&M Brands, Inc. v. Cooper,*
    527 F.3d 500 ................................................................................5, 7, 14

*Schaller v. Rogers,*
    10th Dist. Franklin No. 08AP-591, 2008-Ohio-4464 .....................19

*Schmitt v. LaRose,*
    933 F.3d 628 (6th Cir.2019) ..................................................... *passim*

*Seaman Corp v. Flaherty,*
    N.D. Ohio No. 5:20-CV-443, 2020 U.S. Dist. LEXIS 146073 (March 3, 2020) ...................13

*Skrzypczak v. Kauger,*
    92 F.3d 1050 (10th Cir. 1996) ......................................15, 16, 18, 22

*Strayhorn v. Wyeth Pharmaceuticals, Inc.,*
    737 F.3d 378 (6th Cir. 2013) .............................................................3

*Taxpayers United for Assessment Cuts v. Austin,*
    994 F.2d 291 (6th Cir.1993) ...................................................14, 17, 18

*Thiokol Corp. V. Mich. Dep't of Treasury,*
    Revenue Div., 987 F.2d 376 (6th Cir. 1993) ....................................5

*Top Flight Entm't, Ltd. v. Schuette,*
    729 F.3d at 634 ..................................................................................9

**Cases**                                                                                               **Page(s)**

*Tyler v. Collins*,
    709 F.2d 1106 (6th Cir. 1983) ..................................................................10

*Wilson v. Williams*,
    961 F.3d 829 (6th Cir. 2020) ....................................................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).....................................................................................4

**Statutes**                                                                                            **Page(s)**

22 U.S.C. § 2201 ...........................................................................................8

O.R.C. § 3519.01 ...........................................................................7, 10, 11, 26

O.R.C. §3519.01(A) ............................................................................. *passim*

O.R.C. § 3519.01(B) .....................................................................................19

O.R.C. § 3519.01(C) ............................................................................ *passim*

**Other Authorities**                                                                                   **Page(s)**

Fed. R. Civ. P. 12(b)(6)...................................................................................3

Ohio Constitution, Article, II Section 1g...................................................11, 13

Ohio Constitution, Article IV Section5(A)(1) .............................................8

Ohio Constitution, Article IV, Section 5(B) .................................................8

Ohio Sup.Ct.R.Prac. § 12.08...........................................................................22

## MEMORANDUM

## I. INTRODUCTION

There is no First Amendment right to have a particular initiative petition placed on a particular ballot, as Plaintiffs seek here. The First Amendment does not guarantee the right to legislate by initiative at all. It only requires that, should a state extend the right to initiative to its citizens, the state does not directly regulate the speech or advocacy that accompanies an initiative drive. The first step in Ohio's initiative procedure, specifically O.R.C. § 3519.01(A) and (C), does not do so either. Ohio's procedure is nondiscriminatory and content-neutral. It applies to all initiatives, regardless of subject matter, and contains a timely-review process by the Supreme Court of Ohio. Plaintiffs rely on distorted readings of applicable case law to argue otherwise. Those arguments fail.

At the outset, the central focus of Plaintiffs' complaint is Attorney General Yost's rejection of the Plaintiffs' summary of their petition as fair and truthful. This is the act from which all of their alleged harms flow, and, ultimately, the act which Plaintiffs seek to have undone. But, under the Eleventh Amendment to the United States Constitution, this Court lacks jurisdiction to provide such retroactive relief based upon a one-and-done, past act carried out by Attorney General Yost. The Court should deny Plaintiffs' motion and dismiss their complaint on this basis alone. But if the Court is inclined to find it has jurisdiction, it should nonetheless abstain under the *Pullman* and *Colorado River* abstention doctrines. Plaintiffs have initiated a pending, parallel proceeding in state court based on the same allegations as in this case, and the resolution of that case may well resolve their concerns and obviate the need to answer any federal questions.

Even if this Court reaches the merits of Plaintiffs' complaint and request for injunctive relief, their claims fail. They fail to state a First Amendment claim whether facially or as-applied, because established case law demonstrates the constitutionality of Ohio's election-mechanics rules

related to the initiative process. Again, the First Amendment does not guarantee Plaintiffs the right to have their initiative on the ballot of their choosing. If the First Amendment is implicated at all, what minimal burden Ohio's initiative procedure places on Plaintiffs is far outweighed by Ohio's interests in voter education and election honesty and integrity. If the Court is inclined to step in front of the Supreme Court of Ohio and reach the merits here, it should deny Plaintiffs' request for injunctive relief and dismiss their complaint.

## II.  BACKGROUND

Plaintiffs are proponents of an initiative petition to amend the Ohio Constitution that has been submitted in different form on several occasions between February of 2023 and March of 2024. Compl., ECF No. 1 at PageID # 1-2, 9, ¶ 1-3, 34. On March 5, 2024, Plaintiffs submitted their latest iteration of the petition and summary for an amendment to the Ohio Constitution to Attorney General Yost. *Id.* at PageID # 2, ¶ 6. Pursuant to O.R.C. §3519.01(A), Attorney General Yost reviewed the language of the petition and its summary and, for multiple reasons, was unable to certify the summary as a fair and truthful statement of the proposed amendment. *Id.* at PageID # 2, ¶ 7; *see also id.* at PageID # 38-40. Plaintiffs allege that they suffered an injury because the Attorney General "refuse[d] to certify" and that decision means they "cannot being collecting the hundreds of thousands of signatures needed by July 3, 2024 to place their proposed amendment on Ohio's ballot[.]" *Id.* at PageID # 7, ¶ 24.

Plaintiffs acknowledge that they are afforded mandamus review of Attorney General Yost's decision with the Supreme Court of Ohio, whose Rules of Practice set forth expedited proceeding guidelines when a challenge is filed within 90-days of an election. *Id.* at PageID # 8, ¶ 31-32; *see also* Ohio S.Ct.Prac.R. § 12.08; O.R.C. § 3519.01(C). Despite being over 90 days from election, Plaintiffs sought expedited briefing in the Supreme Court of Ohio because they "gave up on the Attorney General's review process" and wanted immediate review under O.R.C.

§3519.01(C). Compl., ECF No. 1 at PageID # 9, ¶ 34; *see also* Exh. A, Mandamus Compl. Plaintiffs' request for expedited briefing was denied. *Id.* at PageID # 9, ¶40. Because the Ohio Supreme Court refused to conduct an expedited review of the Attorney General's decision to deny Plaintiffs' petition and summary submission, Plaintiffs filed in this Court while their mandamus action remained pending.

Plaintiffs' filing in both this Court and in the Supreme Court of Ohio sets forth facts that focus on the Attorney General's decision to deny their petition and summary submission. *See* Compl., ECF No. 1 at PageID # 2-5, 38-40; Exh. A at 6-16, ¶ 33-102. Hoping to gain expedited review of the Attorney General's decision to deny the March 5, 2024, submission, Plaintiffs incorporate their focus from their mandamus petition while also alleging that O.R.C. §3519.01(A) and (C) "facially violate[] the First Amendment (as incorporated through the Fourteenth Amendment)[.]" Complaint ECF No.1 at PageID # 10-11, ¶ 44. Further believing the Attorney General's decision to deny their submission warrants immediate review and redress, Plaintiffs also allege that Ohio's law violates their "First Amendment rights as-applied." *Id.* at PageID # 12, ¶ 60.

## III. LAW AND ARGUMENT

### A.     Standards of Review

#### 1.   Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharmaceuticals, Inc*., 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual

3

allegations as true and construe them in a light most favorable to Plaintiffs. . . ." *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 463-64 (6th Cir. 2013).

The Court, however, need not accept "legal conclusions or unwarranted factual inferences[,]" and "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quotations omitted.) Rather, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. While this pleading standard does not require "detailed factual allegations," it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and asks for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[N]aked assertions devoid of further factual enhancement" and "mere conclusory statements, do not suffice." *Id*. (internal quotation marks omitted).

## 2. Temporary Restraining Order and Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy[,]" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), and should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Plaintiffs bear the burden of justifying such extraordinary relief. *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

In determining whether a plaintiff has clearly shown it is entitled to preliminary injunctive relief, courts are guided by four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

4

**B.    Attorney General Yost, in his official capacity, is entitled to immunity under the Eleventh Amendment.**

"The Eleventh Amendment grants sovereign immunity to the State except when the State consents to be sued, when Congress abrogates a State's immunity, or when the *Ex Parte Young* exception applies." C*omm. to Impose Term Limits on the Ohio Sup. Ct. v. Ohio Ballot Bd.*, 275 F. Supp 3d 849, 862 (S.D. Ohio 2017). The same immunity applies to state officials sued in their official capacity. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507; *Hendricks v. Kasich*, No. 2:12-cv-729, 2013 U.S. Dist. LEXIS 71991, at *17 (S.D. Ohio May 21, 2013). When the Eleventh Amendment applies, it "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its dependents." *Hendricks* at *17 (quoting *Thiokol Corp. V. Mich. Dep't of Treasury*, Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993)). Under the *Ex parte Young* exception, a "federal court can issue *prospective* injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S&M Brands, Inc*, 527 F.3d at 507 (emphasis added). "The *Ex Parte Young* exception does not… extend to any retroactive relief." *Id.* at 508.

This Court has routinely denied claims brought under the *Ex Parte Young* exception when the relief sought is retroactive in nature. For instance, this Court found in *Hendricks* that the plaintiff's claim "relate[d] to the alleged denial of medical treatment in the past which may or may not have resulted from alleged budget cuts instituted by [then] Governor Kasich." *Hendricks*, 2013 U.S. Dist. LEXIS 71991, at *22. Because the plaintiff requested "a declaration that [then] Governor Kasich's alleged cost cutting measures were taken in violation of [plaintiff's] Eighth Amendment rights[,]" the plaintiff was seeking relief for the past actions of then-Governor Kasich. *Id*. at *23. Such claims focused on past acts fall outside of the *Ex Parte Young* exception because the "Eleventh Amendment not only bars retroactive relief where the plaintiff is seeking monetary damages, but all retroactive relief." *Id*.

In a case where plaintiffs sought to challenge the Ohio Ballot Board's decision to split a petition in two, this Court again declined to invoke the *Ex Parte Young* exception. C*omm. to Impose Term Limits on the Ohio Sup. Ct. v. Ohio Ballot Bd*., 275 F.Supp.3d 849 (S.D. Ohio 2017). There, the plaintiffs asked this Court "to declare that the Ohio Ballot Board's November 14, 2016 meeting, review, and decision to split the [p]laintiff's petition in two violated the Due Process Clause and is therefore 'null and void.'" *Id*. at 862. Plaintiffs attempted to insert a prospective component into their claim by arguing that the same process and procedure that they took issue with would continue to be used by the Ohio Ballot Board in the future. *See id* at 861. This Court was not persuaded. A request "to declare as null and void a prior action by the Ohio Ballot Board" sought "retroactive relief." *Id*. at 862. Because the relief sought was retroactive, the Ohio Ballot Board was "immune from the claim." *Id*.

Here, Plaintiffs' complaint centrally focuses on past actions of Attorney General Yost. Attorney General Yost's conduct giving rise to Plaintiffs' claims is consistently in the past tense. Plaintiffs allege that "[r]ather than certify the proposed constitutional amendment to the Ballot Board, [the Attorney General] on March 14, 2024 rejected Plaintiffs' summary as not being 'fair and truthful.'" Compl,, ECF No. 1 at PageID # 2, ¶ 7. They allege that Attorney General Yost "improperly and without foundation rejected Plaintiffs' summary and unlawfully refused to certify it . . . ." *Id*. at PageID # 6, ¶ 18. They allege that this singular past act, along with their inability to obtain expedited review of it, is what gives rise to their First Amendment claims. *Id.*, ¶ 20. Plaintiffs readily acknowledge the singular, one-and-done nature of Attorney General Yost's decision: as a result, they must either "start over" or seek review in the Supreme Court of Ohio. *Id.* at PageID # 8, ¶ 28. Plaintiffs' third prayer for relief highlights their retroactive focus. They seek a preliminary injunction or TRO requiring the Attorney General to certify their summary—

in other words, that his past decision be undone. *Id.* at PageID # 12. Indeed, this is the *only* relief requested in Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. Mot. for TRO and PI, ECF No. 2 at PageID # 62.

The fair-and-truthful review set forth in O.R.C. § 3519.01 starts anew each time a petition is submitted, and Plaintiffs provide nothing but speculation to indicate that the Attorney General will deny a future submission. In fact, the Complaint raises no allegation as to the future actions by Attorney General Yost. Where an alleged constitutional deficiency "is a one-time, past event," a plaintiff does "not seek a prospective injunction that results in the Attorney General to conform his conduct in an ongoing, continuous fashion." *S&M Brands, Inc*, 527 F.3d at 510. Just as this Court found that the plaintiffs sought retroactive relief in both C*omm. to Impose Term Limits* and *Hendricks*, it should find the same here. By failing to set forth facts that show that Plaintiffs seek prospective relief, Plaintiffs cannot utilize the *Ex Parte Young* exception to Eleventh Amendment Immunity.

Even if this Court finds that Plaintiffs' other prayers for relief could, potentially, satisfy the *Ex Parte Young* exception, it should look to the substance of the prayers for relief and not simply their descriptions. *See S&M Brands, Inc*, 527 F.3d at 509 ("the Supreme Court has instructed courts to look to the substance of the legal claim, not its formal description"). In reviewing the substance of Plaintiffs' claims, the past actions of Attorney General Yost are revealed as the catalyst. As such, the substance of all of Plaintiffs' claims revolve around the past acts of the Attorney General and fall outside the *Ex Parte Young* exception.

### C. Plaintiffs lack standing to seek a declaration that O.R.C. § 3519.01(C) is unconstitutional.

A party seeking declaratory relief must establish that he "suffered an injury-in-fact, fairly traceable to the defendant[s'] allegedly unlawful conduct, and likely to be redressed by the

requested relief." *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Plaintiffs have failed to allege facts showing that any purported injury resulting from their inability to seek expedited review is fairly traceable to Attorney General Yost, or that a declaration that O.R.C. § 3519.01(C) is unconstitutional would provide them redress.

Among the relief sought by Plaintiffs is their request for a declaration under 22 U.S.C. § 2201 that O.R.C. 3519.01(C) is unconstitutional both facially and as applied. Compl., ECF No. 1 at PageID# 62. Plaintiffs allege that Attorney General Yost's rejection and "Ohio's accompanying failure to provide timely de novo judicial review violate the First Amendment." Compl., ECF No. 1 at PageID # , ¶ 20. In seeking preliminary relief, they argue that "Ohio's failure to provide timely review and judicial resolution, by itself, violates the First Amendment." Mot. for TRO and PI, ECF No. 2 at PageID # 45. The core of their argument is that, because challenges to certification decisions are not automatically expedited, there is a risk that the decision "will survive without review until it is too late for meaningful relief." *Id.* at PageID # 47.

However, Attorney General Yost has no connection to the timetable assigned to such cases, and any purported injury caused by that timetable is not fairly traceable to him. As Plaintiffs admit, it is the Supreme Court of Ohio's Rules of Practice that govern. *Id.* Those rules are prescribed by the Supreme Court of Ohio pursuant to the Ohio Constitution. Ohio Constitution, Article IV, Section 5(B); *see also* Ohio Constitution, Article IV Section5(A)(1) ("[T]he supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the Supreme Court."). Accordingly, to the extent that Plaintiffs seek injunctive relief against Attorney General Yost based upon a constitutional violation allegedly arising from their inability to obtain expedited review, they have not alleged facts showing how Attorney General Yost "is connected to, or has

8

responsibility for" the timetable assigned to their mandamus case. *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d at 634.

Nor have Plaintiffs alleged facts showing that a declaration that O.R.C. § 3519.01(C) is unconstitutional, whether facially or as-applied, would provide them with any redress. O.R.C. § 3519.01(C) merely gives individuals aggrieved by a certification decision the right to challenge that decision in the Supreme Court of Ohio—it says nothing about the timetable for such cases. That being the case, a declaration that O.R.C. § 3519.01(C) is unconstitutional would ironically exacerbate—not redress—Plaintiffs' claimed injuries. If the statutory provision permitting direct mandamus review with the Supreme Court was declared unconstitutional, the Court would ostensibly no longer have jurisdiction to hear Plaintiffs' mandamus case. Accordingly, Plaintiffs do not have standing to seek a declaration that O.R.C. 3519.01(C) is unconstitutional.

### D.     The Court should abstain regardless.

Even if the Court is inclined to find it has jurisdiction to do so, it should abstain from hearing Plaintiffs' claims under two abstention doctrines; specifically, under *R.R. Com. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman* abstention") and *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River* abstention").

#### 1.     *Pullman* abstention

"[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cty. Comm'rs Court v Moore*, 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)). In *Pullman*, the Supreme Court held that "[f]ew public interests have a higher claim upon discretion of a federal chancellor than the avoidance of needless friction with state policies[.]" *Pullman,* 312 U.S at 500. By abstaining in

such cases, "federal courts will avoid [the] unnecessary adjudication of federal questions[.]" *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 22, 236 (1984).

When determining whether to apply *Pullman* abstention, the Sixth Circuit has set forth two requirements: 1) whether an unclear state law exists and 2) the likelihood that the state court's decision on the state law issue would "'obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue.'" *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983), quoting 1A Moore's Federal Practice P0.203[1] (1982). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris Cty. Comm'rs Court v Moore*, 420 U.S. 77, 84 (1975); *GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir.2000).

Here, Plaintiffs first filed a mandamus action in the Ohio Supreme Court. *See generally,* Exh. A, Mandamus Compl. Plaintiffs allege that Attorney General Yost went outside the scope of his statutory authority under O.R.C. § 3519.01(A) when denying Plaintiffs' most-recent petition submission. S*ee generally* Exh. A, Mandamus Compl. O.R.C. § 3519.01 is part of the State's comprehensive scheme for regulating the process of citizen-led petitions. And Plaintiffs allege that the scope of the Attorney General's fair-and-truthful review under the statute is an unsettled question of state law best decided by Ohio courts. Compl., ECF No. 1 at PageID # 5 ("Even assuming that Defendant has the authority to review a proposed amendment's title. . . ."). "The primary scenario for a district court's application of *Pullman* abstention is one in which the state-law question is an unsettled issue best decided by state courts." *Jones v. Coleman*, 848 F.3d 744, 749-750 (6th Cir.2017) (citing *Moore*, 420 U.S. at 83-84). On Plaintiffs' own allegations, an unclear state law is at issue.

Further, Plaintiffs' mandamus action remains pending before the Ohio Supreme Court and, if successful, Plaintiffs' federal claims will be obviated because a ruling in Plaintiffs' favor results in the Attorney General certifying Plaintiffs' petition under the current statutory scheme. *See* Mandamus Compl., Exh. A at p. 26. Deciding the scope of the Attorney General's authority under O.R.C. § 3519.01 is within the Ohio Supreme Court's authority. Ohio Constitution, Article, II Section 1g; *see Hunter v. Hamilton Cty. Bd. of Elections*, 635 F. 3d 219, 239 (2011). And "when the state-law questions have concerned matters particularly within the province of the local courts… [the United States Supreme Court has] inclined towards abstention." *Moore*, 420 U.S. at 83-84. The Sixth Circuit has held that "it is within the province of the Ohio Supreme Court" to determine whether state officials have complied with state election law. *Hunter*, 635 F.3d at 239. It is likewise within the province of the Supreme Court of Ohio to hear Plaintiffs' claims here.

For the reasons stated above, the Court should apply *Pullman* and abstain from hearing Plaintiffs' claims.

### 2.   *Colorado River* abstention

A federal court may dismiss a case because of similar pending litigation in state court. *See Colo. River*, 424 U.S. at 818-819 (1976). "Before the *Colorado River* doctrine can be applied, the district court must first determine that concurrent state and federal actions are actually parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). Once the district court finds that parallel litigation exists, the district court may look to whether to apply the *Colorado River* doctrine.

Regarding this threshold question, the Sixth Circuit has explained that "[p]arallelism does not require identical causes of action in the state and federal lawsuits." *Healthcare Co. v. Upward Mobility, Inc.*, 784 Fed. Appx. 390, 394 (6th Cir. 2019). The state court proceedings need only be "'substantially similar.'" *Bates v. Van Buren Twp.*, 122 Fed. Appx 803, 806 (6th Cir. 2004),

quoting *Romine*, 160 F.3d at 340. The state and federal proceedings being '"substantially similar"' and '"predicted on the same allegations as to the same material facts"' is enough to satisfy the parallelism requirement. *Healthcare Co., 748* Fed. Appx at 394, quoting *Romine*, 160 F.3d at 340.

Here, as stated above, Plaintiffs first initiated state court proceedings in the Ohio Supreme Court. *See* Exhibit A. Plaintiffs' state complaint and federal complaint are predicated on the same allegations as to the same material facts—that Attorney General Yost improperly declined to certify their petition summary. While the individual causes of action in the state and federal complaint are not carbon copies, they do not need to be. *Healthcare Co.*, 748 Fed. Appx at 394. The material facts alleged in both proceedings are the same, and the causes of action in both proceedings are geared towards obtaining petition certification. Because the state proceeding is substantially similar, the parallelism requirement is satisfied.

Turning to the doctrine's application, there is no "hard-and-fast rule" for abstention under *Colorado River. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). The Sixth Circuit has referred to eight factors for consideration. *Romine,* 160 F.3d at 340-341. A district court must consider: 1) "whether the state court has assumed jurisdiction over any res or property"; 2) "whether the federal forum is less convenient" for the parties; 3) the "avoidance of piecemeal litigation"; 4) "the order in which jurisdiction was obtained"; 5) "whether the source of governing law is state or federal"; 6) "the adequacy of the state court action to protect the federal plaintiff's rights; 7) "the relative progress of the state and federal proceedings"; and 8) "the presence or absence of concurrent jurisdiction[.]" *Id.* Application of these factors is not a "mechanical checklist" but instead requires "a careful balancing." *Bates*, 122 F.App'x at 806. Nonetheless, the "most important" factor courts are to consider is whether there exists a "clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication.'" *Answers in Genesis of*

*Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colo. River,* 424 U.S. at 819).

Factors one and two do not cut in favor of abstention—the Supreme Court of Ohio has not exercised jurisdiction over any res or property, and federal court is not inconvenient for the parties. However, the "most important factor," the avoidance of piecemeal litigation, strongly weighs in favor of the Court abstaining. The concern with piecemeal litigation is the "risk of inconsistent results." *Seaman Corp v. Flaherty*, N.D. Ohio No. 5:20-CV-443, 2020 U.S. Dist. LEXIS 146073, at*10 (March 3, 2020). Plaintiffs' claims in state court are proceeding forward, and the potential for inconsistent results is patent. The Supreme Court of Ohio could find for Attorney General Yost, only for this Court to find that the statute was unconstitutionally applied in that Attorney General Yost acted outside the scope of his statutory authority. Or, the Supreme Court could find for Plaintiffs, only to have this Court find that Attorney General Yost did act within the scope of his authority. Such risk goes to the heart of what factor three seeks to prevent.

Factors four (order in which jurisdiction was obtained) and five (governing law being state or federal) also weigh towards abstention. By Plaintiffs' choice, the Ohio Supreme Court first obtained jurisdiction. The governing law here pertains to Ohio's initiative-procedure regulations, which govern Attorney General Yost's review of their petition summar*y.* O.R.C. § 3519.01(C). And, the Ohio Supreme Court has exclusive and original state-court jurisdiction to hear this type of case. Ohio Constitution, Article, II Section 1g; *see Healthcare Co., 748* Fed. Appx at 396. ("The fifth factor weighs in favor of abstention because [state law] would govern… the claim").

The remaining three factors add further weight in favor of abstention. Factor six (adequacy of state action to protect federal plaintiffs' rights) is satisfied by the Court abstaining because, as explained above, Plaintiff can achieve what they ultimate seek—petition certification—in state

court. Factor seven (relative progress of state court proceedings) also weighs in favor of abstention because the proceedings commenced before Plaintiff filed their federal claim, and both cases are in their relative infancy. And as stated above, if the Court proceeds in parallel with the state proceedings, inconsistent results could occur. Lasty, factor eight (presence or absence of concurrent jurisdiction) weighs in favor of abstention because, again, the relief sought by Plaintiff is retroactive in nature and this Court does not have concurrent jurisdiction. *See, e.g., S&M Brands, Inc*, 527 F.3d at 508.

When taken as a whole, these factors weigh in favor of abstention. For the reasons stated, the Court should abstain under *Colorado River*.

**E.     Plaintiffs fail to state a claim upon which relief can be granted and, for the same reasons, are not likely to succeed on the merits.**

Even if the Court is inclined to exercise jurisdiction and not abstain, Plaintiffs' complaint fails to state a valid First Amendment claim. For the reasons that follow, their motion for preliminary relief should be denied, and their complaint should be dismissed.

**1.     O.R.C. 3519.01(A) and (C) are content-neutral regulations of election mechanics which easily survive rational-basis review.**

The First Amendment "does not protect the right to make law, by initiative or otherwise." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006) (en banc); *see also, e.g.*, *John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) ("[W]e must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution."). To be sure, once a state establishes a citizen-initiative process, that process must comport with the First Amendment. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir.1993). But initiative-related laws that regulate election *mechanics* do not infringe on core political speech and, as a result, do not invite heightened First Amendment scrutiny. *See, e.g., Walker*, 450 F.3d at 1100-01; *Biddulph v.*

14

*Mortham*, 89 F.3d 1491, 1498 (11th Cir.1996); *Pest Committee v. Miller*, 626 F.3d 1097, 1107 (9th Cir.2010); *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir.2000). In contrast, initiative-related laws implicate the First Amendment only if they impinge upon the communicative exchange between petitioners and electors. *See, e.g., Meyer v. Grant*, 486 U.S. 414, 424-25 (1988); *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 197-200 (1999).

Put another way, the First Amendment requires heightened scrutiny of laws regulating "the process of advocacy itself" which accompanies an initiative drive. *Walker*, 450 F.3d at 1099. For instance, the First Amendment precludes laws that regulate *who* can speak on behalf of a petition, such as by prohibiting paid circulators or requiring them to be registered voters. *Meyer*, 468 U.S. at 424-25. It similarly prohibits regulating *how* one can speak on behalf of a petition, such as by requiring circulators to wear name badges. *Buckley*, 525 U.S. at 197-200 (1999). These types of laws directly impact speech by regulating "advocacy itself." *Walker*, 450 F.3d at 1099. This requires heightened First Amendment scrutiny because they restrict "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 468 U.S. at 421-22.

Laws that regulate the *process* by which initiatives proceed are different. Indeed, because the First Amendment does not confer a right to legislate, a state may remove certain matters entirely from initiative eligibility without implicating the First Amendment. *See, e.g., Marijuana Policy Project v. United States*, 304 F.3d 82, 85-86 (D.C. Cir.2002). Likewise, laws that govern initiative procedures do not implicate the First Amendment—there is no First Amendment right, for instance, to initiative passage by simple majority vote, or to avoid pre-submission state-court review of an initiative's constitutionality. *See, e.g., Skrzypczak v. Kauger*, 92 F.3d 1050, 1053 (10th Cir. 1996) (pre-submission review); *Walker*, 450 F.3d at 1103 (majority vote).

15

For example, while the District of Columbia extends the right of initiative, that right is limited to certain subjects; others, including the imposition of commuter taxes and reduction of drug-offense penalties, may not be legislated by initiative. *Marijuana Policy*, 304 F.3d at 84-86. To facilitate this limitation, the D.C. Board of Elections and Ethics acts as "the gatekeeper for the initiative process" and is tasked with determining whether a "proposed measure constitutes a 'proper subject' for an initiative" before proponents may begin collecting signatures. *Id.* at 84 (quoting D.C. CODE ANN. § 1-1001.16(b)(1)). The D.C. Circuit Court of Appeals rejected a First Amendment challenge to this "proper subject" gatekeeping function. *Id.* at 85-87.

It follows, then, that states may also require pre-submission review of initiatives without implicating the First Amendment. *See, e.g., Skrzypczak*, 92 F.3d at 1053. In *Skrzypczak* the court upheld a pre-submission constitutionality review of initiative petitions. *Id.* Because there is no "protected right to have a particular initiative on the ballot[,]" Oklahoma could shape the procedural contours of the right in this manner without offending (or even implicating) the First Amendment. *Id.* Distinguishing between "legally-protected interest in free speech" and a "personal desire to have [the initiative] on the ballot[,]" the court noted that although her petition was removed from the ballot, Skrzypczak was still free to speak publicly against abortion or any other issue. *Id.* Oklahoma law did "nothing to restrict speech: neither Skrzypczak nor anyone else has been silenced by pre-submission content review" and the First Amendment did not apply. *Id.*

Indeed, the Sixth Circuit upheld a law requiring election officials to "review, examine, and certify the sufficiency and validity of petitions" and to "examine each initiative petition . . . to determine whether the petition falls within the scope of authority to enact via initiative" before placing an initiative on the ballot. *Schmitt v. LaRose*, 933 F.3d 628, 634 (6th Cir.2019) (citation and quotation marks omitted). Ohio law limits local initiatives to legislative (as opposed to

administrative) subjects, and so election officials must review petitions to ensure only legislative issues reach the ballot. *Id.* at 635. The majority applied the *Anderson-Burdick* balancing test[1], but the concurring opinion would have subjected the pre-submission review law to rational-basis review because such mechanical initiative-procedure regulations do not implicate the First Amendment. *Id.* at 643 (Bush, J., concurring).

Courts have also upheld other additional procedural requirements as not implicating the First Amendment. In *Walker*, the Tenth Circuit found that a Utah law imposing a supermajority vote for passage of wildlife-related initiatives did not implicate the First Amendment "at all." 450 F.3d at 1099. The plaintiff argued that the supermajority requirement violated the First Amendment because it "had 'the inevitable effect of reducing the total quantum of speech on a public issue.'" *Id.* at 1100 (quoting *Meyer*, 486 U.S. at 423). The court, in rejecting this argument, made an important distinction between laws that reduce speech because they restrict or regulate speech, and laws that do so because they make "particular speech less likely to succeed." *Id.* The First Amendment is not concerned with the latter—otherwise, "every structural feature of government that makes some political outcomes less likely than others" would violate the First Amendment. *Id.*

Thus, the weight of authority shows that laws regulating initiative procedure do not warrant *any* heightened scrutiny, much less strict scrutiny. A far less searching standard was applied by the Sixth Circuit in *Taxpayers United*. 994 F.2d at 297. "Because the right to initiative is a wholly state-created right," states can "constitutionally place nondiscriminatory, content-neutral limitations" on citizens' "ability to initiate legislation." *Id.* The state need only show such a

---

[1] The *Anderson-Burdick* test is discussed in more detail below. Even if the Court is inclined to apply it, Ohio's initiative procedure still comfortably satisfies the First Amendment.

regulation is "reasonably related to" its claimed interest. *Id.* Applying the foregoing principles here, R.C. 3519.01(A) and (C) are election-mechanics regulations. At most, they restrict citizens' legislative authority and regulate initiative procedure—not the speech or expressive conduct surrounding an initiative. Accordingly, the challenged laws need only survive rational-basis review.

As a threshold matter, the laws at issue here are election-mechanics regulations of the initiative process. Ohio Revised Code § 3519.01(A) restricts citizens' authority to circulate an initiative petition without first obtaining verification from the Secretary of State for the signatures on the proposed petition, as well as certification from the Attorney General that the petition's summary is fair and truthful. The statute also provides a direct avenue to Ohio's highest court for review of a challenged certification decision. O.R.C. § 3519.01(C). These laws are closely akin to the procedural or mechanical laws governing initiatives cited above, which were subject to rational-basis review. Plaintiffs' lack the legislative authority to proceed with their initiative absent the requisite certification, just as the plaintiffs in *Marijuana Policy Project* did not have the legislative authority to place drug-offense initiatives on the ballot in the District of Columbia. And the statute's pre-submission review requirements, like those at issue in *Schmitt* and *Skrzypczak*, do not prevent Plaintiffs from speaking in any way. Plaintiffs remain free to publicly advocate in favor of their petition or against Ohio's initiative process or on whatever issue they so choose.

As a result, O.R.C. § 3519.01(A) and (C) need only satisfy rational-basis review. That is, the state must show that these provisions are "content-neutral nondiscriminatory regulations" that are "reasonably related to" the state's professed interest. *Taxpayers United*, 994 F.2d at 297. This standard is easily met. First, the Sixth Circuit has found that if a law applies equally to all petitions regardless of subject matter, it is content-neutral. *Comm. to Impose Term Limits on the Ohio*

*Supreme Ct. v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018). O.R.C. § 3519.01(A) and (C) are content-neutral because they apply equally to all initiative petitions. Further, Plaintiffs do not allege or even suggest that these statutory requirements are somehow discriminatory. Thus, they survive if they "reasonably relate to" a state interest.

The Attorney General's fair-and-truthful review set forth in O.R.C. § 3519.01(A), which has been in place for nearly a century, reasonably relates to Ohio's interests in voter education, fraud deterrence, and election integrity and honesty. In the referendum context, Ohio's Tenth District Court of Appeals has noted that the summary requirement may help electors "understand the content of the law more efficiently than if they had to rely solely on a review of the entire law, especially where the law sought to be repealed is lengthy, complicated or difficult to navigate." *Schaller v. Rogers*, 10th Dist. Franklin No. 08AP-591, 2008-Ohio-4464, ¶ 46. It "may also help deter circulation fraud and abuse by deterring circulators from misrepresenting the contents or impact of the law sought to be repealed." *Id.* at ¶ 47. And because "[a] summary is valuable to a potential signer only if it is fair and truthful," the Attorney General's review "may be a reasonable method" to ensure the integrity of an initiative petition. *Id.* at ¶ 48. Adopting the reasoning in *Schaller*, the Supreme Court of Ohio subsequently blessed the Attorney General's fair-and-truthful review under O.R.C. § 3519.01(A). *See State ex rel. Ethics First-You Decide Ohio PAC v. DeWine*, 147 Ohio St. 3d 373, 2016-Ohio-3144, ¶ 18-19. Thus, O.R.C. § 3519.01(B) and (C) satisfy rational-basis review. Plaintiffs have accordingly failed to state a claim upon which relief can be granted and, for the same reasons, their motion for a temporary restraining order and preliminary injunction must fail.

## 2. Even if heightened scrutiny applies, O.R.C. § 3519.01(A) and (C) pass constitutional muster.

Should the Court decide that the First Amendment is implicated by O.R.C. § 3519.01(A)

19

and (C) and apply the test set forth in *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the statutes survive. There is no authority suggesting that Ohio's pre-submission initiative review process should be subject to strict scrutiny. Instead, the process imposes a relatively minimal burden on Plaintiffs' rights and that burden is easily justified by the paramount interests Ohio has in voter education, fraud deterrence, and maintaining the integrity of the initiative process. Plaintiffs' arguments otherwise are based upon misapplications of case law.

Plaintiffs' claim that "[b]allot initiatives implicate 'core political speech[,]'" and therefore any law "covering the initiative process" is subject to strict scrutiny. Mot. for TRO and PI, ECF No. 2 at Page ID # 49 (quoting *Meyer*, 486 U.S. at 420, 422, 425). This is vastly oversimplified. Plaintiffs overread *Meyer*—only those initiative regulations that directly regulate speech or expressive conduct implicate the First Amendment at all. Plaintiffs dovetail their misreading of *Meyer* into a misreading of *Schmitt*: they contend *Schmitt* stands for the proposition that, under *Anderson-Burdick,* Ohio must "provide both 'timely [judicial redress]' and de novo judicial review" of a certification decision by the Attorney General under O.R.C. § 3519.01(A). Mot. for TRO and PI, ECF No. 2 at Page ID # 50. According to Plaintiffs, this apparently means that in all challenges to certification decisions—whether filed 91 or 301 days before the next election—an "automatic expedition consideration process" is required to avoid strict scrutiny. *Id.* at Page ID # 52. But *Schmitt* says nothing of the sort.

In fact, *Schmitt* actively undermines Plaintiffs' arguments. The *Schmitt* plaintiffs argued that Ohio's initiative process did not provide timely redress and de novo review of a challenge to the decision of a local board of elections. 933 F.3d at 639-40. They claimed that the process was therefore subject to strict scrutiny because, under *Anderson-Burdick*, it placed a "severe burden" on their First Amendment rights and resulted in "virtual exclusion" from the ballot. *Id.*

20

Plaintiffs' first mistake: with respect to a purported right to de novo review, the *Schmitt* opinion actually noted that "Plaintiffs have not identified the source of such a right[,]" and "even accepting Plaintiffs' argument that the First Amendment requires de novo review . . . the Ohio case law suggests petitioners receive essentially that." *Id.* at 639. "If there is any actual distance between the de novo standard of review Plaintiffs demand and the mandamus review provided by the Ohio Supreme Court," the Sixth Circuit held, "it is hardly significant enough to result in 'virtual exclusion from the ballot.'" *Id.* at 640. The same is true with respect to the mandamus review provided for in O.R.C. 3519.01(C).

Plaintiffs' second mistake: with respect to "timely redress," is that the Sixth Circuit expressly found that "*because Ohio Supreme Court rules provide for expedited briefing and decision in election cases*, aggrieved citizens who challenge an adverse decision *are able to seek timely redress*." *Id.* at 640 (emphasis added). In other words, *Schmitt* tells us only that an opportunity for timely redress that satisfies the First Amendment *is already provided* by expedited review within 90 days before an election. What is more, *Schmitt* expressly forecloses Plaintiffs' reliance on prior-restraint cases in terms of what constitutes "timely redress" because "the heightened procedural requirements imposed on systems of prior restraint . . . are inappropriate in the context of ballot-initiative preclearance regulations." *Schmitt*, 933 F.3d at 638-39.[2]

Ultimately, the *Schmitt* court applied the *Anderson-Burdick* framework and found that the burden imposed by Ohio's initiative procedure was "somewhere between minimal and severe," which required "a flexible analysis" in which the burden of the restriction is weighed against the

---

[2] This distinction is not, as Plaintiffs excitedly draw it, between strip clubs and voters. *See* Mot. for TRO and PI, ECF No. 2 at PageID # 54 ("[Prior restraint] logic should apply equally here. If it does not, then strip clubs would have more protections than voters!"). It is between systems of prior restraint and ballot-initiative preclearance regulations—categories the Sixth Circuit has found to be mutually exclusive.

state's interests and chosen means of pursuing them. *Id.* at 641 (citing *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016)). Acknowledging Ohio's interests in "ensuring that its elections are run fairly and honestly" and "maintaining the integrity of its initiative process[,]" the Sixth Circuit found Ohio's claimed interests to be "legitimate and substantial." *Id.* As such, Ohio's initiative process did "not impose a significant or unjustified burden on initiative proponents' First Amendment rights." *Id.*

*Schmitt* applies with equal force to Plaintiffs' First Amendment claims. Like in *Schmitt*, Plaintiffs have not shown a constitutional right to de novo review but, even assuming this to be true, they are afforded essentially that. Similarly, Plaintiffs are also afforded sufficiently timely redress. The Attorney General's fair-and-truthful determination must be completed in a short turnaround period: within ten days of receipt of a petition and accompanying summary. O.R.C. § 3519.01(A). And, rather than having to percolate up through Ohio's lower courts, any challenge to that determination gets a direct avenue to Ohio's highest court. O.R.C. § 3519.01(C). Further, as Plaintiffs admit, if such a challenge is filed within 90 days of an election, the Supreme Court provides automatic expedited review. Ohio Sup.Ct.R.Prac. § 12.08. In sum, under *Schmitt*'s reasoning, Ohio already provides timely redress and any delay complained of here does not approach "virtual exclusion" from the ballot. *See Schmitt*, 933 F.3d at 640. Indeed, Plaintiffs are free to resubmit their petition and summary as many times as they wish. Although they would prefer their petition to be placed on the next election's ballot, there exists no First Amendment right to have a particular petition on a particular ballot. *Walker*, 450 F.3d at 1100-01; *Skrzypczak*, 92 F.3d at 1053; *Marijuana Policy*, 304 F.3d at 85-87.

The weight of authority demonstrates that Ohio's interests in voter education, fraud deterrence, and election integrity and honesty justify the relatively minimal burden Ohio's

initiative process places on Plaintiffs. Thus, even if the Court applies *Anderson-Burdick*, O.R.C. §
3519.01(A) and (C) soundly satisfy First Amendment scrutiny. Plaintiffs therefore fail to state a
valid First Amendment claim, and their motion should be denied.

### 3. Plaintiffs' as-applied challenge fails as well.

Plaintiffs' as-applied challenge fares no better than their facial challenge. At the outset, the
distinction between a facial and as-applied challenge "goes to the breadth of the remedy employed
by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*,
558 U.S. 310, 331 (2010). The gist of the relief sought here is (1) an injunction requiring Attorney
General Yost to certify Plaintiffs' summary, and (2) a declaration that O.R.C. § 3519.01(A) and
(C) are unconstitutional.[3] Given the breadth of the latter relief, their as-applied challenge must
center on the former. But, as explained, this Court lacks jurisdiction under the Eleventh
Amendment to order the "reversal" of a single prior act by the Attorney General, and the
overwhelming weight of authority militates against declaring the statutes unconstitutional.

Moreover, Plaintiffs have simply failed to allege a valid as-applied challenge. Ultimately,
their as-applied challenge rests on the allegations that, absent expedited proceedings, "the Ohio
Supreme Court is not likely to resolve Plaintiffs' case" in time for Plaintiffs to have adequate time
to collect the signatures necessary for the petition to qualify for the next election. Compl., ECF
No. 1 at PageID # 6-8, 11-12. But, again, Plaintiffs have no First Amendment right to place a
particular initiative on a particular ballot, and allegations that Ohio's initiative regulations make it
more difficult for their petition to be placed onto the November 2024 ballot do not rise to a
constitutional violation—whether facial or as-applied. *See, e.g., Comm. to Impose Term Limits*,

---

[3] As noted above, the *only* relief sought in Plaintiffs' Motion for Temporary Restraining Order and
Preliminary Injunction is an order that Attorney General Yost certify Plaintiffs' summary. Mot.
for TRO and PI, ECF No. 2 at PageID # 62.

885 F.3d at 448; *Walker*, 450 F.3d at 1100-01; *see also Dobrovolny v. Moore,* 126 F.3d 1111, 1113 (8th Cir. 1997), *cert. denied*, 523 U.S. 1005, 118 S. Ct. 1188, 140 L. Ed. 2d 319 (1998) ("[T]he difficulty of the process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the [referendum process] is not affected.")

Plaintiffs' contentions regarding the propriety of the Attorney General's review of their petition are best left for resolution by the Supreme Court of Ohio, but a brief word on this point is necessary in the as-applied context. Plaintiffs claim without evidence that there are "virtually no circumstances" under which Attorney General Yost will certify their petition because he has rejected their summaries in the past. Mot. for TRO and PI, ECF No. 2 at PageID # 55. This is incorrect—Plaintiffs need only submit a fair and truthful summary of the proposed amendment. They have not done so.

Plaintiffs claim that Attorney General Yost's treatment of the language "or any subset thereof" in his November 17, 2023 and March 14, 2024 rejection letters was "self-contradictory and inconsistent." Mot. for TRO and PI, ECF No. 2 at PageID # 55. Not so. In their November of 2023 submission, Plaintiffs failed to include in their summary that the proposed amendment abrogated "any immunities or defenses which are only available to *government actors or any subset thereof*[.]" Compl., ECF No. 1 at PageID # 19, 21, 29 (emphasis added). Plaintiffs were informed that the summary omitted the amendment's abrogation not just of "immunities or defenses which are only available to government actors," but also those only available to "any subset" of a "government actor." *Id.* at PageID # 29.

Plaintiffs then attempted to remedy this problem, but *inserted "or any subset thereof" in the wrong location.* That is, their March of 2024 summary stated that, under the amendment, "no government actor shall enjoy or may rely upon any immunities or defenses, *or any subset thereof,*

which are only available to government actors . . . ." Compl., ECF No. 1 at PageID # 32. The amendment *does not say this*. Plaintiffs' attempt to address this problem compounded it instead. They inserted a category into the summary which does not exist in the amendment (subsets of immunities or defenses), while continuing to omit a category which does exist (subsets of government actors). To be sure, both categories are ostensibly within the universe of the types of immunities or defenses which the proposed amendment would abrogate. But "subsets of immunities or defenses" and "subsets of government actors" are two different categories nonetheless, and they mean two different things. In this regard, and on both occasions, Plaintiffs' summaries failed to encapsulate what the amendment actually says.

Next, Plaintiffs take exception with Attorney General Yost's identification of duplicative and confusing consecutive sentences regarding the amendment's statute of limitations within the March of 2024 summary. Mot. for TRO and PI, ECF No. 2 at PageID # 58. Plaintiffs calls the second sentence "reiterative," Compl., ECF No. 1 at PageID # 4. Regardless, the sentences consecutively say two slightly different things about one statute of limitations provision, which poses the risk of a reader assigning misplaced significance to their repetition. Finally, Plaintiffs also take issue with the Attorney General's review of the title of the summary. But, again, the question of whether a petition summary's title is within the scope of review under O.R.C. § 3519.01(A) is a question pending before the Ohio Supreme Court that this court should undoubtedly refrain from considering in any First Amendment analysis.

For the foregoing reasons, Plaintiffs have failed to state a valid as-applied claim, and are not likely to succeed on the merits of that claim.

### F. The remaining preliminary-injunction factors weigh against injunctive relief.

Balancing the alleged harm to Plaintiffs against the harm to others and the public interest

makes clear their motion for injunctive relief should be denied. Plaintiffs claim that any "impediment on First Amendment rights, even for brief periods, causes irreparable harm[,]" and that harm is exacerbated because the November 2024 election is approaching. Mot. for TRO and PI, ECF No. 2 at PageID # 61. But, as explained, Plaintiffs have not shown an impairment of their First Amendment rights, and, as a consequence, have failed to show irreparable harm. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

Further, and given that Plaintiffs' claimed injury is essentially that the alleged constitutional violations will make it more difficult for their initiative to be placed on the ballot, they have failed to establish irreparable harm absent injunctive relief for another reason. They mistakenly assume that if their petition is certified, they will successfully clear the remaining constitutional hurdles necessary for it to be placed on the ballot. However, the majority of proposed petitions—even when Attorney General certifies their summaries as fair and truthful under R.C. 3519.01—don't ever see a general election ballot. *See* "List of petitions submitted to the Attorney General's Office," https://www.ohioattorneygeneral.gov/Legal/Ballot-Initiatives/Petitions-Submitted-to-the-Attorney-General-s-Offi.

Relators' petition here is in its infancy. They offer no allegations supporting their fundamental assumption that their petition—even if certified as fair and truthful—will survive the remaining constitutional hurdles in time for the 2024 general election. In any event, the July 3 filing deadline for this year's general election does not represent Relators' only chance to have their proposed amendment decided by the voters. As noted, they retain the ability to submit their petition in subsequent elections, should it ever clear the constitutional hurdles that all petitions for constitutional amendments face.

Meanwhile, as shown above, Ohio has an interest in ensuring that voters are fully, fairly, and truthfully informed of a petition's contents. *See supra.* An injunction would in fact subject the *State* to irreparable harm: "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S.Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quotation omitted).

Nor does the public interest does not favor injunctive relief. The public, like Ohio, has an interest in honest and fair elections, including honesty, fairness, and integrity in the initiative process. Moreover, the public interest typically does not favor the alteration of election processes shortly before election-related deadlines—particularly when there is a risk for conflicting orders. *See, e.g., Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."). What should happen if this Court orders certification of Plaintiffs' petition to the Ballot Board, and the Plaintiffs begin obtaining signatures, only for the Supreme Court of Ohio to find that the Attorney General acted properly within the scope of O.R.C. § 3519.01(A)? The confusion caused by the issuance of Plaintiffs' requested injunction would be actively harmful to the public interest.

In sum, the balance of interests favors the denial of Plaintiffs' motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be denied, and Plaintiffs' Complaint should be dismissed.

27

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069792)*
*Counsel Of Record*
STEPHEN P. TABATOWSKI (0099175)
ELIZABETH H. SMITH (0076701)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Elizabeth.Smith@OhioAGO.gov

*Counsel for Defendant David Yost*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing. Parties have access to this filing through the Court's system.

*/s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069792)
Assistant Attorney General