IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Cynthia Brown, et al., | Case No. 2:24-cv-1401 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Deavers |
| David Yost, Ohio Attorney General, | |
| Defendant. | |

Opinion and Order

This First Amendment action is before the Court on plaintiffs' motion for a temporary restraining order and preliminary injunction under Rule 65, Fed. R. Civ. P. For the reasons stated below, the motion is DENIED.

I.  Background

The Ohio Constitution reserves to the people the right to amend the state Constitution by initiative. *See* Ohio Const., art. II, § 1a. Plaintiffs Cynthia Brown, Carlos Buford, and Jenny Sue Rowe are members of a committee attempting to place a citizen-initiated constitutional amendment on the ballot for November 5, 2024 general election. *See* O.R.C. § 3519.02 (requirement of a committee). The proposed constitutional amendment is entitled, "Protecting Ohioans' Constitutional Rights," and it would create a private cause of action against state "government actors" under certain circumstances. *See* Compl., Ex. 3.

Ohio law requires citizens to satisfy several steps before receiving final approval for placement of their proposed amendment on the ballot. *See generally State ex rel. DeBlase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶¶ 4–5, 173 Ohio St.3d 191, 192–93 (Ohio 2023). After a committee is created, the next step is to file a petition with the Attorney General. The petition must be signed by 1,000 qualified Ohio electors and include the full text, as well as a summary, of the proposed constitutional amendment. *See* O.R.C. § 3519.01(A).

The Attorney General then conducts "an examination of the summary." O.R.C. § 3519.01(A). If the Attorney General finds that "the summary is a fair and truthful statement" of the proposed constitutional amendment, he "shall so certify and then forward the submitted petition to the Ohio

1

ballot board for its approval under division (A) of section 3505.062 of the Revised Code." *Id.* The summary serves a role down the road as the committee seeks to obtain a much larger number of signatures to get the initiative placed on the ballot, helping "potential signers understand the content of the law more efficiently than if they had to rely solely on a review of the entire law." *Schaller v. Rogers*, No. 08AP–591, 2008-Ohio-4464, ¶ 46, 2008 WL 4078446, at *10 (Ohio Ct. App. Sept. 4, 2008). *See* O.R.C. § 3519.05(A) (the summary must appear on the initiative petitions circulated in support of proposed constitutional amendments during the signature-gathering phase).

Plaintiffs allege in their verified complaint that they have tried several times and failed to obtain the Attorney General's certification of their summary. Relevant to the present dispute, on March 5, 2024, plaintiffs submitted a petition to the Attorney General with their summary, proposed constitutional amendment, and 1,000 supporting signatures. *See* Compl, ¶¶ 6, 34. Their petition triggered a review process under which the Attorney General had ten business days to "examine the summary and, if in the attorney general's opinion, the summary is a fair and truthful statement of the measure to be referred, so certify." O.R.C. § 3519.01(B)(3).

On March 14, 2024, the Attorney General issued a letter decision declining to certify plaintiffs' summary. *See* Compl., Ex. 4. The Attorney General found, among other deficiencies, that the summary contained misleading statements regarding the scope of the proposed amendment and confusing language about a statute of limitations. According to plaintiffs, the reasons given by the Attorney General are flawed and contradict an earlier decision of the Attorney General, issued November 17, 2023, in which he declined to certify a petition previously submitted by plaintiffs. *See id.*, Ex. 2.

Plaintiffs then exercised their right to direct judicial review by the Ohio Supreme Court. *See* O.R.C. § 3519.01(C) ("Any person who is aggrieved by a certification decision . . . may challenge the certification or failure to certify of the attorney general in the supreme court, which shall have exclusive, original jurisdiction in all challenges of those certification decisions."). Plaintiffs filed a complaint for writ of mandamus in the Supreme Court of Ohio on March 20, 2024. Plaintiffs alleged the Attorney General's decision was arbitrary, capricious, and an abuse of discretion. They also asserted that their rights under the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, would be violated "should Ohio law and [the Ohio Supreme] Court's rules not provide timely de novo review." *State ex rel. Brown v. Yost*, Case No. 2024-0409, Compl., p. 25. Plaintiffs requested a writ directing the Attorney General to certify plaintiffs' summary and forward their petition to Ohio Ballot Board.

On the same day, March 20, plaintiffs filed a motion for the Ohio Supreme Court to expedite review of their complaint for writ of mandamus. They argued it would violate their First Amendment rights if the Supreme Court were to deny them expedited, de novo review of the Attorney General's decision. On March 26, the Supreme Court denied the motion for expedited review, without comment.

Of concern to plaintiffs is the upcoming deadline for them to complete all of the required steps to place their proposed constitutional amendment on the ballot for the November 5, 2024 general election. By no later than July 3, 2024, which is 125 days before the general election, they must complete the steps, including obtaining "the signatures of ten per centum of the electors," which plaintiffs say is more than 400,000 signatures. Ohio Const., art. II, § 1a.

On March 27, plaintiffs filed this action, along with a motion for a temporary restraining order and preliminary injunction. The crux of plaintiffs' case is their claim to a First Amendment right to timely and de novo judicial review and resolution of the Attorney General's adverse certification decision.

The complaint presents facial and as-applied First Amendment challenges. Their facial challenge alleges, "Ohio's delegation to Defendant of the authority to reject summaries of proposed constitutional amendments pursuant to O.R.C. § 3519.01(A) coupled with its failure to provide for immediate judicial review and resolution in the Ohio Supreme Court under O.R.C. § 3519.01(C) facially violates the First Amendment." Compl., ¶ 44. In their as-applied challenge, plaintiffs allege "[i]n the absence of expedited proceedings, the Ohio Supreme Court is not likely to resolve Plaintiffs' case within weeks or months," which means that "Defendant's and Ohio's application of its laws and rules in this case have denied Plaintiffs a 'timely resolution' of their challenge to Defendant's rejection of their summary." *Id.*, ¶¶ 57, 59.

Plaintiffs seek a declaration that O.R.C. §§ 3519.01(A) and (C) are unconstitutional. They also seek an order requiring the Attorney General to certify their summary and forward their petition to the Ballot Board.

II.     **Standard of Review**

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure, while temporary restraining orders are available under Rule 65(b). Both are extraordinary remedies governed by the following considerations: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether

3

granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A mere possibility of injury is not enough. *Id.*

### III. Likelihood of Success

Defendant offers four reasons why plaintiffs cannot establish a strong likelihood of success on the merits. Three of the reasons go to threshold issues of sovereign immunity, abstention, and standing, which are addressed in turn below. Defendant also argues that plaintiffs' First Amendment claims are likely to fail for the substantive reason that the statue and rules at issue are content-neutral regulations of election mechanics and they survive either a rational-basis review or intermediate-level scrutiny.

#### A. Threshold Issues

##### 1. Eleventh Amendment Immunity

Plaintiffs sue defendant in his official capacity as the Attorney General for the State of Ohio. Generally, an official capacity suit is treated as one against the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment to the United States Constitution grants sovereign immunity to the States except when the State consents to be sued, when Congress abrogates a State's immunity, or when the *Ex parte Young* exception applies. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Under *Ex parte Young*, "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n. 14. The *Ex parte Young* exception permits a federal court to "issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. . . . [but] the *Ex parte Young* exception does not . . . extend to any retroactive relief." *S & M Brands*, 527 F.3d at 507–08.

4

Defendant argues that plaintiffs are seeking retroactive relief. In defendant's view, plaintiffs are challenging a past action, namely, the Attorney General's March 14, 2024 decision declining to certify their summary of the proposed constitutional amendment as fair and truthful. Because plaintiffs seek to undo the effect of a past action, defendant argues the relief sought is retroactive in nature.

The Court disagrees and finds that the *Ex Parte Young* exception to immunity applies here. Though plaintiffs take issue with the Attorney General's refusal to certify their summary, they are not challenging his decision in this suit. *See* Doc. 16 at PAGEID 131 ("Plaintiffs do not challenge the merits of Defendant's rejection of their summary, or whether it was proper under Ohio law."). Rather, they argue that the unavailability of expedited, state court review of the Attorney General's decision infringes their First Amendment interests. The injunction which plaintiffs seek – requiring the Attorney General to certify their summary – is not based on the alleged incorrectness of a past decision, but on prospectively addressing a violation of their asserted First Amendment right to have the proposed constitutional amendment placed on the ballot. Because plaintiffs seek prospective injunctive relief which they believe would compel the State's compliance with the First Amendment, the Court finds that defendant is not protected by sovereign immunity.

    **2.  Abstention**

Defendant argues that two separate abstention doctrines apply here. The first is *Pullman* abstention. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). In *Pullman*, the Supreme Court "held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). "The equitable considerations of *Pullman* abstention are typically applied when an unsettled state-law question is best decided by or already pending in state courts." *Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018).

The Court finds that *Pullman* abstention does not apply. Defendant argues that the unsettled question of state law is whether the Attorney General exceeded his authority in declining to certify plaintiffs' summary. Plaintiffs have presented the state law issue to the Ohio Supreme Court but not to this Court. The sole issue here is whether plaintiffs' First Amendment rights are violated by the alleged lack of expedited judicial review of the Attorney General's adverse certification decision. The

5

Court can resolve the First Amendment question independently from the Ohio Supreme Court's resolution of the state law issue.[1]

Defendant next cites the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Under *Colorado River*, a federal court may abstain from exercising jurisdiction where there is a parallel state proceeding and "reasons of wise judicial administration" support abstention. *Id.* at 818. Abstention is appropriate when it will serve "judicial economy and federal-state comity . . . in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). When a parallel state court proceeding exists, the federal court should consider a number of factors in determining whether to abstain, including the "avoidance of piecemeal litigation," "the order in which jurisdiction was obtained," "the adequacy of the state court action to protect the federal plaintiff's rights," and "the relative progress of the state and federal proceedings." *Id.* at 340–41.

In determining whether federal and state proceedings are parallel, a court should examine the similarity in parties, allegations, material facts, claims, and issues. *See id.* at 340; *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 Fed. App'x 390, 394 (6th Cir. 2019). "To be parallel, the actions must involve substantially the same parties contemporaneously litigating substantially the same issues, and the critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Walker v. Cedar Fair, L.P.*, 520 F.Supp.3d 925, 929 (N.D. Ohio 2021) (internal quotation marks omitted). "Where the federal case raises issues that will not be resolved by the state proceeding, the federal court should not abstain." *Walker v. Louisville/Jefferson Cnty. Metro Gov't*, 583 F.Supp.3d 887, 897 (W.D. Ky. 2022).

The Court finds that this action is not parallel to the mandamus action in the Ohio Supreme Court. Though the parties are the same and there is factual overlap, the material facts and claims in the state action concern the merits of the Attorney General's decision to deny certification. Those facts and claims are not in dispute here. At issue here is whether the First Amendment requires that plaintiffs receive expedited, de novo judicial review of the Attorney General's decision. To be sure, plaintiffs did voice their First Amendment concerns to the Ohio Supreme Court in requesting expedited review. *See State ex rel. Brown v. Yost*, Case No. 2024-0409, Mot. to Expedite, p. 3 ("The First

---

[1] The complaint and motion for preliminary injunctive relief discuss at length the alleged incorrectness of the Attorney General's March 14, 2024 decision. Defendant's arguments about sovereign immunity and abstention are therefore understandable, even though the Court interprets the complaint as not challenging the merits of the decision.

6

Amendment requires timely and de novo review."), Compl., pp. 25–26. However, with the Ohio Supreme Court having denied expedited review, this Court has an obligation to exercise jurisdiction over plaintiffs' First Amendment claim. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (holding that a federal court should not abstain "if there is any substantial doubt as to" whether the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties").

### 3. Standing

The final threshold issue is standing. Defendant argues that the claimed injury is not fairly traceable to him because the First Amendment violation arises from alleged deficiencies with the system of judicial review and not from his actions as Attorney General.

Federal courts have the power to adjudicate only genuine "Cases" and "Controversies." U.S. Const., art. III, § 2. "That power includes the requirement that litigants have standing." *California v. Texas*, 593 U.S. 659, 668 (2021). "Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

The Court begins its standing analysis by noting plaintiffs have struggled to articulate their theory of the case. The complaint, for instance, fails to define the First Amendment right at issue. It alleges that plaintiffs' rights have been violated, but it does not identify those rights. Plaintiffs' motion for preliminary injunctive relief does shed some light on the matter. Though still not expressly identifying the claimed right, plaintiffs cite case law concerning a citizen's First Amendment interest in having the ability to place initiatives on the ballot. *See Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019). The Court would thus define the First Amendment right at issue as plaintiffs' interest in placing their proposed constitutional amendment on the ballot. *See also* Doc. 16, p. 2 (plaintiffs' reply brief describing the injury as being to their ability to place the initiative on the ballot).

Defendant contests plaintiffs' attempt to trace their alleged injury to him. The Court agrees that the posture of plaintiffs' complaint is an awkward one. Plaintiffs have sued a state executive branch official but complain of the harm inflicted by the state judicial branch's lack of action, all the while lamenting the absence of a legislative framework to protect their rights. Plaintiffs assert that their right to ballot access will be unconstitutionally burdened unless the Ohio Supreme Court acts quickly. They contend the First Amendment requires the Ohio Supreme Court to provide expedited, de novo review and resolution, yet plaintiffs refrain from asking this Court to compel the Ohio

7

Supreme Court to do so. Instead, plaintiffs' solution is for the Court to order the Attorney General to advance their petition to the next step in the ballot initiative process. Plaintiffs would have the Court require the Attorney General to certify their summary regardless of how far short it might fall of satisfying the fair-and-truthful standard. *See* Compl., ¶ 20 (arguing there is a First Amendment violation "regardless of the reasons" for defendant's decision not to certify the summary).

This allegation best illustrates the traceability problem in plaintiffs' case: "Ohio's delegation to Defendant of the authority to reject summaries of proposed constitutional amendments pursuant to O.R.C. § 3519.01(A) coupled with its failure to provide for immediate judicial review and resolution in the Ohio Supreme Court under O.R.C. § 3519.01(C) facially violates the First Amendment . . . ." Compl., ¶ 44. Plaintiffs seem to fault the State of Ohio for delegating authority to the Attorney General, while ultimately tracing their injury to the lack of expedited judicial review. Similarly, plaintiffs' as-applied challenge arises from the "Ohio Supreme Court's refus[al] to expedite review and hear Plaintiffs['] challenge under any form of emergency scheduling." *Id.*, ¶ 55. The motion for a preliminary injunction confirms plaintiffs' position on the source of their injury: "Ohio's failure to provide timely review and judicial resolution, by itself, violates the First Amendment." Doc. 2, p. 3.

Plaintiffs have avoided Eleventh Amendment immunity by virtue of the *Ex parte Young* exception, as discussed above. But *Ex parte Young* also shows why plaintiffs have failed to demonstrate traceability. "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . . ." *Ex parte Young*, 209 U.S. at 157. The Sixth Circuit has explained, "A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013). *See also Floyd v. Cnty. of Kent*, 454 Fed. App'x 493, 499 (6th Cir. 2012) (holding that the state official sued "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains.").

As defendant correctly emphasizes, he has no authority over the availability of expedited judicial review of plaintiffs' mandamus action. It is the Ohio legislature which directs that any challenge to the "failure to certify of the attorney general" be presented directly to the State's highest court. O.R.C. § 3519.01(C). And the Ohio Supreme Court decides, whether by rule or exercise of discretion, if it will review plaintiffs' action in expedited and de novo fashion.

Plaintiffs have no good answer to the traceability problem. In a single sentence they simply assert that their "injury is fairly traceable to Defendant's conduct in rejecting their initiative without

8

providing a mechanism for timely judicial review." Doc. 16, pp. 2–3. Plaintiffs make no attempt to show how defendant is responsible for the alleged absence of a mechanism ensuring timely judicial review and resolution.

Throughout their filings plaintiffs criticize defendant for opposing the motion to expedite they filed with the Ohio Supreme Court. The complaint alleges that "Defendant refused to agree to" and "formally objected to" expedited review in the Ohio Supreme Court. Compl., ¶¶ 53, 54. The motion for preliminary injunctive relief argues that "Defendant here has essentially thumbed his nose" at plaintiffs' First Amendment rights and "has argued vehemently against expedited review in the Ohio Supreme Court." Doc. 2, p. 14. In their reply brief, plaintiffs complain of "Defendant's successful opposition to such [expedited] relief" as being the cause of their injury. Doc. 16, p. 8.

The Court rejects this attempt to connect plaintiffs' injury to defendant's conduct. It was not unlawful for the defendant, as an adversary in litigation, to adopt a position contrary to plaintiffs' in the mandamus action. The Ohio Supreme Court, not defendant, denied plaintiffs' request for expedited judicial review.

Plaintiffs also argue that defendant is generally responsible for the action or inaction of the State of Ohio. In their view, because "the State he represents" fails to "provide 'timely redress' as required by the First Amendment, Defendant's rejection of Plaintiffs' initiative is unconstitutional." Doc. 16, p. 3. *Ex parte Young* again provides the answer to why plaintiffs' argument fails: a connection between the injury and the defendant's conduct is required "or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party," which the Eleventh Amendment forbids. *Ex parte Young*, 209 U.S. 123 at 157. Not every action by a state actor or agency can by default be connected to the Attorney General merely because he is a representative of the State.

The Sixth Circuit rejected a similar argument in *Top Flight*. There, the plaintiff had been denied licenses under Michigan's Bingo Act. Plaintiff sued the Michigan Attorney General in his official capacity for alleged constitutional violations relating to the enforcement of licensing rules under the Act. The court held that plaintiff had not established a connection between the Attorney General's conduct and the denial of licenses because a different state official (the Lottery Commissioner) had denied the licenses. *See Top Flight*, 729 F.3d at 634 ("Plaintiffs have not alleged how Schuette, as Attorney General, was involved in the issuance of millionaire-party licenses or the enforcement of rules under the Bingo Act.").

Plaintiffs have two separate decisions by state officials in their sights. The first is the Attorney General's March 14, 2024 decision declining to certify their summary as fair and truthful – a decision

9

without question traceable to the Attorney General. Pursuing the relief afforded them by Ohio law, plaintiffs have challenged the decision to the Ohio Supreme Court. The Attorney General's decision is not in dispute in this Court, thereby avoiding sovereign immunity and abstention problems. Nor could the Attorney General's decision itself have been a First Amendment violation, short of him denying certification on the basis of the content of plaintiffs' viewpoint, which is not what plaintiffs allege happened. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

The second decision in plaintiffs' sights is the Ohio Supreme Court's March 26, 2024 denial of their motion to expedite. This decision is the one allegedly causing an unlawful burden on their First Amendment rights. But defendant was not responsible for that discretionary decision, nor is he in any way responsible for setting the rules governing the timetable under which the Ohio Supreme Court decides cases.

Accordingly, the Court finds that plaintiffs have not shown they are substantially likely to establish standing. This reason alone is sufficient for the Court to deny their motion for preliminary injunctive relief. *See Memphis A. Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) ("[A] party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction.") (internal quotation marks omitted).

### B. First Amendment Claims

Even if plaintiffs were able to demonstrate standing, the Court further finds that they have not established a substantial likelihood of success on the merits of their First Amendment claims.

#### 1. The *Anderson-Burdick* Test

A State need not create an initiative procedure for amending its constitution, but if it does, it "cannot place restrictions on its use that violate the federal Constitution[.]" *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). In determining whether restrictions are constitutional, the United States Supreme Court has made clear that "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

10

Sixth Circuit precedent requires that courts evaluate "First Amendment challenges to nondiscriminatory, content-neutral ballot initiative requirements under the *Anderson-Burdick* framework." *Thompson v. Dewine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam); *see Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Burdick*, 504 U.S. at 434. A court weighs "the character and magnitude of the burden the State's rule imposes" on a plaintiff's First Amendment rights against "the interests the State contends justify that burden" and considers "the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (internal quotation marks omitted). Where the challenged regulation imposes "reasonable nondiscriminatory restrictions," courts apply rational basis review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). Where the regulation or restriction is severe, "such as exclusion or virtual exclusion from the ballot, strict scrutiny applies." *Thompson*, 959 F.3d at 808 (citing *Burdick*, 504 U.S. at 434, and *Schmitt*, 933 F.3d at 639). For cases falling between these two extremes, a court weighs the burden imposed by the regulation against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

Before turning to the merits of plaintiffs' claims, the Court must briefly address defendant's argument for applying a rational-basis review instead of the *Anderson-Burdick* balancing test. In the context of regulating election mechanics – laws and rules governing how initiatives and referenda get placed on the ballot – the *Anderson-Burdick* test has received much criticism. Defendant cites the concurring opinion in *Schmitt*, which argued that such regulations should be subject to rational-basis review so long as they are content-neutral and nondiscriminatory. *See Schmitt*, 933 F.3d at 646–49 (Bush, J., concurring in part) (citing cases) (questioning whether "the election-mechanics statutes at issue are even within the purview of the First Amendment, " and "even assuming that they are," arguing that at most a "rational-basis review" applies). *See also Daunt v. Benson*, 999 F.3d 299, 322 (6th Cir. 2021) (Readler, J., concurring) ("All told, our aggressive deployment of *Anderson-Burdick* as a 'one-size-fits-all' tool for resolving any matter touching the 'democratic process' has us in the record books. . . . But that is no record to brag about."); *Beiersdorfer v. LaRose*, No. 20-3557, 2021 WL 3702211, at *16 (6th Cir. Aug. 20, 2021) (Readler, J., concurring in part) (arguing that *Anderson-Burdick* is "a particularly poor guide" for analyzing a State's "content-neutral procedural rules" for structuring "initiative processes").

11

The Court does not deny that the *Anderson-Burdick* test seems like an ill fit for this case. The dispute not only concerns election mechanics generally but specifically relates to the judicial process which is due when a state official determines that a citizen has failed to complete a requisite step in the regulatory scheme. Indeed, the parties largely avoid discussing how *Anderson-Burdick's* balancing test applies – with defendant instead arguing for rational-basis review and plaintiffs going in the opposite direction and arguing for strict scrutiny review.

Regardless, this Court is bound to follow Sixth Circuit precedent. And that precedent clearly "dictates that [courts] evaluate First Amendment challenges to nondiscriminatory, content-neutral ballot initiative requirements under the *Anderson-Burdick* framework." *Thompson*, 959 F.3d at 808; *see also id*. at n.2 ("But until this court sitting en banc takes up the question of *Anderson-Burdick*'s reach, we will apply that framework in cases like this."); *Beiersdorfer*, 2021 WL 3702211, at *9 (same); *Schmitt*, 933 F.3d at 637 (evaluating a claim similar to the one here under *Anderson-Burdick* and rejecting the district court's decision to analyze it as a procedural due process issue).

### 2. Facial Challenge

The First Amendment right at issue is plaintiffs' interest in accessing the citizen-initiated process for placing a proposed constitutional amendment on the ballot in Ohio. *See Taxpayers United*, 994 F.2d at 295. Plaintiffs argue that Ohio has placed a severe burden on the exercise of their right, warranting strict scrutiny. They point to two separate burdens: the lack of de novo judicial review of the Attorney General's adverse certification decision and the lack of immediate judicial review and resolution of the Attorney General's decision.

To succeed on a facial challenge under the First Amendment, plaintiffs must establish that the law or rules they challenge are "substantially overbroad." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987); *see also Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013). They must "demonstrate that a 'substantial number of instances exist in which the law cannot be applied constitutionally.'" *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009)). Thus, plaintiffs bear the burden of showing that the rules regarding judicial review of an adverse certification decision of the Attorney General cannot be applied constitutionally in a substantial number of instances.

In support of the assertion that the absence of de novo judicial review severely burdens their First Amendment right, plaintiffs cite the Sixth Circuit's decision in *Schmitt*. However, this Court does not interpret *Schmitt* to support plaintiffs. In fact it rejects the very argument plaintiffs are making. In *Schmitt*, proponents of local ballot initiatives brought a facial challenge under the First Amendment

12

after county board of elections declined to certify their initiatives for the ballot. Plaintiffs claimed the lack of de novo judicial review of the board's decision severely burdened their rights. The Sixth Circuit found that plaintiffs "have not identified the source of such a right." *Schmitt*, 933 F.3d at 639. Further, the court found that "even accepting Plaintiffs' argument that the First Amendment requires de novo review of a board's decision, the Ohio case law suggests that petitioners receive essentially that. The Ohio Supreme Court's evaluation of the decisions of boards of elections shows no particular deference to the boards' decisions." *Id.*

Turning to the second alleged burden, plaintiffs again cite *Schmitt*, this time for the assertion that Ohio law facially deprives them of immediate judicial review and resolution. Here too, the Court finds that *Schmitt* cuts against plaintiffs. Without further elaboration, the court in *Schmitt* stated, "We also note that because Ohio Supreme Court rules provide for expedited briefing and decision in election cases, aggrieved citizens who challenge an adverse decision are able to seek timely redress. The ballot-initiative statutes are thus not subject to strict scrutiny based on a severe burden." *Id.* at 640 (footnote omitted).

There is no dispute here that plaintiffs were able to seek timely redress. Following the Attorney General's decision, they exercised their statutory right to directly file a mandamus action in the Ohio Supreme Court. *See* O.R.C. § 3519.01(C). They were then able to seek expedited review by the Supreme Court.

However, plaintiffs argue that their situation is different from the one in *Schmitt* because the applicable Supreme Court's rules there mandated expedited review. When "an original action relating to a pending election . . . is filed within ninety days prior to the election," the Supreme Court's rules require an expedited briefing schedule. *See* Supreme Ct. Prac. R. 12.08. Plaintiffs point out that the 90-day rule of expedited review does not apply here because, for one, their petition was denied long before the 90-day window prior to the November 5, 2024 election. But more importantly, plaintiffs emphasize, the preliminary step of certification of the summary must take place early enough to allow them enough time to gather more than 400,000 signatures prior to July 3, 2024, 125 days before the election.

The Court understands the practical dilemma in which plaintiffs find themselves. Nonetheless, an avenue of expedited review was available to plaintiffs and they were able to pursue it. Plaintiffs must support their facial challenge by showing that the rules regarding judicial review of an adverse certification decision cannot be applied constitutionally in a substantial number of instances. This is not a burden they have satisfied. That plaintiffs were denied expedited review is a development

13

which goes to their as-applied challenge and not to their facial one. *See Speet*, 726 F.3d at 872 ("In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge is not an attempt to invalidate the law in a discrete setting but an effort to leave nothing standing." (cleaned up). In the final analysis, the Court does not interpret *Schmitt* as holding that a petitioner's rights are severely burdened if expedited judicial review is merely available, rather than mandatory.

Accordingly, the Court finds that the rules regarding judicial review of an adverse certification decision do not severely burden the First Amendment rights of individuals who wish to pursue placing a citizen-initiated constitutional amendment on the ballot. Strict scrutiny thus does not apply. Plaintiffs do not present an alternative theory in support of their facial challenge should the Court decline to apply strict scrutiny. As explained below, the remainder of the analysis under *Anderson-Burdick* leads to the conclusion that Ohio has not impermissibly restricted ballot access.

The Court next asks whether the burden is so minimal as to trigger rational-basis review. A burden is sufficiently minimal if it "in no way" limits access to the ballot. *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016). *Schmitt* answers this question, holding that the burden is more than minimal. The court's reasoning, while involving a county board of election's decision not to certify petitions to place initiatives on the ballots, applies with equal force here. The burden "falls on the aggrieved proponent to obtain mandamus relief in order to vindicate his or her interest." *Schmitt*, 933 F.3d at 641. "It is reasonable to conclude that the cost of obtaining legal counsel and seeking a writ of mandamus disincentivizes some ballot proponents from seeking to overturn the board's decision, thereby limiting ballot access." *Id.*

Because the burden imposed on plaintiffs to obtain mandamus relief is neither severe nor minimal, the court proceeds under *Anderson-Burdick* to "weigh the 'burden of the restriction' against the 'state's interests and chosen means of pursuing them.'" *Id.* (quoting *Grimes*, 835 F.3d at 574). *Schmitt*'s analysis again controls. It found that States "have a strong interest" in "'maintaining the integrity of its initiative process.'" *Id.* (quoting *Taxpayers United*, 994 F.2d at 297). The court recognized as "legitimate and substantial" Ohio's interest "in maintaining voter confidence in the electoral process" and its interest "in ensuring that only ballot-eligible initiatives go to the voters." *Id.* (internal quotation marks omitted) (explaining that "keeping unauthorized issues off the ballot reduces the odds that an initiative is later held invalid on the ground that the voters exceeded their authority to enact it").

14

Ohio has a substantial interest in ensuring that the summaries of proposed constitutional amendments are fair and truthful. Many potential signers during the signature-gathering phase will rely on the summary rather than the entire text of the proposed amendment in determining whether to support and sign a petition. Ohio has a strong interest in safeguarding its citizens against false and misleading summaries which could not only influence their decision whether to support the petition but also could leave a lasting false impression which affects their decision on election day.

The Court finally must evaluate whether "the State's restrictions are constitutionally valid given the strength of its proffered interests." *Id.* Once more, *Schmitt* directs the result.

> [B]ecause [Ohio] recognizes a proponent's right to seek mandamus review of a board of elections' decision not to place an initiative on the ballot and the [Ohio Supreme Court] performs what is essentially a de novo review of the legal issue whether an initiative is within the municipality's initiative power, the absence of a statutory de novo appeal of right does not impose a significant or unjustified burden on initiative proponents' First Amendment rights. Although the State's chosen method for screening ballot initiatives may not be the least restrictive means available, it is not unreasonable given the significance of the interests it has in regulating elections.

*Id.* at 641–42. Here, Ohio law grants plaintiffs a right to seek mandamus review of the Attorney's General's decision not to certify their summary as fair and truthful. The absence of a statutory right to de novo, expedited judicial review is not unreasonable in light of the State's significant interests in regulating the fairness of the initiative process. Review of the Attorney General's decision could involve complicated issues over which jurists might disagree.[2] It is not unreasonable for the Ohio Supreme Court to be permitted to exercise its discretion in deciding whether to expedite its review over such matters.

In sum, the Court finds that plaintiffs have not established they are likely to succeed on their facial challenge.

### 3. As-Applied Challenge

Plaintiffs' as-applied challenge relies on this proposition: the Ohio Supreme Court's denial of expedited review of their complaint for writ of mandamus results in the exclusion or virtual exclusion of their proposed constitutional amendment from the ballot in the current election cycle. If plaintiffs have been excluded from the ballot, then strict scrutiny applies. *See Thompson*, 959 F.3d at 808; *Grimes*, 835 F.3d at 574 ("The hallmark of a severe burden is exclusion or virtual exclusion from the ballot.").

---

[2] For instance, plaintiffs' complaint for writ of mandamus raises five separate and somewhat complex challenges to defendant's March 14, 2024 decision. *See State ex rel. Brown v. Yost*, Case No. 2024-0409, Compl., pp. 17–25.

15

A petition to amend the Ohio Constitution must be submitted with the signatures of ten percent of the electors no later than 125 days prior to the general election at which the proposed amendment is to appear on the ballot. *See* Ohio Const., art. II, § 1a. The deadline for the November 5, 2024 general election is July 3, 2024. According to plaintiffs, obtaining 400,000 signatures is a "time-consuming and arduous process" and non-expedited review from the Ohio Supreme Court will take "months." Doc. 2 at PAGEID 44; Doc. 16 at PAGEID 128. Plaintiffs believe that by the time the Ohio Supreme Court issues a ruling on the adverse certification decision, their window to submit 400,000 signatures will have already closed.

The Court begins by noting that plaintiffs have not submitted any evidence concerning the amount of time which might be needed to collect 400,000 signatures. And their expectation of how long it will take the Ohio Supreme Court to issue a decision – though based somewhat on the Supreme Court's usual timetable for parties to file answers and engage in motions practice – also involves a degree of speculation, as plaintiffs concede. *See* Doc. 2 at PAGEID 48 (saying that it is "anyone's guess"). Thus, it cannot conclusively be said that there is no possibility the Ohio Supreme Court will issue a decision in time for plaintiffs to gather the required number of signatures by the July 3 deadline.

Next, the Court is not persuaded that plaintiffs have an overriding First Amendment right to place their proposed amendment on this year's ballot.[3] Plaintiffs cite two primary cases for the proposition that they have a right to be on the upcoming ballot, but those cases do not support plaintiffs.

In *Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997), the Third Circuit considered whether to grant a preliminary injunction to alternative party candidates who wanted to run for office. They challenged New Jersey's filing deadline for submitting nominating petitions as being so early as to be an unconstitutional burden on their associational interests. The Third Circuit agreed, but it did not find that plaintiffs were virtually excluded from the ballot. Rather, applying the *Anderson-Burdick* balancing test, the court found no justification for a deadline so early that it "require[d] candidates to gather signatures at a time when the election [was] remote and voters [were] generally uninterested in the campaign." *Id.* at 880 (also finding that the deadline restricted alternative parties' ability to react to the results of the primaries and the nomination of major party candidates). Having concluded that a First Amendment violation had occurred, the Third Circuit mentioned the election cycle only in the context of the irreparable injury part of the preliminary injunction analysis. Plaintiffs would suffer the

---

[3] Plaintiffs of course do have a legal entitlement to be on this year's ballot if they satisfy the procedural requirements of Ohio law.

16

irreparable injury of being excluded from the next ballot should an injunction be denied. *Id.* at 883. In other words, the Third Circuit considered the election cycle in evaluating the injury, not in establishing the existence of a First Amendment violation.

In *SD Voice v. Noem*, 60 F.4th 1071 (8th Cir. 2023), the Eighth Circuit considered a facial challenge to South Dakota's deadlines for submitting petitions to initiate statutes and amend the state constitution. The deadlines to submit such petitions, along with signatures, were a full year prior to the next general election. Plaintiffs argued the early deadlines infringed their interests in circulating imitative petitions as an expression of their desire for change and to promote a discussion on the merits of proposed change. The Eighth Circuit agreed, but again the reasoning did not relate to exclusion from the ballot. Rather, the court held that the ability to circulate and sign a petition was "an expression of a political view" and South Dakota had not shown a legitimate interest in establishing deadlines so early that they "effectively prohibit[ed] circulating petitions during the year prior to the election." *Id.* at 1078; *see also id.* at 1079 (Under South Dakota's law, an individual cannot sign a petition in the year immediately preceding a general election.").

Plaintiffs direct the Court's attention to the discussion in *SD Voice* of the State's claim that "its citizens are still free to propose an initiated measure of their choosing and to convey their message to all who will listen." *Id.* (internal quotation marks omitted). Citing *Meyer v. Grant*, 486 U.S. 414 (1988), the Eighth Circuit rejected "the argument that a statute's burden on expression 'is permissible because other avenues of expression remain open.'" *SD Voice*, 60 F.4th at 1079 (quoting *Meyer*, 486 U.S. at 424). "[A] law that leaves open other avenues of communication does not relieve the burden on protected political discourse." *Id.*

Plaintiffs believe the holding of *SD Voice* can be extended to the case at hand – just because the avenue of a later election cycle is available to them does not justify the burden of excluding plaintiffs from the upcoming general election. The Court would not extend *SD Voice* so far. The Eighth Circuit had already found that the statutory deadlines infringed the expressive and associational interests of state citizens. "South Dakota has banned all participation in the petition process one year before the next election." *Id.* The burden of that established violation could not be alleviated or undone by allowing First Amendment activity at a later time. The Eighth Circuit said nothing of a right to appear on the ballot during a particular election cycle.

The Court returns to the straightforward principle that a State need not create an initiative procedure, but when it does, the State "cannot place restrictions on its use that violate the federal Constitution." *Taxpayers United*, 994 F.2d at 295. The Sixth Circuit's decision in *Beiersdorfer*, though

unpublished, guides the analysis here.  In *Beiersdorfer*, the plaintiffs sought to use Ohio's citizen initiative process to pass county charters and municipal ordinances.  Plaintiffs had failed to receive certification from county boards of election that the proposed initiatives complied with state law.  On numerous occasions plaintiffs had sought and been denied mandamus relief before the Ohio Supreme Court.  Plaintiffs argued for strict scrutiny review because they had been excluded from the ballot.  The Sixth Circuit rejected their argument:

> But the plaintiffs are not faced with exclusion from the ballot, virtual or otherwise.  The proposed county-charter initiatives were rejected because they failed to list the required county positions.  And the only proposed municipal-ordinance initiative at issue . . . was rejected because it was not legislative action. . . . The plaintiffs remain free to exercise the initiative power in compliance with Ohio's Initiative Authority Statutes.  And the plaintiffs do not provide a coherent explanation of how the moderate requirements for initiatives prevent them from accessing the ballot.

*Beiersdorfer*, 2021 WL 3702211, at *9.  *See also id.* at *11 ("Preventing initiatives that do not comply with the state-law requirements involved here from reaching the ballot is not a severe burden on the plaintiffs' First Amendment rights.").

Plaintiffs have a right to place their proposed constitutional amendment on this year's ballot if they satisfy Ohio's prerequisites.  Plaintiffs do not challenge the legitimacy of the requirements imposed on them, but only the denial of expedited judicial review.[4]  As the court found in *Beiersdorfer*, plaintiffs' "fail[ure] to succeed in placing their measures on the ballot" cannot be blamed on election officials or the Ohio Supreme Court, but on their "fail[ure] to comply with the basic requirements of Ohio law."  *Id.*

Even if the Court were to accept plaintiffs' proposition that a judicial resolution from the Ohio Supreme is highly unlikely to come in time for them to get their March 5, 2024 petition on the November 5, 2024 ballot, they still have not shown they are excluded from this year's ballot.  Plaintiffs seem to believe they are captives of the Ohio Supreme Court.  Not so.  Ohio law does not forbid plaintiffs from submitting a new petition to the Attorney General, nor does it limit the number of petitions they may submit.  Their election to challenge the March 14, 2024 adverse decision of the Attorney General to the Ohio Supreme Court does not operate as a waiver of their right to start the petition process anew.  *Cf.* O.R.C. § 3519.01(C) (not conditioning the right to challenge an adverse decision on the citizen relinquishing a right to begin the initiative process again).

---

[4] Again, the correctness of the merits of the Attorney General's adverse certification decision is not at issue in this case.

By denying expedited review, the Ohio Supreme Court has not excluded plaintiffs from the ballot. Instead, as plaintiffs aptly put, they "gave up on the Attorney General's review process." Compl., ¶ 34. If plaintiffs acted right now and successfully completed the initial steps, they plausibly would have ample time to gather signatures by July 3, 2024.

The Court concludes that the denial of expedited judicial review has not severely burden plaintiffs' First Amendment interests, and strict scrutiny does not apply. Plaintiffs' as-applied challenge thus proceeds under the *Anderson-Burdick* balancing test. The Court finds that their as-applied challenge is unlikely to succeed for the same reasons the Court found above that their facial challenge is unlikely to succeed under *Anderson-Burdick*.

### IV. Remaining Preliminary Injunction Factors

The Court's findings that plaintiffs are unlikely to succeed in demonstrating standing or a First Amendment violation are fatal to their motion for preliminary injunctive relief. *See Memphis A. Philip Randolph Inst.*, 978 F.3d at 386; *Gonzales*, 225 F.3d at 625.

Consideration of the other preliminary injunction factors does not alter this conclusion. Plaintiffs will not suffer irreparable injury absent an injunction. They still have full access to the process for placing a citizen-initiated constitutional amendment on the ballot.

Granting injunctive relief could cause harm, including to the public. Plaintiffs ask not for an injunction requiring expedited judicial review but for an injunction requiring the Attorney General to certify their March 5, 2024 petition as containing a fair and truthful summary of the proposed amendment. They seek this relief regardless of whether their summary is actually fair and truthful. If the relief were granted and if the summary is not fair and truthful, Ohio voters could be deceived when considering whether to support and sign initiative petitions. Those same voters who saw the summary could remain deceived on election day.

### V. Conclusion

Accordingly, plaintiffs' motion for a temporary restraining order and preliminary injunction (doc. 2) is DENIED.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: April 25, 2024

19