## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CYNTHIA BROWN, CARLOS BUFORD, and
JENNY SUE ROWE**,

Plaintiffs,

v.                                                  **CASE NO. 2:24-cv-01401**

**DAVID YOST**,
in his Official Capacity as **Ohio
Attorney General**,

Defendant.

_____

### PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall (pro hac vice)
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

* For purpose of identification only

Plaintiffs respectfully move the Court pursuant to Federal Rule of Civil Procedure 62(d) for an injunction pending appeal. Rule 62(d) states that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." This Court refused to issue preliminary injunctive relief on April 25, 2024, Opinion and Order, Doc. No. 21, and Plaintiffs have now appealed. *See* Notice of Appeal, Doc. No. 23. An injunction pending appeal is necessary because each day of delay further violates Plaintiffs' First Amendment rights.

Plaintiffs accordingly request an injunction pending appeal that either (1) enjoins and invalidates Defendant's ability to block initiatives under O.R.C. 3519.01(A) and thus allows Plaintiffs' initiative to proceed to the Ohio ballot board, or (2) provides Defendant with a date certain -- Plaintiffs suggest May 6, 2024 -- to secure timely, de novo review from the Ohio Supreme Court, *see*, *e.g.*, *Gonidakis v. LaRose*, 599 F. Supp.3d 642, 678 (S.D. Ohio 2022) ("if the State does not act before May 28, we will order the primary be moved to August 2 and Map 3 be used"), or be subject to an order invalidating O.R.C. 3519.01(A) as-applied to Plaintiffs and directing Defendant to certify Plaintiffs' initiative to the Ohio ballot board.

Plaintiffs certify that they on April 26, 2024 contacted Defendant (through counsel) to inquire whether Defendant objects to a motion for injunction pending appeal. Defendant has not yet responded.

## Standard for Injunction Pending Appeal

In considering a request for relief under Federal Rule 62(d), a district court evaluates the same four factors evaluated in a request for a preliminary injunction. *Hilton v. Braunskill,* 481 U.S.

770, 777 (1987). These factors are: (1) the likelihood the party seeking an injunction will prevail on the merits of the appeal; (2) the prospect of irreparable harm absent the injunction; (3) the prospect of harm to others if the court grants the injunction; and (4) the public interest in granting the injunction. *Id.; Coal. to Defend Affirmative Action v. Granholm,* 473 F.3d 237, 244 (6th Cir.2006); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991) ("In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal."). "All four factors are not prerequisites but are interconnected considerations that must be balanced together." *Granholm,* 473 F.3d at 244. "[I]f a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* at 153–54.

## Argument

### I.      Plaintiffs Are Likely to Prevail on Appeal Under Article III.

The District Court concluded that Plaintiffs likely lack Article III standing to seek emergency relief from Defendant, Ohio's chief law enforcement officer who not only is responsible for enforcing Ohio law but who also was the executive official in this case responsible for blocking their proposed initiative. It suggested instead that Plaintiffs should have sued the Ohio General Assembly, or perhaps the Ohio Supreme Court:

> As defendant correctly emphasizes, he has no authority over the availability of expedited judicial review of plaintiffs' mandamus action. It is the Ohio legislature which directs that any challenge to the "failure to certify of the attorney general" be presented directly to the State's highest court. O.R.C. § 3519.01(C). And the Ohio Supreme Court decides, whether by rule or exercise of discretion, if it will review plaintiffs' action in expedited and de novo fashion.

Opinion and Order, Doc. No. 21, at PageID# 210. Because "Plaintiffs make no attempt to show how defendant is responsible for the alleged absence of a mechanism ensuring timely judicial review and resolution," *id*., the District Court concluded, they lack Article III standing.

Plaintiffs, however, cannot sue the Ohio General Assembly nor its individual members. The General Assembly is protected by Eleventh Amendment sovereign immunity, *see Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) ("States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity."); *Bronson v. General Assembly of Pennsylvania,* 2017 WL 3431918, *3 (M.D. Pa. 2017) (stating that General Assembly has Eleventh Amendment immunity), and is otherwise not a proper defendant under the terms of § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (interpreting § 1983 to incorporate Eleventh Amendment limitations and sovereign immunity). Its members, meanwhile, have absolute legislative immunity, whether sued for damages or injunctive relief. *See*, *e.g*., *Risser v. Thompson,* 930 F.2d 549, 551 (7th Cir.1991) ("Legislators' immunity is absolute, and extends to injunctive as well as to damages suits.") (citations omitted).

Nor is the Ohio Supreme Court a viable defendant, both because it and its members have absolute immunity, *see Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980) (holding that supreme court justices acting in legislative capacities are immune from damage actions and injunctions), because it is an arm of the State of Ohio and entitled to Eleventh Amendment immunity, *see Lake County Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401 (1979) (holding that institutional arms of the State are protected by the Eleventh Amendment), and because its members do not "normally" fall into the *Ex parte Young* exception. *See Jackson*, 595 U.S. at 39 ("as *Ex parte Young* explained, this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks").

Instead, the proper way to challenge state laws passed by the General Assembly is by challenging the executive official who enforces the state's challenged laws or who otherwise causes the violation. *See Jackson*, 595 U.S. at 45-46 (stating that executive officials "who may or must take enforcement actions against the petitioners" are the state agents who "fall within the scope of *Ex parte Young*'s historic exception to state sovereign immunity"). That person in this case is Defendant, Ohio's Attorney General. He is not only the chief law enforcement officer in Ohio, but also the specific official who has blocked Plaintiffs' initiative. He is responsible for not only blocking the initiative – as proven by the fact he blocked it – but also as Ohio's chief law enforcement officer is responsible under *Ex parte Young* for enforcing the laws that Ohio legislature passes.

In the event, whether he is "responsible for the alleged absence of a mechanism ensuring timely judicial review and resolution" is a red herring. Plaintiffs' claim is that Defendant violated the First Amendment by blocking their initiative. The relief they seek is to enjoin Defendant from using O.R.C. § 3519.01(A) to block their initiative. If he can demonstrate that expedited and "timely redress" is available like he did in *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019), he and Ohio might survive First Amendment scrutiny. But that goes to the merits of the case.

That Plaintiffs have standing is demonstrated by the Sixth Circuit's holdings in *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019), and *Beiersdorfer v. LaRose*, 2021 WL 3702211 (6th Cir. 2021), both of which reached the merits of First Amendment challenges under virtually identical circumstances. In *Schmitt*, 933 F.3d at 640, the Sixth Circuit ruled that timely judicial "redress" is necessary for States (like Ohio) to avoid placing "severe" burdens on citizen-initiatives' ballot access rights under the First Amendment. Specifically, the Sixth Circuit in *Schmitt* ruled that under the *Anderson-Burdick* analysis (which routinely applied to ballot access restrictions of all sorts,

4

see *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)), Ohio must provide "timely [judicial] redress" (and probably de novo judicial review) to proponents of citizen-initiatives that are rejected by executive officials.

The executive defendants in that case were Ohio's Secretary of State, who is responsible for enforcing Ohio's election laws, and the members of the local county election board that rejected the two local initiatives at issue. All were sued under *Ex parte Young*. The Ohio Supreme Court was not named as a defendant, nor was the General Assembly. The challengers in *Schmitt* claimed that Ohio's local initiative process, which delegated to local election boards the authority to act as "gatekeepers," just as Defendant is a gatekeeper, and decide whether initiatives could be properly added to local ballots complied with the First Amendment.

The District Court ruled that Ohio did not have the authority to install such a gatekeeper under the First Amendment and issued preliminary relief placing the challengers' two initiatives on the local ballots. *See Schmitt v. Husted*, 341 F. Supp.3d 784 (S.D. Ohio 2018). No appeal was taken. Once the District Court converted its preliminary relief into a permanent injunction, however, Ohio appealed. The Sixth Circuit ruled on the merits of that appeal, but only after concluding that the preliminary injunction and the challengers' as-applied challenge had been mooted by the election. *Id*. at 636 n.2. The challengers' facial challenge under the First Amendment remained alive. *Id*. Article III standing thus not only continued to exist, it had to have existed from the very beginning. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998) (requiring that Article III standing be established before a court may rule on the merits). Nothing has changed since *Schmitt* under the law of Article III standing to cast doubt on that result.

Likewise, the Court's decision in *Beiersdorfer*, 2021 WL 3702211, again proves that Article III standing exists when an initiative's sponsor challenges an executive officer who blocks

5

the sponsor's initiative in the absence of proper judicial review. The facts of that case virtually mirrored the facts in *Schmitt*, with the differences being in the many specific local charter procedures and state laws being challenged. The thrust of the complaint was the same as in Schmitt, with one of the claims being that local gatekeepers could not keep initiatives off ballots. The Ohio Secretary of State and various county boards of elections were named as defendants. Neither the General Assembly nor any court was named as a defendant.

The Sixth Circuit in *Beiersdorfer* found that some of the plaintiffs lacked Article III standing to challenge one of the counties (Lucas), but only "because the initiative statutes do not apply to the process to amend municipal charters, and the plaintiffs do not allege that they have ever pursued or intend to pursue the forms of initiative in Lucas County to which the prescreening process does apply." *Id*. at *6. With the rest of the challenges to various prescreening processes under Ohio and local laws that were being pursued, however, the Sixth Circuit implicitly recognized by reaching the First Amendment's merits and applying *Schmitt* to resolve them that standing existed. Suing the executive agents responsible for blocking the initiatives was the proper path, even though the availability of timely judicial review would be an issue.

Also illustrative is the Supreme Court's decision in Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 152 (2014), which held that those challenging Ohio's "false political speech" law had standing even though neither the General Assembly nor any judicial officer was named as a defendant. That case was procedurally much like the present one in that executive officers in Ohio, the Ohio Elections Commission, were given power by Ohio law to judge whether political speech was truthful. *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 472 (6th Cir. 2016).

The case was also procedurally similar in that Ohio claimed, as it does here, that the availability of administrative and judicial review solved the First Amendment problem. The Sixth Circuit (following the Supreme Court's conclusion that Article III was satisfied) disagreed: "the timing of Ohio's administrative process does not necessarily promote fair elections." *Id*. "[C]omplaints … are free to linger for six months," *id*. (citation omitted), and "[e]ven when a complaint is expedited, there is no guarantee the administrative or criminal proceedings will conclude before the election or within time for the candidate's campaign to recover from any false information that was disseminated." *Id*. Notably, neither the Sixth Circuit nor the Supreme Court mentioned the absence of either the General Assembly (which passed the "false speech law") or Ohio's courts (which would review criminal referrals) as some sort of debilitating obstacle. It was enough that the suit was filed against the Commission, the responsible executive enforcement agency, under *Ex parte Young*.

The Courts' holdings in *Schmitt*, *Beiersdorfer* and *Driehaus* govern here. Plaintiffs have standing to proceed against the executive agent who enforces the law against them. They have experienced an "injury-in-fact" – the loss of First Amendment rights – that is "fairly traceable to" Defendant, and their injury is likely to be redressed by judicial intervention. *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Contravention of one's constitutional rights by itself provides a sufficient injury-in-fact, with the First Amendment's right to free speech a commonly litigated example. *See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347 (1976).

Here, Plaintiffs are suffering actual, accumulating First Amendment injuries at the hands of Defendant. Defendant alone blocks their proposed amendment from moving forward. Defendant's adamant objection to expedited review in the Ohio Supreme Court only compounded

the First Amendment violation that ensued. Defendant's action is the but for and proximate cause[1] of Plaintiffs' continuing injury. Just as the invalidation of the Ohio Elections Commission's authority to block false political speech redressed the plaintiffs' rights in *Driehaus*, and placing the initiatives on local ballots redressed the initiative sponsors' First Amendment claims in *Schmitt*, a favorable decision from this Court invalidating Defendant's ability to block Plaintiffs' initiative under O.R.C. 3519.01(A), or providing him with a date certain in which to secure timely, de novo review, will redress the wrong done to Plaintiffs. An injunction of either sort will remove this unconstitutional obstacle. Plaintiffs plainly have standing to seek these remedies.

## II.     The District Court Misinterpreted Controlling Precedent, Including *Schmitt* and *Beiersdorfer*.

### A.   *Schmitt* Requires "Timely Redress" and Not Merely "Timely Attempts."

Although the District Court concluded that it was bound to follow Sixth Circuit precedent, it expressed agreement with various dissenting Judges on the Sixth Circuit that "*Anderson-Burdick* test seems like an ill fit for this case." Opinion and Order, Doc. No. 21, at PageID# 214 (citations omitted). Rather than follow *Schmitt* and its application of *Anderson-Burdick*, the District Court thus concluded that "*Schmitt* cuts against plaintiffs." *Id*. at PageID# 215.  All *Schmitt* required, it concluded, is that challengers be "able to seek expedited review by the Supreme Court." *Id*. "In the final analysis," it stated, "the Court does not interpret Schmitt as holding that a petitioner's rights are severely burdened if expedited judicial review is merely available, rather than mandatory." *Id*. at PageID# 216. "Accordingly, the Court finds that the rules regarding judicial review of an adverse certification decision do not severely burden the First Amendment rights of

---

[1] Proximate causation is not required for Article III standing, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014), but plainly exists in the present case.

individuals who wish to pursue placing a citizen-initiated constitutional amendment on the ballot." *Id*.

The District Court erred. The Sixth Circuit in *Schmitt*, 933 F.3d 628, did not say that only timely "review" is required, it ruled that "timely redress" is necessary for States (like Ohio) to avoid placing "severe" burdens on citizen-initiatives' ballot access and being subjected to the strictest of scrutiny under the First Amendment. *See Schmitt*, 933 F.3d at 640. Specifically, the Sixth Circuit in *Schmitt* ruled that under the *Anderson-Burdick* analysis (which is routinely applied to ballot access restrictions of all sorts, *see Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)), Ohio must provide "timely redress" to proponents of citizen-initiatives that are rejected by executive officials. The failure to provide "timely redress" would present a "severe" burden that is subject to strict scrutiny.

The challenge in *Schmitt* was to Ohio's local initiative process, which delegated to local election boards the authority to decide whether otherwise properly completed initiatives addressed local matters that could be placed on ballots. Because the local election boards' decisions necessarily had to be rendered within 90 days of elections under Ohio law, prompt, expedited review was available by way of mandamus in the Ohio Supreme Court. *See* Ohio Sup. Ct. R. Prac. 12.08(A)(1). The Ohio Supreme Court's rules, which automatically expedite challenges to local election board's decisions, are prompt and timely. *See Schmitt*, 933 F.3d at 639-40.

Had Ohio not provided this "timely redress," the Sixth Circuit stated that Ohio's certification-process would have placed a "severe" burden on First Amendment rights using the *Anderson-Burdick* analysis, thus requiring strict scrutiny. The Court in *Schmitt*, 933 F.3d at 640, explained "that <u>because Ohio Supreme Court rules provide for expedited briefing and decision in election cases</u>, aggrieved citizens who challenge an adverse decision <u>are able to seek</u>

timely redress. The ballot-initiative statutes are thus not subject to strict scrutiny based on a severe burden." (Emphasis added).

*Schmitt*'s holding is that in the absence of "timely redress," a "severe" burden is placed in the path of those sponsoring citizen-initiatives. Severe burdens require strict scrutiny. *Id*. The District Court here, however, expressly applied something less, because it did not believe that the Schmitt Court meant what it said. Rather than strict scrutiny, the District Court here applied a "reasonableness" test, stating that the mere availability of "mandamus review of the Attorney's General's decision not to certify their summary as fair and truthful," *id*. at 217, "is not unreasonable in light of the State's significant interests in regulating the fairness of the initiative process." *Id*. "Review of the Attorney General's decision could involve complicated issues over which jurists might disagree. It is not unreasonable for the Ohio Supreme Court to be permitted to exercise its discretion in deciding whether to expedite its review over such matters." *Id*.

The District Court erred by applying the wrong test. Strict scrutiny is required for severe burdens. And the absence of "timely redress" the *Schmitt* Court made clear is a "severe" burden. The *Schmitt* Court fully understood what it is way saying. There, the Ohio Supreme Court's automatic expedited consideration process applied because the local election board's rejection of the initiative occurred within 90 days of the election. That process, which the Attorney General explained to the Sixth Circuit, requires prompt answers -- within three days, *see* Ohio S. Ct. R. Prac. 12.08(A)(1) -- and prioritizes proceedings to ensure timely resolutions before elections. The Attorney General specifically argued to the Sixth Circuit in *Schmitt* that Rule 12.08 was "critical" in terms of saving Ohio's process from constitutional infirmity.

Rule 12.08, Ohio argued, "ensure[s] that all disputes are resolved in time for the election. *See* Ohio Sup. Ct. R.12.08." *See* Brief of Defendant-Appellant Ohio Secretary of State Frank

LaRose, *Schmitt v. LaRose*, No. 19-3196 (6th Cir. May 14, 2019), at 25 ("The adequacy of the writ-of-mandamus procedure is critical here, because that is the primary method for initiative proponents like Schmitt to seek pre-deprivation review."); Reply Brief of Defendant-Appellant Ohio Secretary of State Frank LaRose, *Schmitt v. LaRose*, No. 19-3196 (6th Cir. May 31, 2019), at 19 ("the Supreme Court's rules ensure that all disputes are resolved in time for the election. *See* Ohio Sup. Ct. R.12.08.") (emphasis added). Ohio's Rule 12.08, by "ensur[ing] that <u>all disputes are resolved in time for the election,</u>" *see id.*, supplied the requisite "timely redress" that the Court in *Schmitt* relied upon. The Schmitt Court knew this and used it in concluding that expedited and "in time for the election" was necessary to satisfy "timely redress."

Because Ohio law does not apply that same review process to Defendant's decisions rejecting state-wide initiative filings under O.R.C. § 3519.01(A) -- which cannot qualify for the Supreme Court's automatic-expedite track because they must be rendered 125 days before elections -- and because the Ohio Supreme Court here at Defendant's urging refused to otherwise expedite Plaintiffs' case, it staggers the imagination to conclude that Plaintiffs' challenge will be resolved "in time for the election." Defendant's answer in Plaintiffs' case has yet to be filed, even though Plaintiffs' complaint was lodged in the Ohio Supreme Court on March 20, 2024. Defendant moved to dismiss on April 19, 2024, thus delaying the time for its answer, which will not be due for fourteen days following disposition of its motion to dismiss. Assuming the motion is denied this week, an answer might be filed by mid-May, eight weeks following the filing of the complaint.

In a procedurally identical case involving another citizen-initiative that had been rejected by Defendant for similar reasons (e.g., using a misleading title), the complaint in the Ohio Supreme Court was filed on February 1, 20234. *See State ex rel. Dudley v. Yost*, No. 2024-0161 (Ohio). Defendant there objected to expedited review, too, and the Court left the challengers to proceed

under its non-expedited procedures. Defendant moved to dismiss on February 26, 2024, and that motion has yet to be resolved by the Ohio Supreme Court. More than three months have passed since the challengers lodged their claims in the Ohio Supreme Court.

Plaintiffs here have until only July 3, 2024 to collect hundreds of thousands of signatures, which they cannot even begin to do so long as Defendant blocks their path. Whether they lose weeks or months while their mandamus motion is pending before the Ohio Supreme Court, their First Amendment rights are being violated by unnecessary delay. This is a far cry from the "timely redress" required by the Sixth Circuit in *Schmitt*.

### B. Supreme Court and Sixth Circuit Precedent Require Timely Judicial Decisions For Executive Limitations on Speech to Survive the First Amendment.

An explanation of what "timely redress" means can be found in the Supreme Court's interpretation of "prompt" and "timely" review of licensing decisions. "Prompt" judicial review, according to the Supreme Court, means prompt judicial <u>resolution</u> as opposed to prompt consideration. Resolution, moreover, must come within a matter of days.

The Supreme Court in *City of Littleton v. Z.J. Gifts D-4*, 541 U.S. 774, 781 (2004), explained that the First Amendment's safeguard covers both "*judicial,* as well as *administrative,* delay. A delay in issuing a judicial decision, no less than a delay in obtaining access to a court, can prevent a license from being 'issued within a reasonable period of time.'" (Emphasis original and citations omitted). The First Amendment's "prompt judicial review" requirement thus means "a prompt judicial decision." *Id*. The Court added that its First Amendment precedents "set forth a 'model' that involved a 'hearing one day after joinder of issue' and a 'decision within two days after termination of the hearing.'" *Id*. (citation omitted).

The Sixth Circuit, for its part, has employed the Supreme Court's "promptness" requirement in a variety of settings, ranging again from parades and protests to licensing adult

businesses. The Sixth Circuit in *Déjà vu of Nashville v. Metropolitan Government of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001), which involved the licensing of adult businesses, concluded that Tennessee's common-law judicial review process by itself did not satisfy the promptness requirement embedded in the First Amendment: "Whether the common law writ of certiorari will issue is a matter of discretion. It is not issued as a matter of right." (Citation omitted). "Thus, the Ordinance, in requiring that aggrieved applicants proceed to court via a discretionary route, fails to guarantee a 'final judicial adjudication on the merits,' as required under *Freedman*'s first safeguard." *Id*.

Just as important, the Sixth Circuit also ruled in *Déjà vu* that Tennessee's requirement that a court after granting review must issue its "decision within forty (40) days of the court granting the writ of certiorari" also failed First Amendment standards. *Id*. Forty days is simply not prompt in terms of judicial resolution or redress, the Sixth Circuit ruled. First Amendment rights deserve timely action.

To be sure, *Littleton* and *Déjà vu* were decided under the First Amendment's "prior restraint" analysis. But their logic applies equally across the First Amendment. This was made plain in *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 472 (6th Cir. 2016), where the Court invalidated the Ohio Elections Commission's enforcement of Ohio's "false political speech" law. Allowing government to act as a political-speech-gatekeeper, the Court stated, "could lead to unwanted consequences and abuses." *Id*. In the course of coming to that conclusion, the Court observed that "the timing of Ohio's administrative process does not necessarily promote fair elections." *Id*. "[C]omplaints … are free to linger for six months," *id*. (citation omitted), and "[e]ven when a complaint is expedited, there is no guarantee the administrative or criminal

13

proceedings will conclude before the election or within time for the candidate's campaign to recover from any false information that was disseminated." *Id*.

*Driehaus* was not a prior restraint case. Still, the Sixth Circuit's concerns mirrored those found in *Littleton* and *Déjà vu*. "Complaints … linger[ing] for sixth months" with "no guarantee the … proceedings will conclude before the election" or even "within time for the candidate's campaign to recover" are simply unacceptable under the First Amendment. The same is true with initiatives that have been rejected by local election boards and the Attorney General. Discretionary writs operating under discretionary time-frames are not sufficient. That is why *Schmitt* required "timely redress." Resolutions must be guaranteed "before the election" and "within time for the candidate's [or initiative's] campaign to recover."

The District Court's conclusion that simply being able to seek mandamus in the Ohio Supreme Court satisfies the First Amendment cannot be squared with *Schmitt*, *Driehaus*, *Littleton* and *Déjà vu.*

### C. Lack of De Novo Review Violates the First Amendment.

The District Court rejected Plaintiffs' claim that the First Amendment requires de novo judicial review of executive decisions punishing or blocking speech, stating that *Schmitt* "rejects the very argument plaintiffs are making." Opinion and Order, Doc. No. 21, at PageID# 213. Thus, the "absence of a statutory right to de novo, expedited judicial review is not unreasonable in light of the State's significant interests in regulating the fairness of the initiative process." *Id*. at PageID# 217.

To be sure, *Schmitt* did not expressly state that de novo review is required. But this is quite a way from saying it "rejected" such a requirement. The *Schmitt* Court's detailed search of Ohio precedent to show that Ohio's Supreme Court had been applying essentially that standard

disproves any thought that it rejected it. Whether it did or not, the Supreme Court has repeatedly stated that de novo review is required under the First Amendment. In *Bose v. Consumers Union, Inc.*, 466 U.S. 485, 508 n.27 (1984), a defamation case, the Court stated that the "First Amendment questions of 'constitutional fact' compel this Court's de novo review." Further, a reviewing court must "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17 (1990). *See also Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6ᵗʰ Cir. 2013) (quoting *Milkovich* for this proposition).

The First Amendment's requirement of de novo review is not limited to defamation cases. In *Edwards v. South Carolina*, 372 U.S. 2289, 235 (1963), which involved a criminal conviction based on speech, the Court stated that it "remains our duty in a case such as this to make an independent examination of the whole record." (Emphasis added). In *Hurley v. Irish–Am. Gay, Lesbian & Bisexual Group,* 515 U.S. 557, 567–68 (1995), the Supreme Court stated in a First Amendment challenge to a parade restriction that it was under "a constitutional duty to conduct an independent examination of the record as a whole, without deference to the trial court." (Emphasis added and citing *Bose Corp.,* 466 U.S. at 499)).

Sister Circuits have read these precedents to mean that "in First Amendment cases [courts] make an independent and searching inquiry of the entire record, since [courts] are obliged to conduct a 'fresh examination of crucial facts ... so as to assure ourselves that [the lower court's] judgment does not constitute a forbidden intrusion on the field of free expression.'" *Guiles v. Marineau*, 461 F.3d 320, 324 (2d Cir. 2006) (quoting *Hurley*, 515 U.S. at 567–68).

Nothing in the Sixth Circuit's holdings express any disagreement with this conclusion, *Schmitt* included. *Schmitt*, 933 F.3d at 639, assumed that de novo review was required, and more

recently the Court stated that "[i]n *Schmitt*, we concluded that the 'absence of a statutory de novo appeal of right does not impose a significant or unjustified burden on initiative proponents' First Amendment rights' because the Ohio Supreme Court 'performs what is essentially a de novo review of the legal issue." *Beiersdorfer*, WL 3702211, at *12 (citation omitted).[2] In the absence of precedent in the Sixth Circuit rejecting de novo review or distinguishing the Supreme Court's holdings, the latter must govern. De novo review is required.

### III.    The District Court Erred in Concluding that the Availability of Future Access Is Sufficient.

Rejecting established precedent from around the country and this Circuit, the District Court compounded its mistaken misreading of Schmitt and other Sixth Circuit precedents by ruling that the availability of alternative access mechanisms and future elections satisfy the First Amendment. "The Court is not persuaded," the District Court stated, "that plaintiffs have an overriding First Amendment right to place their proposed amendment on this year's ballot." Opinion and Order, Doc. No. 21, at PageID# 218 (emphasis added). Questioning whether an initiative sponsor has a "right to appear on the ballot during a particular election cycle," and ignoring the effort needed to begin anew (including 1000 fresh signatures) the Court advised that nothing prevents "plaintiffs from submitting a new petition to the Attorney General, nor does it limit the number of petitions they may submit." *Id*. at PageID# 220. They are therefore free to "start the petition process anew,"

---

[2] Nor does Ohio law require de novo review, as made clear by Defendant's motion to dismiss filed in *State ex rel. Brown v. Yost*, 2024 – 0409 (Ohio, April 19, 2024), in which Defendant argues that "the standard [of review] is whether [Defendant] engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions," *id*. at 7, a standard that limits its ability to reverse his actions to "extraordinary" situations, *id*. at 6, and then only where the challenger can "carry the burden of establishing that he or she has a clear legal right to the relief sought, that the respondent has a clear legal duty to perform the requested act," *id*., and only "by clear and convincing evidence." *Id*.

and if they "acted right now and successfully completed the initial steps, they plausibly would have ample time to gather signatures by July 3, 2024." *Id*.

The District Court's ruling is wrong. No court has before ruled that a candidate's or initiative's First Amendment protections fade because of the availability of future opportunities or elections. The Third Circuit in *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997), stated what is implicitly understood under the *Anderson-Burdick* analysis: "[i]f the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election." (Emphasis added). "[D]enying voting and associational rights," the District Court summarized in *North Carolina Democratic Party v. Berger*, 2018 WL 7982918, *4 (M.D. N.C. 2018), "cannot be alleviated after the election." (Quoting *Hooks*, 121 F.3d at 883).

The Eighth Circuit reiterated this principle in the specific context of citizen-initiatives in *SD Voice v. Noem*, 60 F.4th 1071 (8th Cir. 2023), when it invalidated an early filing deadline imposed by South Dakota on citizen-initiatives using the *Anderson-Burdick* formula. The Eighth Circuit directly rejected South Dakota's argument that initiatives could be filed in a later election, following an intervening legislative session, and thus that "its citizens are still 'free to propose an initiated measure of their choosing and to convey their message to all who will listen.'" *Id*. at 1079. The Eighth Circuit responded that "[t]he Supreme Court has rejected the argument that a statute's burden on expression 'is permissible because other avenues of expression remain open,' reasoning a law that leaves open other avenues of communication does not relieve the burden on protected political discourse. So too here." (Emphasis added and citation omitted). The availability of "alternative," later avenues could not save South Dakota's unconstitutional deadline.

The Sixth Circuit's COVID-era holdings prove that it adheres to this understanding. If the possibility of trying again in the future were relevant or insulated procedures from First Amendment scrutiny, after all, the Sixth Circuit would have surely said so in that line of cases. It did not. *Thompson v. DeWine*, 959 F.3d 804 (6th Cir. 2020), proves this. There the Court addressed Ohio's restrictions on both local and statewide initiatives in Ohio during the COVID crisis. It applied *Anderson-Burdick* to them, without any mention of the possibility of future ballot access for either the local or the statewide plaintiffs. To be sure, the Sixth Circuit sustained Ohio's restrictions in that case, but not because the initiative sponsors could try again later.

*Esshaki v. Whitmer*, 813 Fed. Appx. 170, 171 (6th Cir. 2020), meanwhile, sustained an injunction under the *Anderson-Burdick* test prohibiting Michigan's enforcement of ballot deadlines for candidates during COVID: "The district court correctly determined that the combination of the State's strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a severe burden on the plaintiffs' ballot access, … [and the] provisions are not narrowly tailored *to the present circumstances*." (Italics original). The Court's conclusion makes clear that *Anderson-Burdick*'s analysis focuses on "the present circumstances," which includes the approach of the upcoming election that the plaintiff seeks to access.

While *Esshaki* involved candidates, in *SawariMedia, LLC v. Whitmer*, 466 F. Supp.3d 758 (E.D. Mich. 2020), *stay denied*, 963 F.3d 595 (6th Cir. 2020), *vacated*, 2020 WL 6580461 (E.D. Mich. 2020),[3] the Sixth Circuit extended its holding to invalidate these same COVID restrictions in the context of statewide initiatives. "Under Michigan law, citizens who sought to have an initiative proposal placed on the 2020 general election ballot were required to collect more than

---

[3] The preliminary injunction was vacated by the District Court after the plaintiffs filed a notice voluntarily dismissing the action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

340,000 signatures by May 27, 2020." 466 F. Supp.2d at 761. The "question the Court must answer," the District Court stated, "is: <u>under the current circumstances</u> and as applied to Plaintiffs, are Michigan's signature requirement and filing deadline for initiative petitions 'narrowly drawn to advance a state interest of compelling importance.'" *Id*. at 774 (emphasis added and quoting *Burdick*, 504 U.S. at 434). The Sixth Circuit agreed: "the restrictions at issue here are identical to those in *Esshaki*," and thus *Anderson-Burdick* dictated the same outcome for Michigan's initiatives. No mention was made of alternative avenues and future elections.

Contrary to the District Court's conclusion, *Beiersdorfer* is consistent with all of this. Pointing to *Beiersdorfer* for support, the District Court asserted that so long as "plaintiffs remain free to exercise the initiative power in compliance with [Ohio law]," no First Amendment violation can occur. Opinion and Order, Doc. No. 21, at PageID # 220 (citation omitted). The District Court thus misstates *Beiersdorfer* to mean that the First Amendment is satisfied so long as initiative sponsors remain free to keep trying. But *Beiersdorfer* says no such thing. It fully applied the First Amendment and *Schmitt*. If the District Court's interpretation of *Beierdorfer* were correct, none of its discussion of the First Amendment would have been needed.

**IV.    The Balance of Equities, Including Irreparable Harm to Plaintiffs and the Lack of Any Harm to Defendant and the Public, Justifies Immediate Injunctive Relief.**

The Sixth Circuit in *Driehaus*, 814 F.3d 466, which invalidated Ohio's "false political speech" law, struck the proper balance between restricting misleading speech and promoting fair elections. There, it ruled that allowing executive officials to restrict or punish speech they believe to be false or misleading is too high a price to pay under the First Amendment for fair elections. Not only does the ability to restrict false speech risk "unwanted consequences and abuses," as has certainly proven the case here, allowing executive officers to restrict what they believe to be false

political speech is not "narrowly tailored to protect the integrity of Ohio's elections." *Id*. at 474. "Causing damage to a campaign that ultimately may not be in violation of the law, … does not preserve the integrity of the elections and in fact undermines the state's interest in promoting fair elections." *Id*.

That same balance applies here. Ohio's interest in preserving the integrity of its elections is not better served by allowing its executive branch to ban altogether, at its discretion, what it believes to be false or misleading. Doing so without timely review can "caus[e] damage to a campaign that ultimately may not be in violation of the law." This does far more damage to "the integrity of the elections and in fact undermines the state's interest in promoting fair elections." *Driehaus*, 814 F.3d at 475. As Justice Brandeis correctly observed, "sunlight is the most powerful of all disinfectants." *See* P. FREUND, THE SUPREME COURT OF THE UNITED STATES 61 (1949); L. BRANDEIS, OTHER PEOPLE'S MONEY 62 (1933) ("Sunlight is said to be the best of disinfectants").

The public benefits by democracy. Allowing Plaintiffs to proceed and collect signatures serves the public interest. Neither Defendant nor the public will be harmed. Indeed, continuing to block Plaintiffs' initiatives continues to inflict irreparable harm. *See Elrod v. Burns*, 427 U.S. 347 (1976). The balance must be sunlight. Injunctive relief pending appeal achieves that end.

## Conclusion

Plaintiffs' request for an injunction pending appeal should be GRANTED.

Respectfully submitted,

*s/Mark R. Brown*

Mark R. Brown (81941)
Counsel of Record
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall (pro hac vice)
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

Counsel for Plaintiffs

* For purpose of identification only