## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CYNTHIA BROWN, CARLOS BUFORD, and
JENNY SUE ROWE**,

      Plaintiffs,

v.              **CASE NO. 24-cv-01401-JLG-EPD**

**DAVID YOST**,
in his Official Capacity as **Ohio
Attorney General**,

      Defendant.

## EMERGENCY ELECTION LITIGATION

## PRELIMINARY INJUNCTION REQUESTED

_____

## <u>FIRST AMENDED AND SUPPLEMENTED VERIFIED COMPLAINT</u>

### <u>Introduction</u>

1.  This is an original action brought under <u>42 U.S.C. § 1983</u>, *Ex parte Young*, <u>209 U.S. 123</u> (1908), and the First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, against David Yost, Ohio's Attorney General, in his official capacity, seeking both facial and as-applied declaratory and injunctive relief enjoining enforcement of <u>O.R.C. § 3519.01(A)</u>'s "fair and truthful" provision now and in the future. The challenged provision gives Yost unilateral authority to editorially control and block private citizen speech during the state's ballot initiative process based on Yost's personal determination that the speech is not "fair and truthful," in violation of the First Amendment's Free Speech Clause.

## **Parties**

2. Plaintiffs are three Ohio qualified voters who constitute the committee that is required under Ohio law, O.R.C. § 3519.02, to propose the two statewide citizen-initiated constitutional amendments at issue in this case, "Protecting Ohioans' Constitutional Rights," and "Ohio Wrongful Conviction and Justice Reform Amendment."

3. Plaintiffs, acting as that committee, have proposed an amendment to Ohio's Constitution entitled "Protecting Ohioans' Constitutional Rights," *see* Exhibit 3, and presently intend and are planning to submit a second constitutional amendment to Ohio's Constitution entitled "Ohio Wrongful Conviction and Justice Reform Amendment." *See* Exhibit 7.

4. Defendant is Ohio's Attorney General, who is sued in his official capacity. Defendant was at all times relevant to this action engaged in state action within the meaning of the First and Fourteenth Amendments and was acting under color of law within the meaning of 42 U.S.C. § 1983.

5. Defendant is authorized and required by O.R.C. § 3519.01(A) to determine whether the summary prepared by a citizen-initiative's committee represents a "fair and truthful" description of that committee's proposed constitutional amendment and to refuse to forward the proposed constitutional amendment to the Ohio Ballot Board if he decides it does not.

## **Jurisdiction and Venue**

6. Federal jurisdiction is claimed under the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, this being an action under 42 U.S.C. § 1983.

7. Venue lies in this district under 28 U.S.C.§ 1391(b).

## Overview of Ohio Law

8.      Ohio's Constitution recognizes that "[a]ll political power is inherent in the people," who retain "the right to alter, reform, or abolish the[ir] [government], whenever they may deem it necessary." Ohio Const. Article I, Section 2. More than 100 years ago, Ohioans ratified a specific constitutional right to propose ballot initiatives that amend the Constitution. Ohio Const. Art. II, § 1-1g. Although the General Assembly may pass laws to "facilitate" Ohioans' ballot initiative right, it may in "no way limit[] or restrict[]" that right. *Id.* at § 1g.

9.      Ohio's Constitution provides that a proposed amendment be placed on the general election ballot after the ballot initiative petition has a total number of signatures equaling at least 10 percent of the votes cast in the last gubernatorial election. *Id.* at § 1a.  That amount is currently well over 400,000 signatures, which must come from at least 44 of Ohio's 88 counties.

10.      Under an Ohio Revised Code § 3519.01(A), however, ballot initiative proponents may not begin the statewide circulation process without first submitting a summary of their proposed amendment, with an accompanying title, and together with 1000 supporting signatures and the text of the proposed amendment, to Defendant. This summary never appears on any ballot; it is used solely by the ballot initiative proponents to communicate with potential supporters about the proposed amendment during the statewide circulation process. The Ohio Ballot Board itself prepares the ballot language that voters see in the voting booth. *See* O.R.C. § 3505.062.

11.      Defendant then has ten days to determine whether, in his view, the summary is a "fair and truthful" description of the proposed amendment.  If he certifies the summary as fair and truthful, he must send both the summary and the proposed amendment to Ohio's Ballot Board for its review of whether the proposed amendment is limited to a single subject.  Once the

Ballot Board determines that the proposed amendment satisfies the single subject rule, the initiative's proponents may begin the statewide circulation process. *See* O.R.C. § 3519.01(A).

12.    The statewide circulation process must be completed and the more than 400,000 signatures collected 125 days before the next general election in order to have the constitutional amendment placed on that general election ballot. *See* Ohio Const., art. II, § 1a. For Plaintiffs' March 5, 2024, "Protecting Ohioans' Constitutional Rights" amendment, this meant that the signature collection process had to be completed by July 3, 2024 in order for that proposed amendment to appear on the ballot for the 2024 November election. For Plaintiffs' "Ohio Wrongful Conviction and Justice Reform Amendment" this means that in order for Plaintiffs' to qualify for the November 2025 ballot their 400,000+ signatures will be due July 2, 2025. For the November 2026 ballot the deadline will be due on or about July 1, 2026. Because hundreds of thousands of signatures are required collection efforts often take more than one year, which is why emergency relief is required in this case for Plaintiffs to qualify for either of these elections. If the process is not completed until after any of these early July deadlines, the proposed amendment can still appear on the next year's November general ballot, assuming all other requirements and any future deadlines are met. *See State ex rel. Ohioans for Secure and Fair Elections*, 152 N.E.3d 267 (Ohio 2020). But the loss of an earlier election cycle still violates the First Amendment and constitutes irreparable injury.

13.    When Defendant refuses to certify a summary as "fair and truthful," the ballot initiative proponents must start the submission process again, rewriting the summary and collecting another 1000 supporting signatures before re-submitting the proposal to Defendant for review.

14.    Because the "fair and truthful" provision does not expressly require Defendant to

identify all of his objections to a summary in the first instance of review, Defendant can and does reject subsequent summaries based on new objections even after the proponents have made revisions addressing all of Defendants' prior objections, *see*, *e.g*., Letter from Yost, Nov. 17, 2023, Exhibit 2 ("The above instances are just a few examples of the summary's omissions and misstatements. … Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment."); Letter from Yost, March 14, 2024, Exhibit 4 (identifying new objections and stating "The above instances are just a few examples of the summary's omissions and misstatements. … Thus, without reaching the balance of the summary, and consistent with my past determinations" the summary is rejected), thereby capturing the proponents in an endless loop of resubmissions, each of which requires the proponents to collect another 1000 supporting signatures. During this time, the proponents cannot engage in the statewide circulation process necessary to collect the over 400,000 signatures required to get their proposed amendment on the ballot.

15.     Section 3519.01(C) of the Ohio Revised Code vests in the Ohio Supreme Court original jurisdiction to review Defendant's refusal to certify a proposed amendment and summary under the "fair and truthful" provision.  There is no statutory requirement that the Ohio Supreme Court expedite or promptly consider such challenges, nor is review de novo.

16.     The Ohio Supreme Court's rules only require that election proceedings be expedited when they are filed within 90 days of election day.  Because the early July deadlines for statewide constitutional ballot initiatives is always over 90 days before election day, this expedition rule will never apply to challenges to Defendant's refusal to certify under the "fair and truthful" provision found in O.R.C. § 3519.01(A).

17.     Outside this limited 90-day time-frame, whether and how to expedite election challenges, including those under O.R.C. § 3519.01(C), are left to the discretion of the Ohio Supreme Court. The Ohio Supreme Court, exercising this discretion refused to expedite review of Defendant's rejection of Plaintiffs' March 5, 2024 petition, *see* Exhibits 3 & 4, as well as Defendant's rejection of Plaintiffs' July 5, 2024, *see* Exhibits 5 & 6, petition.

18.     Ohio's mandamus process of review, which applied under O.R.C. § 3519.01(C), is not de novo. Instead, executive ballot decisions that are challenged by mandamus can only be reviewed for an abuse of discretion. This means that so long as the decisions are not arbitrary, capricious or clearly violative of law they will not be set aside. *See, e.g.*, *State ex rel. Hawkins v. Pickaway County Board of Elections*, 1991-Ohio-221, 75 Ohio St.3d 275, 277, 662 N.E.2d 17, 19 (citing *State ex rel. Rife v. Franklin Cty. Bd. of Elections* (1994), 70 Ohio St.3d 632, 633–634, 640 N.E.2d 522, 523–524). This is consistent with Ohio's treatment of mandamus generally, whereby an abuse of discretion can be found only when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10; *see also State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015); *State ex rel. Sensible Norwood v. Hamilton County Board of Elections*, 148 Ohio St.3d 176, 69 N.E.3d 696 (2016).

### Defendant's Application of § 3519.01(A) to Plaintiffs

19.     "[O]n grounds increasingly dubious," *Brown v. Yost*, 122 F.4[th] 597, 622 (6th Cir. 2024) (Kethledge, J., dissenting), Defendant rejected *eight* ballot initiatives submitted by Plaintiffs over the past four years on the issue of governmental immunities. To give a few examples of the rationales asserted by Defendant:

6

a.      Defendant rejected Plaintiffs' first proposed summary, submitted May 3, 2021, *see* May 2021 Submission, https://www.ohioattorneygeneral.gov/getattachment/36f4b0ce-2e5d-4fc9-a3dd-a95a25441721/Civil-Action-for-Deprivation-of-Constitutional-Rights-Amendment.aspx, as not "fair and truthful" because it stated that "a public body or individual *employed by* a public body" would be liable for the deprivation of constitutional rights, while the proposed amendment provides liability against "against a 'public body' and a 'person *acting on behalf of*' a public body."

b.      Plaintiffs revised the summary to address Defendant's objections, collected another 1000 signatures, and resubmitted on November 22, 2022. *See* November 2022 Submission,      https://www.ohioattorneygeneral.gov/getattachment/2604f51c-4eca-4495-973a-bb32c1015873/The-Ohio-Civil-Liberties-Restoration-Act.aspx.      Defendant      rejected      this submission as not "fair and truthful" because it did not "delineate the proposed changes" by "contain[ing] strikethroughs of the language that is being removed," although he identified no legal authority that requires such a strikethrough.  Defendant also complained that the summary stated that it would repeal R.C. § 2744.03(A)(6)(a), (b), and (c), when the law would actually would remove (A)(6) "in its entirty" (sic). There is no other subsection in (A)(6), and the summary clearly indicated that existing (A)(7) would be renumbered to (A)(6). Defendant also concluded that calling the amendment the "Ohio Civil Liberties Restoration Act" was "misleading on its face," because, in Respondent's opinion, removing qualified immunity would not have the effect of "restoring civil liberties," and petitioners may not "cause a potential signer to believe that the proposed amended statute has a different effect than its actual effect," as determined by the Attorney General.

c.      Plaintiffs revised the summary to address Defendant's new objections, collected another 1000 signatures and resubmitted on February 27, 2023. *See* February 2023 Submission, https://www.ohioattorneygeneral.gov/getattachment/efacbfa9-aa27-45bc-a894-b051d8dfc217/Protecting-Ohioans-Constitutional-Rights.aspx.  Defendant rejected this summary as not "fair and truthful" because it would purportedly "mislead[] a potential signer with respect to how the proposed amendment can prevent constitutional rights violations from occurring in the future." Below is the text of the summary that Defendant objected to along with the relevant text in the proposed amendment:

| Summary: "In a case in which the plaintiff prevails, mandate that reasonable measures be taken to prevent similar rights violations from occurring in the future." | Proposed Amendment: "In any proceeding in which a plaintiff's claim prevails, the government employer must take reasonable measures to prevent a similar rights violation from occurring in the future." |
|---|---|

Defendant also objected to the summary's statement that the amendment would "provide for accountability, including termination" of an employee who violates constitutional rights. According to Defendant, the summary would mislead a reader into believing that termination is mandatory, when the amendment simply provides "just cause." Defendant further faulted the summary for not including "any information about where the action may be brought or what types of relief are available under the amendment." The amendment says simply "[a]n individual may seek legal, equitable, or other relief in a court of competent jurisdiction."

d.      Plaintiffs revised the summary to address Defendant's objections, collected

another 1000 signatures, and resubmitted the summary on May 24, 2023. *See* https://www.ohioattorneygeneral.gov/getattachment/80203270-c1b2-41a7-b687-6d1b86ff208c/Protecting-Ohioans-Constitutional-Rights-(Resubmission).aspx. Defendant rejected it again, this time claiming that the summary "misstate[d] the proposed amendment" because it noted that an employee could be terminated for a violation of Ohio's Constitution *and laws*, while the proposed amendment provides for termination for violations "only [of] the Constitution." Here is what the amendment said: "A court's finding that an employee violated a right guaranteed by the *laws or* constitution of Ohio is just cause for terminating the employment…" Notwithstanding this plain language, Defendant rejected the submission because "[a] potential signer would likely read the summary and misbelieve that the proposed amendment provides for the termination of employment for individuals that violated Ohio law or the Ohio Constitution, rather than only the Ohio Constitution." Defendant further claimed the "summary is also materially confusing, vague, and contradictory" in how it described the award of attorney's fees. He does not explain what he meant or how Plaintiffs could alter the description to satisfy Defendant.

e.     Plaintiffs again revised the summary, collected another 1000 signatures, and resubmitted on August 9, 2003. *See* https://www.ohioattorneygeneral.gov/getattachment/34e73670-3a03-477e-96d0-1f0c166df239/Protecting-Ohioans-Constitutional-Rights-(Sixth-Submission).aspx. Having previously faulted Plaintiffs for minor deviations from the amendment text, Defendant this time rejected the summary for including *too much* of the amendment language in the summary. In Defendant's view, the new summary "is not a 'short, concise summing up' of the proposed amendment, it is a partial, regrouped version of the proposed amendment." Defendant, however,

previously approved a summary submitted by a different committee on June 24, 2022 that contained the language of the amendment verbatim. *See* https://www.ohioattorneygeneral.gov/getattachment/fd0735f9-ea48-499a-8202-bdef19385671/Medical-Right-to-Refuse.aspx.

     f.     Defendant refused to certify Plaintiffs' November 8, 2023 submission, *see* Exhibit 1, for no less than a dozen trivial reasons, some addressing not the summary but the text of the proposed amendment itself. *See* Exhibit 2. For example, Yost complained extensively about the proposed amendment's venue provision, leading Plaintiffs to remove it and replace with a simpler version in their proposed amendment in their subsequent March 4, 2024 submission. *See* Exhibit 3. Yost also expressed concern over the November 8, 2023 petition's failure to adequately describe the proposed amendment's (as opposed to the summary's description) of non-party liability. *See* Exhibit 2. Yost further objected to the November 2023 summary's description of "public employee" and "entity" in the proposed amendment, again forcing Plaintiffs to alter the terms of the proposed amendment by adding additional definitions in their subsequent March 5, 2024 submission. *See* Exhibit 3. Yost also claimed in his November 17, 2023 rejection that the petition's summary's descriptions of potential defendants, including "public employees," "instrumentalities of the State of Ohio," and "independent contractors" were inadequate, *see* Exhibit 2, and that the summary somehow misstated the remedies available, who could request a jury trial, and the potential for "reasonable attorney's fees," even though the summary's descriptions of these facets of the proposed amendment closely tracked the language of the proposed amendment. Yost even claimed in his November 17, 2023 rejection letter that the November 2023 summary improperly "omit[ed] that the types of immunities which are

10

enumerated therein are part of an expressly non-exhaustive list." *See* Exhibit 2. The November 2023 summary had stated that "[q]ualified immunity, sovereign immunity, prosecutorial immunity, and any immunity provided the State, political subdivision, or public employee by statute," were all being "eliminated," *see* Exhibit 1, but this was not enough for Yost because it did not include the descriptive "non-exhaustive list," words that were not in the proposed amendment. Yost then added that he also objected to Plaintiffs' use of the word "eliminated" in conjunction with the amendments prohibition on use of immunities.

g.      Defendant refused to certify Plaintiffs' eighth proposed summary, submitted March 5, 2024, on several grounds, including the proposed amendment's title, "Protecting Ohioans' Constitutional Rights." *See* Exhibits 3 & 4. This title had appeared on Plaintiffs' four previous submissions without objection from Defendant. Defendant also objected to the summary's inclusion of the phrase "or any subset thereof" with its description of the "immunities and defenses" that the amendment abrogated. ***See*** https://www.ohioattorneygeneral.gov/getattachment/70a9e57d-703f-47bd-bf05-e44d17aa4394/Protecting-Ohioans-Constitutional-Rights.aspx. Plaintiffs had included that phrase because Defendant had objected to its omission in their last submission. Defendant's rejection of Plaintiffs' March 5, 2024 petition has been noted by Professor Steinglass as a bad example of "[t]he Attorney General's office … join[ing] the effort to limit the use of the tools of direct democracy. It has slow-walked petitions submitted for the statutory 'fair and truthful' inquiry by not providing comprehensive initial reviews of summaries of proposed amendments, and it has adopted a new and questionable tactic by considering, for the first time, the generic titles given to initiative petitions." Steven H. Steinglass & Ernest M. Oakley, *Direct Democracy: Ohio Style*, 73 CLEVE. ST. L. REV. 101, 161 (2024) (citing Yost's rejection of Plaintiffs' March 5,

2024 petition) (footnotes omitted).

h.    Defendant rejected Plaintiffs' ninth summary, submitted July 5, 2024, *see* Exhibit 5, on the ground that Plaintiffs had removed the title he had for the first time objected to on March 14, 2024. *See*  Exhibit 6. He now claimed, incorrectly it turns out, that Plaintiffs had to submit to him a title under O.R.C. § 3519.01(A) for his fair and truthful review.

20.    In response to the rejection of their July 5, 2024 initiative petition based on Defendant's claim that it improperly lacked a title, *see* Exhibits 5 & 6, Plaintiffs again sought mandamus from the Supreme Court of Ohio. After again refusing to expedite the proceedings (over the dissents of two Justices, *see State ex rel. Brown v. Yost*, 239 N.E.3d 408 (Ohio 2024) (Brunner & Donnelly, JJ., dissenting), on November 14, 2024 the Ohio Supreme Court granted the parties' joint motion for a limited writ of mandamus and remanded Plaintiffs' proposed amendment and summary to Defendant, *see State ex rel. Brown v. Yost*, 245 N.E.3d 798 (Ohio 2024), based on the Court's October 30, 2024 holding in *State ex rel. Dudley v. Yost*, 2024-Ohio-5166, 2024 WL 4610503, __ N.E.3d __ (2024), that the Attorney General has no authority to review titles.

21.    Pursuant to the Ohio Supreme Court's writ, on November 25, 2024, Defendant's second round of review resulted in his concluding that Plaintiffs' July 5, 2024 summary was fair and truthful. He accordingly certified it to the Ohio Ballot Board.

22.    On December 4, 2024 the Ohio Ballot Board certified that Plaintiffs' July 5, 2024 proposed amendment contained a single subject and sent it back to the Attorney General for his certification of this finding to the Ohio Secretary of State.

23.    Plaintiffs' now-certified July 5, 2024, summary differs from Plaintiffs' original March 5, 2024 summary, the latter of which reflects Plaintiffs' preferred language and includes

their preferred title. Plaintiffs' July 5, 2024 summary lacks a title because of Defendant's unlawful insistence that Plaintiffs' chosen title was misleading, and the text of the summary submitted on July 5, 2024 differs from the text of Plaintiffs' March 5, 2024 summary because of Defendant's insistence on changes to the March 2024 summary's language.

24.     Defendant's repeated refusal to certify Plaintiffs' summary meant that Plaintiffs were delayed from collecting the hundreds of thousands of signatures they needed and will need in order to have their citizen-initiative, "Protecting Ohioans' Constitutional Rights," *see* Exhibit 3, for months rolling over into years.  Their circulation speech was unconstitutionally silenced for these years, and they were unconstitutionally forced to collect thousands of signatures in order to keep resubmitting petitions to Defendant in order to have their summary certified and finally exercise their free speech rights.

25.     Defendant's exercise of editorial control based on the subject matter and content under O.R.C. § 3519.01(A) of Plaintiffs' March 5, 2024, summary and Defendant's resulting rejection (regardless of the reasons) of Plaintiffs' March 5, 2024 summary and title separately and together violate the First Amendment.

## Plaintiffs' Federal Challenge Over

## "Protecting Ohioans' Constitutional Rights"

26.     Plaintiffs filed the original version of their Verified Complaint with this Court on March 27, 2024. *See* Verified Complaint, Doc. No. 1.

27.     Plaintiffs requested emergency relief from this Court the next day, which following expedited briefing was denied by this Court on April 25, 2024. *See* Opinion and Order, Doc. No. 21.

28.     Plaintiffs took an immediate emergency appeal to the United States Court of

Appeals for the Sixth Circuit, and while emergency briefing was ongoing in the Sixth Circuit Plaintiffs voluntarily dismissed their action on May 22, 2024 in the Ohio Supreme Court for lack of expedited review once it became clear the Ohio Supreme Court would not and no longer could afford them timely relief. *See State ex rel. Brown v. Yost*, 2024-0409 (Ohio, May 22, 2024).

29.     The Sixth Circuit on May 29, 2024, seven days after Plaintiffs dismissed their Ohio Supreme Court challenge, reversed this Court's denial of preliminary relief and ordered emergency injunctive relief on Plaintiffs' behalf. *See Brown v. Yost*, <u>103 F.4th 420</u> (6th Cir. 2024).

30.     The full Sixth Circuit on June 17, 2024 granted Defendant's request for en banc review, thereby automatically vacating the Sixth Circuit's May 29, 2024 decision in Plaintiffs' favor. *See Brown v. Yost*, <u>104 F.4th 621</u> (6th Cir. 2024).

31.     Following full briefing and oral argument, the Sixth Circuit sitting en banc on November 21, 2024 ruled that Plaintiffs' request for preliminary injunctive relief, as it related to the November 5, 2024 general election, was mooted by the conclusion of that election and accordingly dismissed the interlocutory appeal. *See Brown v. Yost*, <u>122 F.4th 597, 601</u> (6th Cir. 2024) ("Brown's appeal from the denial of a preliminary injunction is moot.")

32.     The Sixth Circuit en banc also vacated this Court's Opinion and Order, <u>Doc. No. 21</u>, denying preliminary relief that had been entered on April 25, 2024. *Brown v. Yost*, <u>122 F.4th 597, 603</u> (6th Cir. 2024).

33.     The Sixth Circuit en banc was careful to state that Plaintiffs' case remained alive in this Court: "We appreciate that the *underlying lawsuit* is not moot. Her request for permanent injunctive relief is not limited to 2024. Hence the passing of the November 2024 election does not undercut the live nature of the dispute pending in the district court." *Brown v. Yost*, <u>122 F.4th</u>

597, 602 (6th Cir. 2024).

**Plaintiffs' "Ohio Wrongful Conviction and Justice Reform Amendment"**

34.    In addition to their "Protecting Ohioans' Constitutional Rights" initiative, Plaintiffs have prepared a new proposed constitutional amendment with an accompanying summary, entitled the "Ohio Wrongful Conviction and Justice Reform Amendment," which is designed to address the grave injustice of wrongful convictions in Ohio and the irreversible harm they cause by providing remedies for those who are wrongly convicted. *See* Exhibit 7.

35.    Plaintiffs have begun circulating their new petition and collecting the needed 1000 signatures to place their Ohio Wrongful Conviction and Justice Reform Amendment" on the November 2025 general election ballot.  Because they seek to circulate their petition without having their speech about the subject matter of the proposal subject to unconstitutional executive review and editorial control by the Defendant, Plaintiffs are challenging Yost's fair and truthful authority under O.R.C. § 3519.01(A) before submitting this initiative, its summary and title to Defendant for review under O.R.C. § 3519.01(A). This sort of "pre-enforcement" review was expressly advocated by the Attorney General before the Sixth Circuit during the prior interlocutory en banc proceedings in this case. *See* Appellee's [Yost's] Supplemental En Banc Brief, *Brown v. Yost*, No. 24-3354, Doc. No. 54, at Page 19 (6th Cir., Aug. 15, 2024) ("As repeat players in Ohio's initiative process, the plaintiffs could have sought to enjoin the Attorney General's enforcement of Ohio law as to some future summary they intended to submit. Such a pre-enforcement challenge would have fallen within the confines of *Ex parte Young*. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046–50 (6th Cir. 2015).").

36.    Defendant's unconstitutional authority to review, censor and reject Plaintiffs' summary and title, just as he did with their prior attempts, is all that prevents Plaintiffs from

being able to submit their new initiative, entitled "Ohio Wrongful Conviction and Justice Reform Amendment," and supporting signatures under O.R.C. § 3519.01(A) to Defendant and then the Ballot Board in a manner that is consistent with the First Amendment.

37.     Defendant's unconstitutional authority to editorially censor, control and reject Plaintiffs' message contained in their summary of "Ohio Wrongful Conviction and Justice Reform Amendment," along with its title, and to require the modification of its summary's content and its title, is all that prevents Plaintiffs from being able to proceed to the Ballot Board for single-subject review and then to circulate their proposed amendment to collect 400,000+ signatures and place that amendment on future ballots in Ohio.

38.     Defendant's enforcement of his authority under O.R.C. § 3519.01(A) to exercise editorial control, review and reject the merits of Plaintiffs' summary of their proposed "Ohio Wrongful Conviction and Justice Reform Amendment" and its title presents a credible threat that Plaintiffs' submission of their initiative, "Ohio Wrongful Conviction and Justice Reform Amendment," to Defendant will be subjected to unconstitutional editorial, subject-matter, content-based review by Defendant under O.R.C. § 3519.01(A) in violation of the First Amendment.

39.     Plaintiffs presently intend to submit their citizen-initiative with its accompanying summary and title, "Ohio Wrongful Conviction and Justice Reform Amendment," to Defendant pursuant to O.R.C. § 3519.01(A) as soon as Defendant is enjoined from exercising his unconstitutional editorial, subject-matter and content-based control of Plaintiffs' message, and presently stand ready and able to do so with the required 1000 signatures under standards that are deemed by this Court to be consistent with the First and Fourteenth Amendments to the United States Constitution.

16

**CAUSE OF ACTION**

**First Amendment Freedom of Speech –**

**Facial and As-Applied Challenge**

40.     Plaintiffs herein incorporate the allegations made in the paragraphs above.

41.     The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I.

42.     Although States need not permit ballot initiatives, those that do must comply with the First Amendment when regulating speech in the context of the ballot initiative process. *See Meyer v. Grant*, 486 U.S. 414, 425 (1988). Indeed, the First Amendment's protections are at their "zenith" when applied to "core political speech," including speech that occurs in the ballot-initiative process. *Buckley v. Am. Const. L. Found.* ("*ACLF*"), 525 U.S. 182, 186-87 (1999) (citing *Grant*, 486 U.S. at 421-22, 425).

43.     In addition, content-based restrictions on speech, especially political speech, are subject to strict scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Viewpoint-based speech restrictions are even more "egregious" and are thus "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995). Prior restraints on private speech, which allow government actors to review speech before it can be disseminated, are "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

44.     O.R.C. § 3519.01(A) violates the First Amendment on its face and is accordingly actionable under 42 U.S.C § 1983. The summaries written by proponents of initiative petitions

17

are private speech protected by the First Amendment. The summary is not the text of the initiative, nor is it the language that will appear on the ballot. Rather, it is a description of the proposed amendment that appears only on the petition that proponents use to gather support for their proposal. Initiative supporters use the summary to advocate for their cause, and the summary itself is thus core private political speech.

45.     Defendant's authority to review of the summary to determine whether it is "a fair and truthful statement" infringes Plaintiffs' First Amendment rights in several ways. The statute gives Defendant discretion to reject summaries based on their content, according to his own highly subjective view of what constitutes a "fair and truthful" summation of the proposed constitutional amendment. Editorial control by government of privately composed messages is subject to serious First Amendment scrutiny. *See Moody v. NetChoice, LLC*, 603 U. S. 707, 731 (2024) ("An entity 'exercising editorial discretion in the selection and presentation' of content is 'engaged in speech activity.'") (quoting *Arkansas Ed. Television Comm'n v. Forbes*, 523 U. S. 666, 674 (1998)). Here, Defendant repeatedly rejected Plaintiffs' summaries of their proposed "Protecting Ohioans Constitutional Rights" amendment based on the content and viewpoint of the summaries, including by expressing his disagreement with the viewpoint of Plaintiffs' proposed title.

46.     The process by which Defendant exercises this editorial control over petition summaries further constitutes a facially impermissible restraint under the First Amendment. *See*, *e.g.*, *National Rifle Ass'n of America v. Vullo*, 602 U.S. 175, 202 (2024) (Jackson, J., concurring) ("Coercing an entity in the business of disseminating speech to stop disseminating someone else's speech obviously implicates the First Amendment, insofar as it may result in censorship similar to the prior restraint identified in *Bantam Books*."). Without Yost's approval, proponents

18

of an initiative cannot begin the circulation process. They therefore cannot communicate their proposed message with potential signatories through their chosen summary. Moreover, as illustrated by the ways in which Yost has exercised his power to review and reject proposals, Ohio law fails to constrain the Attorney General's review to objective, specific, neutral criteria. Nor does Ohio law provide for timely judicial review. Sponsors of a proposed amendment must therefore acquiesce in Defendant's editorial control of their summary *before* they may communicate that summary directly to voters through the petition circulation process, and then at best must wait through a protracted review process before speaking.

47.     Blocking Plaintiffs from beginning the circulation process also prevents them from engaging in further one-on-one communication with potential signatories during circulation, which the Supreme Court has recognized as an essential avenue for core political speech. *See Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). Preventing Plaintiffs from circulating their petition until they obtain Defendant's approval for the summary also makes it much more difficult—if not impossible—to gain the necessary signatures required to place their proposal on the ballot. That hinders Plaintiffs' ability to make their proposal a topic of statewide concern, which *Grant* recognized as a separate First Amendment harm.

48.     The constitutional infirmities in O.R.C. § 3519.01(A) are exacerbated by the lack of timely, de novo judicial review in the Ohio Supreme Court. Without timely, de novo judicial review, Defendant's editorial control over petition summaries and his concomitant power to block petition circulation become nearly absolute.

49.     O.R.C. § 3519.01(A) is subject to strict scrutiny, which requires Defendant to show that the provision is narrowly tailored to serve a compelling government interest. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015). The State's interest in preventing fraud in the ballot-

initiative process cannot justify either granting Defendant unfettered editorial control over Plaintiffs' speech or cutting Plaintiffs off entirely from the petition circulation process absent Defendant's prior approval of the content of their speech. Many more tailored approaches exist, as demonstrated by the less restrictive procedures in other states.

50.    O. R.C. § 3519.01(A) is also unconstitutional as applied to Plaintiffs' efforts to circulate their two proposed ballot initiatives, "Protecting Ohioans' Constitutional Rights" and "Ohio Wrongful Conviction and Justice Reform Amendment" under the First Amendment and actionable under 42 U.S.C. § 1983. Defendant repeatedly rejected Plaintiffs' summary of their "Protecting Ohioans' Constitutional Rights" proposal "on grounds increasingly dubious." *Brown v. Yost*, 122 F.4th 597, 622 (6th Cir.2024) (en banc) (Kethledge, J., dissenting). Plaintiffs are chilled from submitting their proposed "Ohio Wrongful Conviction and Justice Reform Amendment" to Defendant for fear that he will once again block them from circulating their petition based on specious gripes with their proposed summary and title. Even if O.R.C. § 3519.01(A) could be constitutionally applied to a summary and title that constituted fraud or deception, Defendant's spurious flyspecking of Plaintiffs' proposals violates the First Amendment.

51.    Defendant's authority to review citizen-initiatives' summaries and titles is content-based. But even if it could somehow be considered content-neutral or otherwise not subject to strict scrutiny, it would still be unconstitutional on its face and as-applied under the Supreme Court's less-than-strict First Amendment analysis found in the *Anderson-Burdick* test because without timely and de novo judicial review it is not closely related enough to any important State interest. *See Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019) (upholding Ohio's content-neutral local review process for local initiatives under the First Amendment because the

process included expedited judicial review that was automatically available and effectively de novo).

## **RELIEF REQUESTED**

52.     WHEREFORE, Plaintiffs request the following relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b):

A.     a declaration under 28 U.S.C. § 2201 that O.R.C. § 3519.01(A)'s grant of authority to Defendant to decide whether proposed amendments' summaries and their titles are fair and truthful is facially unconstitutional under the First Amendment;

B.     a declaration under 28 U.S.C. § 2201 that O.R.C. § 3519.01(A)'s grant of authority to Defendant to decide whether proposed amendments' summaries and their titles are fair and truthful is unconstitutional as applied to Plaintiffs under the First Amendment;

C.     preliminary and permanent injunctive relief under 42 U.S.C. § 1983 enjoining Defendant from enforcing O.R.C. § 3519.01(A) both on its face and as-applied;

D.     preliminary and permanent injunctive relief under 42 U.S.C. § 1983 requiring Defendant to certify to the Ballot Board Plaintiffs' March 5, 2024 petition, including its summary and title, *see* Exhibit 3, and any future summaries and titles of proposed amendments to the Ohio Constitution that are submitted to Defendant by Plaintiffs, without invoking his unconstitutional "fair and truthful" authority under O.R.C. § 3519.01(A) to review Plaintiffs' summaries and titles;

E.     reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

F.     such other and further relief as may be just and proper.

Dated: January 21, 2025

Respectfully submitted,

*Mark R. Brown*

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

* For purpose of identification only

## VERIFICATION of CYNTHIA BROWN

(Pursuant to 28 U.S.C. § 1746(2))

I, Cynthia Brown, verify under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2025.

Cynthia Brown

## VERIFICATION of CARLOS BUFORD

(Pursuant to 28 U.S.C. § 1746(2))

I, Carlos Buford, verify under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2025.

_Carlos D. Buford_

Carlos Burford

## VERIFICATION of JENNY SUE ROWE

(Pursuant to 28 U.S.C. § 1746(2))

I, Jenny Sue Rowe, verify under penalty of perjury that the foregoing is true and correct.

Executed on January 20 2025.

Jenny Sue Rowe

# Brown, et al. v. Yost

# EXHIBIT 1

**COUNTY:** _Butler_           **NUMBER:** _00094_

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

# AMENDMENT

## TITLE

Protecting Ohioans' Constitutional Rights

## SUMMARY

This Amendment would add a new section 22 to Article I of the Ohio Constitution:

The Protecting Ohioans' Constitutional Rights Amendment creates a private cause of action on behalf of persons whose rights under Ohio's Constitution are violated, or caused to be violated, by (1) the State of Ohio, its officers, departments and instrumentalities, (2) political subdivisions of Ohio, including municipal corporations, townships, counties and school districts, (3) public employees of the State or its political subdivisions, and (4) independent contractors of the State or its political subdivisions. Liability for public employees is limited to those instances where their conduct is authorized by their governmental employers and within the scope of their employments. Liability of independent contractors is limited to conduct that is authorized and under color of law. The State of Ohio is liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority granted to that public employee by the State of Ohio. A political subdivision is liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority that has been granted by the political subdivision to that to the public employee.

Qualified immunity, sovereign immunity, prosecutorial immunity, and any immunity provided to the State, political subdivision, or public employee by statute are eliminated. Remedies for constitutional violations include compensation for economic and non-economic damages, equitable and injunctive relief, any other remedies prescribed by State law, federal law, or common law, and awards of reasonable attorney's fees. Courts are also authorized to order government actors found to have violated Ohio's Constitution to take reasonable measures to prevent similar violations from occurring in the future. Any finding of liability against a public employee under this Amendment provides just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

The private cause of action created by this Amendment may be tried before the bench or a jury, but in either case violations must be proven by a preponderance of evidence. Jurisdiction and venue over the private cause of action created by this Amendment lie in the Court of Common Pleas for the county where the public employee who is named as a defendant resides or works at the time the action is filed. When only the State or a political subdivision is the defendant the action may be filed in the Court of Common Pleas for any county in Ohio. If both a public employee and the State or a political subdivision are named in the same action, the venue is restricted to the county where the named public employee resided or worked at the time of filing. All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred. This amendment contains a severability clause. The effective date would be January 1, 2025.

1

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 2692 Arcola Road, Columbus, Ohio 43207 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Derrick Jamison | 3015 Hackberry Street, Cincinnati, Ohio 45206 |
| Hamza Khabir | 26 Gould Avenue, Bedford, Ohio 44146 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

# FULL TEXT OF THE PROPOSED AMENDMENT

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is hereby amended to add the following Section:

## Section 22. Protecting Ohioans' Constitutional Rights

(A) Definitions

    (1) "State" means the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio.

    (2) "Political subdivision" means any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district.

    (3) "Public employee" means any entity who is:

        (a) an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision; or

        (b) an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law.

    (4) "Government actor" means the State, any political subdivision thereof, or any public employee of the State or of any political subdivision thereof.

    (5) "Person" means any individual resident of Ohio or individual within the State.

    (6) "Constitutional right" means any right, privilege or immunity secured pursuant to the constitution of Ohio.

(B) Claim for Deprivation of Rights Guaranteed by the Constitution of Ohio

    (1) No government actor shall cause any person to be subjected to deprivation of any constitutional right.

    (2) A person who claims to have suffered a deprivation of any constitutional right due to acts or omissions of any government actor or actors may bring a civil action against said government actor or actors.

    (3) A civil action pursuant to this Section may be brought in the following jurisdictions:

        (a) An action naming a public employee as a defendant may be brought in any Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed.

        (b) An action naming the State or a political subdivision as a defendant may be brought in the Court of Common Pleas for any county in the State. However, if a public employee is also named as a defendant to the same action, then the action may only be brought in a Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed.

(C) Immunity Defenses Prohibited

3

(1) In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to:

    (a) Qualified immunity;

    (b) Sovereign immunity;

    (c) Prosecutorial immunity; or

    (d) Any immunity provided to the State, political subdivisions, or public employees by statute.

(D) Determination Of Liability

(1) The person bringing an action pursuant to this Section may elect whether the action will be tried in a bench trial or jury trial.

    (a) In a bench trial, the court's decision on any claim brought hereunder shall be supported by findings of facts and conclusions of law.

    (b) In a jury trial, any party may submit interrogatories to the jury asking for its findings of fact and application of the court's instructions as to the law.

(2) Any government actor is liable for the deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right.

(3) In addition, if a public employee is found liable for the deprivation of a person's constitutional rights pursuant to subsection (D)(2), and it is proven by a preponderance of evidence that the public employee was acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision, then the State or political subdivision shall be held liable to that person for the conduct of the public employee.

(4) Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

(E) Remedies Upon A Determination Of Liability

(1) If a government actor is found liable for the deprivation of a person's constitutional rights, that person shall be entitled to any or all of the following relief:

    (a) Compensation for economic and non-economic damages, without limitation;

    (b) Equitable or injunctive relief;

    (c) Recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and

    (d) Any other remedies prescribed by State or federal law or available pursuant to common law.

(2) In addition to the relief awarded to the person, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

(F) Statute of Limitations

(1) A claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

(G) Termination of Contract, Agreement, or Employment
    (1) A finding of liability against a public employee pursuant to this Section is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

(H) Severability Clause
    (1) All provisions of this section shall be self-executing and severable.

(I) Effective Date
    (1) This section shall take effect on January 1, 2025.

# Brown, et al. v. Yost

# EXHIBIT 2



Constitutional Offices
Section
Office: 614-466-2872

November 17, 2023

Mark Brown, Esq.
Capital University Law School
303 E. Broad St.
Columbus, Ohio 43215
Email: MBrown@law.capital.edu

*Via regular U.S. Mail and E-mail*

Re:     Submitted Petition for Initiated Constitutional Amendment to Add Article I, Section 22
        of the Ohio Constitution– "Protecting Ohioans' Constitutional Rights"

Dear Mr. Brown,

On November 8, 2023, in accordance with Ohio Revised Code Section 3519.01(A), I received a written petition containing (1) a copy of a proposed constitutional amendment, and (2) a summary of the same measure. One of my statutory duties as Attorney General is to send all of the part-petitions to the appropriate county boards of elections for signature verification. With all of the county boards of elections reporting back, at least 1,000 signatures have been verified.

It is also my statutory duty to determine whether the submitted summary is a "fair and truthful statement of the proposed law or constitutional amendment." R.C. 3519.01(A). The Ohio Supreme Court has defined "summary" relative to an initiated petition as "a short, concise summing up," which properly advises potential signers of a proposed measure's character and purport. *State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24 (1931). If I conclude that the summary is fair and truthful, I am to certify it as such within ten days of receipt of the petition. In this instance, the tenth day falls on November 17, 2023.

Having reviewed the renewed submission, I am unable to certify the summary as a fair and truthful representation of the proposed amendment. Upon review of the summary, we identified omissions and misstatements that, as a whole, would mislead a potential signer as to the actual scope and effect of the proposed amendment.

*First,* the summary fails to fairly and truthfully summarize the scope of potential party makeup, potential venue, and nonparty liability under the proposed amendment. With respect to venue, the proposed amendment provides that an action naming a public employee as a defendant "may be brought in any Court of Common Pleas for a county in which that public employee resided or worked at the time the action was filed." Proposed Amendment, Section (B)(3)(a). It further provides that an action naming the State or a political subdivision may be brought in any county, with the exception that "if a public employee is also named a defendant, then the action may only be brought in a Court of Common Pleas for a county in which that public employee resided or

worked at the time the action was filed. Id., Section (B)(3)(b). The Amendment is silent on proper venue for actions against multiple public-employee defendants who do not reside or work in the same county at the time the action is filed.

In turn, the summary provides that jurisdiction and venue lies "in the Court of Common Pleas for the county where the public employee who is named as a defendant resides or works at the time the action is filed," and that "[w]hen only the State or a political subdivision is the defendant the action may be filed in the Court of Common Pleas for any County in Ohio," but "[i]f both a public employee and the State or a political subdivision are named in the same action, the venue is restricted to the county where the named public employee resided or worked at the time of filing." Summary, paragraph 3. In this regard, the summary is misleading in two ways.

It is misleading to the extent that it falsely purports to set forth an exhaustive list of potential venues. The summary does not address proper venue in actions where a plaintiff names two public-employee defendants who do not share a common county where they live or work. While the amendment also does not expressly account for venue in such actions, nothing in the proposed amendment limits a plaintiff to a single public-employee defendant. Therefore, the summary is misleading to the extent it purports to set forth all potential venues for an action authorized by the amendment.

By the same token, a reader would also be misled into believing that the proposed amendment limits the type and number of potential governmental defendants. The summary's limited description of potential venues outlined above further misleads a reader into believing that the proposed amendment limits the makeup of governmental defendants to either (1) one public employee, (2) the State or one political subdivision, or (3) one public employee and the State or one political subdivision. This is driven home by the summary's reference to a singular public employee in the third foregoing scenario: in such a case, the summary states, venue is restricted to the country where "*the* named public employee" resided or worked. Summary, paragraph 3 (emphasis added.).   In actuality, the proposed amendment contains none of the foregoing limitations implied in the summary. In fact, the proposed amendment authorizes actions brought against a "government actor or *actors*." Proposed Amendment, Section (B)(2).

The summary is also misleading with respect to the nonparty liability created by the proposed amendment. The amendment provides that, if a public employee is found liable for deprivation of a person's constitutional right, and it is proven by a preponderance that the public employee was acting on behalf of, under color of, or within the scope of authority granted by the State or political subdivision, "then the State or political subdivision shall be held liable to that person for the conduct of the public employee." Proposed Amendment, Section (D)(3).

Critically, the proposed amendment does not require the State or a political subdivision to be a named party in order to be held liable to the plaintiff under Section (D)(3). This is a significant departure from general legal principles and raises a host of potential substantive issues.  But without regard to whether such a provision is legally sound or advisable, the fact that the proposed amendment creates nonparty liability of a State or political subdivision that is never named in a plaintiff's action is significant. A fair and truthful summary must, at the least, explain that nonparty State or political subdivision liability may arise as a result of the proposed amendment. This summary completely omits this significant aspect and, consequently, is misleading.

*Second*, the summary omits critical words and would materially mislead a potential signer with respect to defined terms. For example, the summary materially misstates the amendment's definition of "public employee." In particular, the proposed amendment states that a "public employee means any *entity* who is….." but the word "entity," which is a much broader term encompassing more than individuals, is omitted from the summary. This changes the character of the defined term. The summary also fails to articulate the difference between a public employee as an "entity" versus the common meaning and understanding of a public employee as a human being.  This Office expressly noted this flaw in its prior August 18, 2023 declination letter sent in response to the previous iteration of this petition. It remains uncorrected.

Additionally, the proposed amendment defines "State" to mean "the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio." Proposed Amendment, Section (A)(1). In contrast, the summary provides that the amendment creates a private cause of action for violations of Ohio Constitutional rights by "the State of Ohio, its officers, departments and instrumentalities …." The summary omits that the proposed amendment provides for liability of "the offices of all elected state officers." The summary's description of liability for the State's "officers" does not fairly and truthfully summarize the potential for liability of the offices of elected state officers as set forth in the amendment. This is particularly true when considered with the fact that the State's "officers" are included within the amendment's definition of "public employee" rather than within the definition of the "State." Compare Proposed Amendment, Section (A)(1) with Section (A)(3)(a). The omission of potential liability of the offices of elected state officers is materially misleading.

The summary further omits that the definition of "public employee" includes those individuals and entities that are "not compensated." Proposed Amendment, Section (A)(3)(a). In light of the ordinary, everyday definition of "employee" as generally *not* including uncompensated persons, this omission is misleading. A reader of the summary would not likely understand that the proposed amendment provides for liability of, for instance, uncompensated volunteers, because the definition's inclusion of "public employees" that are "not compensated" is omitted from the summary.

Moreover, "public employee" is defined in the proposed amendment as including an independent contractor "who is *authorized to act* and is acting under color of law." (emphasis added.). Proposed Amendment, Section (A)(3)(b). However, the summary states differently: it provides that liability of independent contractors is "limited to *conduct that is authorized* and under color of state law." Summary, paragraph 1 (emphasis added.). This is a significant distinction. The summary misleads a reader into believing that an independent contractor is liable only when the specific conduct at issue has been authorized by the State, rather than, as the proposed amendment more broadly provides, when the independent contractor was merely "authorized to act."

*Third,* the summary's statements on remedies and bench-or-jury-trial election are also inaccurate and misleading. The summary states that, as a remedy, "[c]ourts are also *authorized* to order government actors found to have violated Ohio's Constitution to take reasonable measures to prevent similar violations from occurring in the future." Summary, paragraph 2 (emphasis added.). This is inaccurate. Instead, the proposed amendment provides that, upon a finding of liability against a government actor, "the court *shall*" order the government actor found liable to take such reasonable measures. Proposed Amendment, Section (E)(2) (emphasis added.). The language

"courts are also authorized" in the summary incorrectly suggests that courts have discretionary authority to order a liable party to take such measures. In reality, the proposed amendment would require courts to do so.

Further, the summary states that remedies under the proposed amendment include "reasonable attorney's fees," Summary, paragraph 2, but omits that a prevailing party is entitled to those fees "regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis." Proposed Amendment, Section (E)(1)(c). This omission potentially misleads a reader into believing that a prevailing party is entitled only to fees that were actually incurred and are owed by that party.

Finally, the summary provides that "the private cause of action created by this Amendment may be tried before the bench or a jury …." Summary, paragraph 3. The summary omits that it is the plaintiff who is entitled to this election: the proposed amendment is clear that "[t]he person bringing an action pursuant to this Section may elect whether the action will be tried in a bench or jury trial." Proposed Amendment, Section (D)(1). By omitting this portion of Section (D)(1), the summary may mislead a reader into believing that a named defendant – be it the State, a political subdivision, or a public employee – also has the right to insist upon a jury or bench trial.

*Fourth,* the summary's statements on the liability of a "public employee" are incorrect and misleading. The summary provides that "[l]iability for public employees is limited to those instances where their conduct is authorized by their governmental employers and within the scope of their employments." Summary, paragraph 1. This tracks the first definitional category of "public employee" contained in the proposed amendment. Proposed Amendment, Section (A)(3)(a). However, this sentence is inaccurate because it ignores that the proposed amendment's definition of "public employees" also includes "an independent contractor who is authorized to act and is acting under color of law." Id., Section (A)(3)(b). Thus, it is incorrect and misleading to state that public-employee liability "is limited" to instances falling under Section (A)(3)(a), as the summary purports. The summary does appear to attempt to reconcile this with its next sentence: "Liability for independent contractors is limited to conduct that is authorized and under color of law." Summary, paragraph 1. Nonetheless, the first sentence purporting to state the limits of public-employee liability remains incorrect and misleading.

Similarly, the summary further provides that the State and political subdivisions are "liable for the constitutional violation of one of its public employees when the conduct that caused the constitutional violation occurs within the course or scope of authority granted to that public employee" by the State or subdivision. Summary, paragraph 1. This, too, is inaccurate because it again fails to contemplate that the proposed amendment's definition of "public employee" also includes "an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law." Proposed Amendment, Section (A)(3)(b). The summary's language here is again incorrect and misleads a reader into believing that liability for the State or a political subdivision for conduct by its public employee is limited to the categories of "public employee" set forth in Section (A)(3)(a), when the proposed amendment also defines independent contractors acting under color of state law as "public employees" under Section (A)(3)(b).

*Fifth,* the summary materially misstates that the proposed amendment's immunity defenses are "eliminated." The summary states that "[q]ualified immunity, sovereign immunity, prosecutorial

immunity, and any immunity provided to the State, political subdivision, or public employee by statute are eliminated." Summary, paragraph 2 (emphasis added.). However, the proposed amendment is not so broad – it provides only that in "*any action pursuant to this Section*, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to" qualified immunity, sovereign immunity, prosecutorial immunity, or any immunity provided to government actors by statute. Proposed Amendment, Section (C)(1) (emphasis added.). Thus, the statement that those types of immunity are "eliminated" in all instances is overbroad and fails to fairly summarize that the proposed amendment precludes the use of immunity defenses only "[i]n an action pursuant to this Section[.]" The blanket term "eliminated" would mislead a reader into believing the proposed amendment's effect on immunity defenses is broader than what the proposed amendment actually provides.

The summary's statement regarding "elimination" of immunity is overbroad in this respect, but it is also too narrow in another. That is, the purport of the proposed amendment is not limited to immunity. Indeed, the proposed amendment precludes a government actor from enjoying or relying upon "any immunities *or defenses* which are only available to government actors or any subset thereof …." Proposed Amendment, Section (C)(1) (emphasis added.). Additionally, the proposed amendment's list of immunities and defenses to which Section (C)(1) is expressly non-exhaustive. *Id.* ("…including but not limited to…").

In contrast, the summary mentions only immunity. It omits entirely any reference to the proposed amendment's effect on these "other defenses." Worse, it omits that these "other defenses" include not just those "only available to government actors," but also those "only available to … any subset thereof." The proposed amendment leaves this broad category—"subsets" of "government actors"—undefined. Thus, the summary fails to encapsulate the broader swath of defenses contemplated by the text of the proposed amendment.

The problem is exacerbated because the summary also omits that the types of immunities which are enumerated therein are part of an expressly non-exhaustive list. By limiting its description of the proposed amendment's effect to the enumerated types of immunity, the summary fails to fairly and truthfully summarize the full extent of the proposed amendment (i.e., as extending to additional defenses beyond those enumerated types). As a result, a reader would be misled into believing that the types of immunity listed in the summary are the only defenses affected by the proposed amendment, when the proposed amendment's effects are, as shown, broader.

The above instances are just a few examples of the summary's omissions and misstatements.  It is significant to ask voters to make factual findings at the ballot box.  A summary that fails to inform a signer of the existence of such findings does not fairly and truthfully reflect the amendment's import.  Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment.

5

Yours,

Dave Yost
Ohio Attorney General

cc: Committee Representing the Petitioners

Derrick Jamison
3015 Hackberry Street
Cincinnati, Ohio 45206

Cynthia Brown
2692 Arcola Road
Columbus, Ohio 43207

Carlos Buford
2130 Della Drive
Dayton, Ohio 45417

Hamza Khabir
26 Gould Avenue
Bedford, Ohio 44146

Jenny Sue Rowe
3340 Peterson Road
Mansfield, Ohio 44903

# Brown, et al. v. Yost

# EXHIBIT 3

**COUNTY:** _ALLEN_                    **NUMBER:** _0001_

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

# AMENDMENT

## TITLE

Protecting Ohioans' Constitutional Rights

## SUMMARY

This Amendment would add a new section 22 to Article I of the Ohio Constitution:

The Protecting Ohioans' Constitutional Rights Amendment creates a private cause of action on behalf of persons whose rights, privileges and immunities under Ohio's Constitution are violated, or caused to be violated, by "government actors." Government actors under the terms of this Amendment include (1) the "State" of Ohio, which is defined to include, but is not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio, (2) "political subdivisions" of Ohio, which is defined to mean any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district, and (3) "public employees" of the State or its political subdivisions, which is defined to mean any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full-time or part-time, if that individual is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision, as well as any individual or "business entity," which is defined to include corporations, associations, firms, limited liability companies, partnerships, sole proprietorships, or other entities engaged in business, that is an independent contractor of the State or one of its political subdivisions and who is authorized to act and is acting under the color of law.

A "government actor," as defined above, is liable under this Amendment for its deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right under the Ohio Constitution. In addition to being liable as government actors for causing deprivations of persons' constitutional rights under the Ohio Constitution, the State and its political subdivisions, whether or not joined as defendants in any civil action created by this Amendment, are also liable for the conduct of their public employees, including independent contractors, who are found liable based on a preponderance of the evidence for deprivations of a person's constitutional rights under this Amendment, and who are also proven by a preponderance of evidence to have been acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision.

Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Amendment. Venue over the civil action created by this Amendment shall be determined by Ohio's laws and rules of venue that are applicable to civil actions.

In any action filed under this Amendment, no government actor shall enjoy or may rely upon any immunities or defenses, or any subset thereof, which are only available to government actors, including but not limited to (1) qualified immunity; (2) sovereign immunity; (3) prosecutorial immunity; and (4) any immunity provided to the State,

1

political subdivisions, or public employees by statute.

Remedies for constitutional violations by government actors under this Amendment include any or all of the following relief: (1) compensation for economic and non-economic damages, without limitation; (2) equitable or injunctive relief; (3) recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and (4) any other remedies prescribed by State or federal law or available pursuant to common law. In addition to the relief awarded to the person bringing the action under this Amendment, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

A finding of liability against a public employee under this Amendment is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

The private cause of action created by this Amendment may be tried before the bench or a jury, at the election of the person bringing the action pursuant to this Amendment, but in either case all violations must be proven by a preponderance of evidence. A claim made under this Amendment must be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred. All provisions of this Amendment shall be self-executing and severable. This Amendment shall take effect on January 1, 2025.

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 2692 Arcola Road, Columbus, Ohio 43207 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Derrick Jamison | 3015 Hackberry Street, Cincinnati, Ohio 45206 |
| Hamza Khabir | 26 Gould Avenue, Bedford, Ohio 44146 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

# FULL TEXT OF THE PROPOSED AMENDMENT

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is hereby amended to add the following Section:

## Section 22. Protecting Ohioans' Constitutional Rights

(A) Definitions
    (1) "State" means the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio.
    (2) "Political subdivision" means any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district.
    (3) "Public employee" means:
        (a) any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision; or
        (b) any individual or business entity that is an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law.
    (4) "Government actor" means the State, any political subdivision thereof, or any public employee of the State or of any political subdivision thereof.
    (5) "Person" means any individual resident of Ohio or individual within the State.
    (6) "Constitutional right" means any right, privilege or immunity secured pursuant to the constitution of Ohio.
    (7) "Business entity" means an entity with employees that is a corporation, association, firm, limited liability company, partnership, sole proprietorship, or other entity engaged in business.

(B) Claim for Deprivation of Rights Guaranteed by the Constitution of Ohio
    (1) No government actor shall cause any person to be subjected to deprivation of any constitutional right.
    (2) A person who claims to have suffered a deprivation of any constitutional right due to acts or omissions of any government actor or actors may bring a civil action against said government actor or actors.
    (3) Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Section.
    (4) Venue over the civil action created by this Section shall be determined by Ohio's venue laws and rules that are applicable to civil actions.

(C) Immunity Defenses Prohibited
    (1) In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to:
        (a) Qualified immunity;

3

        (b) Sovereign immunity;

        (c) Prosecutorial immunity; or

        (d) Any immunity provided to the State, political subdivisions, or public employees by statute.

(D) Determination Of Liability

    (1) The person bringing an action pursuant to this Section may elect whether the action will be tried in a bench trial or jury trial.

        (a) In a bench trial, the court's decision on any claim brought hereunder shall be supported by findings of facts and conclusions of law.

        (b) In a jury trial, any party may submit interrogatories to the jury asking for its findings of fact and application of the court's instructions as to the law.

    (2) Any government actor is liable for the deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right.

    (3) In addition, if a public employee is found liable for the deprivation of a person's constitutional rights pursuant to subsection (D)(2), and it is proven by a preponderance of evidence that the public employee was acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision, then the State or political subdivision shall be held liable to that person for the conduct of the public employee.

    (4) Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

(E) Remedies Upon A Determination Of Liability

    (1) If a government actor is found liable for the deprivation of a person's constitutional rights, that person shall be entitled to any or all of the following relief:

        (a) Compensation for economic and non-economic damages, without limitation;

        (b) Equitable or injunctive relief;

        (c) Recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and

        (d) Any other remedies prescribed by State or federal law or available pursuant to common law.

    (2) In addition to the relief awarded to the person, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

(F) Statute of Limitations

    (1) A claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

(G) Termination of Contract, Agreement, or Employment

    (1) A finding of liability against a public employee pursuant to this Section is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

(H) Severability Clause
    (1) All provisions of this section shall be self-executing and severable.

(I) Effective Date
    (1) This section shall take effect on January 1, 2025.

# Brown, et al. v. Yost

# EXHIBIT 4



# DAVE YOST
## OHIO ATTORNEY GENERAL

Constitutional Offices
Section
Office: 614-466-2872

March 14, 2024

***Via regular U.S. Mail and E-mail***

Mark Brown, Esq.
Capital University Law School
303 E. Broad Street
Columbus, Ohio 43215
MBrown@law.capital.edu

Re:     Submitted Petition for Initiated Constitutional Amendment to Add Article I, Section 22
        of the Ohio Constitution– "Protecting Ohioans' Constitutional Rights"

Dear Mr. Brown,

On March 5, 2024, in accordance with Ohio Revised Code Section 3519.01(A), I received a written petition containing (1) a copy of a proposed constitutional amendment, and (2) a summary of the same measure. One of my statutory duties as Attorney General is to send all of the part-petitions to the appropriate county boards of elections for signature verification. With all of the county boards of elections reporting back, at least 1,000 signatures have been verified.

It is also my statutory duty to determine whether the submitted summary is a "fair and truthful statement of the proposed law or constitutional amendment."  R.C. 3519.01(A).  The Ohio Supreme Court has defined "summary" relative to an initiated petition as "a short, concise summing up," which properly advises potential signers of a proposed measure's character and purport. *State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24 (1931).  If I conclude that the summary is fair and truthful, I am to certify it as such within ten days of receipt of the petition.  In this instance, the tenth day falls on March 14, 2024.

Having reviewed the renewed submission, I am unable to certify the submitted summary as a fair and truthful representation of the proposed amendment. Upon review of the summary, we identified omissions and misstatements that, would mislead a potential signer as to the actual scope and effect of the proposed amendment.

I understand that I have rejected the Petitioners' summaries on multiple previous occasions. Sometimes the language of the proposed amendment has changed and the summaries have failed the fair and truthful test, which I have always explained in detail.  Regrettably, the Petitioners have submitted summaries that repeat the misstatements and/or omissions that I have specifically identified in previously rejected summaries.  That is the case with my rejection today.

For example, the current summary is misleading with respect to the scope of subsection (C) of the proposed amendment. The summary and proposed amendment say two different things.  That is,

the qualifier "or any subset thereof" as used in the proposed amendment modifies and broadens the phrase "government actors". Proposed Amendment, Section (C)(1). The summary, on the other hand, says differently: it rewords the amendment such that "or any subset thereof" directly follows and modifies the comma-separated clause "immunities or defenses." Summary, paragraph 5. But the proposed amendment actually abrogates the immunities or defenses available to "any subset" of *government actors.* This renders the summary misleading in two aspects. First, this misstatement affirmatively misleads the reader into believing that the proposed amendment broadly abrogates "any subset" of *immunities or defenses available* to "government actors." Second, the misstatement results in the summary's omission of this broader, undefined category of "any subset" of "government actors" created by the proposed amendment. **This latter problem was identified as one of the reasons that I was unable to certify Petitioners' previous summary on November 17, 2023.** Thus, again, the summary fails to fairly and truthfully reflect the scope of the proposed amendment's effect as set forth in its subsection (C).

Second, in subsection (F), the proposed amendment provides that "[a] claim made under this Section shall be commenced no later than six years from the date that deprivation of a constitutional right is alleged to have occurred." Proposed Amendment, Subsection (F). On the other hand, the summary confusingly provides in consecutive sentences: "A claim made under this Amendment must be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred. All claims must be commenced no later than six years from the date the alleged constitutional violation is alleged to have occurred." Summary, Paragraphs 8-9. These sentences read together pose a significant risk of confusing and misleading any reader of the summary. The sentences lead the reader to believe there is some distinction or difference in the proposed amendment between the statute of limitations applicable to "[a] claim made under this Amendment" as opposed to "[a]ll claims." In reality, the proposed amendment makes no such distinction or difference. Nonetheless, a reader will likely assign significance to the fact that the summary repeats itself in this manner while using different language.

 Finally, the title "Protecting Ohioans' Constitutional Rights" does not fairly and accurately reflect the nature and scope of the proposed amendment. "A title 'provides notice of the proposal to the signers of an initiative petition. More so than the text, the title immediately alerts signers to the nature of [the] proposed legislation.'" *State ex rel. Hildreth v. LaRose*, No. 2023-1213, 2023-Ohio-3667, ¶ 17, quoting *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597, 575 N.E.2d 835 (1991). The use of the word "protect" in the summary's title is especially misleading because the amendment does not seek to proactively "protect" Ohioans from violations of constitutional rights. Instead, the nature of the amendment is to *abrogate*: specifically, governmental immunity and similar defenses available to defined government actors. Accordingly, the summary's title offers a subjective hypothesis (that eliminating such defenses will "protect" the constitutional rights of citizens) regarding the proposed amendment in lieu of an objective description of its character and purport (that it creates a cause of action notwithstanding those defenses). Given the Supreme Court's holding on the import of petition titles, I find that the proposed summary's title is not a fair and truthful recitation of the proposed amendment.

The above instances are just a few examples of the summary's omissions and misstatements. Any of these omissions or misrepresentations, together or alone, are sufficient to reject the submitted petition. As I have said before, it is significant to ask voters to make factual findings at the ballot box.  A summary that fails to inform a signer of the existence of such findings does not fairly and

truthfully reflect the amendment's import. Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment.

Yours,

Dave Yost
Ohio Attorney General

cc: Committee Representing the Petitioners

Cynthia Brown
2692 Arcola Road
Columbus, Ohio 43207

Carlos Buford
2130 Della Drive
Dayton, Ohio 45417

Derrick Jamison
3015 Hackberry Street
Cincinnati, Ohio 45206

Hamza Khabir
26 Gould Avenue
Bedford, Ohio 44146

Jenny Sue Rowe
3340 Peterson Road
Mansfield, Ohio 44903

# Brown, et al. v. Yost

# EXHIBIT 5

County: *HAMILTON*     Number: *C8 3*

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

# AMENDMENT

## SUMMARY

This Amendment would add a new section 23 to Article I of the Ohio Constitution:

This Amendment creates a private cause of action on behalf of persons whose rights, privileges and immunities under Ohio's Constitution are violated, or caused to be violated, by "government actors." Government actors under the terms of this Amendment include (1) the "State" of Ohio, which is defined to include, but is not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio, (2) "political subdivisions" of Ohio, which is defined to mean any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district, and (3) "public employees" of the State or its political subdivisions, which is defined to mean any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full-time or part-time, if that individual is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision, as well as any individual or "business entity," which is defined to include corporations, associations, firms, limited liability companies, partnerships, sole proprietorships, or other entities engaged in business, that is an independent contractor of the State or one of its political subdivisions and who is authorized to act and is acting under the color of law.

A "government actor," as defined above, is liable under this Amendment for its deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right under the Ohio Constitution. In addition to being liable as government actors for causing deprivations of persons' constitutional rights under the Ohio Constitution, the State and its political subdivisions, whether or not joined as defendants in any civil action created by this Amendment, are also liable for the conduct of their public employees, including independent contractors, who are found liable based on a preponderance of the evidence for deprivations of a person's constitutional rights under this Amendment, and who are also proven by a preponderance of evidence to have been acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision.

Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Amendment. Venue over the civil action created by this Amendment shall be determined by Ohio's laws and rules of venue that are applicable to civil actions.

In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to (1) qualified immunity; (2) sovereign immunity; (3) prosecutorial immunity; or (4) any immunity provided to the State, political subdivisions, or public employees by statute.

Remedies for constitutional violations by government actors under this Amendment include any or all of the following relief: (1) compensation for economic and non-economic damages, without limitation; (2) equitable or injunctive relief; (3) recovery of reasonable attorney's fees, regardless of whether the attorney provided services on

1

an hourly, contingent, or pro bono basis; and (4) any other remedies prescribed by State or federal law or available pursuant to common law. In addition to the relief awarded to the person bringing the action under this Amendment, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

A finding of liability against a public employee under this Amendment is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

The private cause of action created by this Amendment may be tried before the bench or a jury, at the election of the person bringing the action pursuant to this Amendment, but in either case all violations must be proven by a preponderance of evidence.

All claims created by this Amendment must be commenced no later than six years from the date the constitutional violation is alleged to have occurred. All provisions of this Amendment shall be self-executing and severable. This Amendment shall take effect on the first day of the year after it is passed.

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 1141 N Highland Avenue, Girard, Ohio 44420 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

## FULL TEXT OF THE PROPOSED AMENDMENT

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is hereby amended to add the following Section:

**Section 23.**

    (A) Definitions

        (1) "State" means the State of Ohio, including, but not limited to, the offices of all elected state officers and all departments and other instrumentalities of the State of Ohio.

        (2) "Political subdivision" means any body corporate or politic responsible for governmental activities within a geographic subsection of the State, including but not limited to a municipal corporation, township, county, or school district.

        (3) "Public employee" means:

            (a) any individual who is an officer, agent, employee, or servant, of the State or a political subdivision, whether or not compensated or full time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment by the State or political subdivision; or

            (b) any individual or business entity that is an independent contractor of the State or a political subdivision who is authorized to act and is acting under the color of law.

        (4) "Government actor" means the State, any political subdivision thereof, or any public employee of the State or of any political subdivision thereof.

        (5) "Person" means any individual resident of Ohio or individual within the State.

        (6) "Constitutional right" means any right, privilege or immunity secured pursuant to the constitution of Ohio.

        (7) "Business entity" means an entity with employees that is a corporation, association, firm, limited liability company, partnership, sole proprietorship, or other entity engaged in business.

    (B) Claim for Deprivation of Rights Guaranteed by the Constitution of Ohio

3

(1)  No government actor shall cause any person to be subjected to deprivation of any constitutional right.

(2)  A person who claims to have suffered a deprivation of any constitutional right due to acts or omissions of any government actor or actors may bring a civil action against said government actor or actors.

(3) Ohio's Courts of Common Pleas have subject matter jurisdiction over the civil action created by this Section.

(4)  Venue over the civil action created by this Section shall be determined by Ohio's venue laws and rules that are applicable to civil actions.

(C) Immunity Defenses Prohibited

(1)  In any action pursuant to this Section, no government actor shall enjoy or may rely upon any immunities or defenses which are only available to government actors or any subset thereof, including but not limited to:

(a)  Qualified immunity;

(b)  Sovereign immunity;

(c)  Prosecutorial immunity; or

(d)  Any immunity provided to the State, political subdivisions, or public employees by statute.

(D) Determination Of Liability

(1)  The person bringing an action pursuant to this Section may elect whether the action will be tried in a bench trial or jury trial.

(a)  In a bench trial, the court's decision on any claim brought hereunder shall be supported by findings of facts and conclusions of law.

(b)  In a jury trial, any party may submit interrogatories to the jury asking for its findings of fact and application of the court's instructions as to the law.

(2)  Any government actor is liable for the deprivation of a person's constitutional rights if it is proven by a preponderance of evidence that the government actor's acts or omissions caused the person to be deprived of any constitutional right.

4

(3) In addition, if a public employee is found liable for the deprivation of a person's constitutional rights pursuant to subsection (D)(2), and it is proven by a preponderance of evidence that the public employee was acting on behalf of, under color of, or within the course or scope of authority granted by the State or political subdivision, then the State or political subdivision shall be held liable to that person for the conduct of the public employee.

(4) Terminating a public employee shall not affect the liability of the State or political subdivision for the terminated public employee's conduct.

(E) Remedies Upon A Determination Of Liability

(1) If a government actor is found liable for the deprivation of a person's constitutional rights, that person shall be entitled to any or all of the following relief:

(a) Compensation for economic and non-economic damages, without limitation;

(b) Equitable or injunctive relief;

(c) Recovery of reasonable attorney's fees, regardless of whether the attorney provided services on an hourly, contingent, or pro bono basis; and

(d) Any other remedies prescribed by State or federal law or available pursuant to common law.

(2) In addition to the relief awarded to the person, the court shall order any government actor found liable for the deprivation of a person's constitutional rights to take reasonable measures to prevent a similar rights violation from re-occurring.

(F) Statute of Limitations

(1) A claim made under this Section shall be commenced no later than six years from the date that the deprivation of a constitutional right is alleged to have occurred.

(G) Termination of Contract, Agreement, or Employment

(1)  A finding of liability against a public employee pursuant to this Section is just cause for termination of the employment, agreement, or contract giving rise to the public employee's status as a public employee.

(H) Severability Clause

(1)  All provisions of this section shall be self-executing and severable.

(I)  Effective Date

(1)  This section shall take effect on the first day of the year after it is passed.

# Brown, et al. v. Yost

# EXHIBIT 6



Constitutional Offices
Section
Office: 614-466-2872

July 15, 2024

***Via regular U.S. Mail and E-mail***

Mark Brown, Esq.
Capital University Law School
303 E. Broad Street
Columbus, Ohio 43215
MBrown@law.capital.edu

Re:     Submitted Petition for Initiated Constitutional Amendment to Add Article I, Section 23
        of the Ohio Constitution– Untitled.

Dear Mr. Brown,

On July 5, 2024, pursuant to Ohio Revised Code Section 3519.01(A), I received a written petition
containing (1) a copy of a proposed constitutional amendment, and (2) a summary of the same
measure. One of my statutory duties as Attorney General is to send all of the part-petitions to the
appropriate county boards of elections for signature verification. With all of the county boards of
elections reporting back, at least 1,000 signatures have been verified.

It is also my statutory duty to determine whether the submitted summary is a "fair and truthful
statement of the proposed law or constitutional amendment."   R.C. 3519.01(A).   The Ohio
Supreme Court has defined "summary" relative to an initiated petition as "a short, concise
summing up," which properly advises potential signers of a proposed measure's character and
purport. *State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24 (1931).  If I conclude that the summary
is fair and truthful, I am to certify it as such within ten days of receipt of the petition.  In this
instance, the tenth day falls on July 15, 2024.

Having reviewed the renewed submission, I am unable to certify the submitted summary as a fair
and truthful representation of the proposed amendment.

Your resubmitted petition lacks a title.  As you know, on March 14, 2024, I declined to certify
your previously submitted petition for multiple reasons including the fact that your title did not
pass the "fair and truthful" test.  I explained that:

> Finally, the title "Protecting Ohioans' Constitutional Rights" does not fairly and
> accurately reflect the nature and scope of the proposed amendment. "A title
> 'provides notice of the proposal to the signers of an initiative petition. More so than
> the text, the title immediately alerts signers to the nature of [the] proposed
> legislation.'" *State ex rel. Hildreth v. LaRose*, No. 2023-1213, 2023-Ohio-3667, ¶
> 17, quoting *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597,

575 N.E.2d 835 (1991). The use of the word "protect" in the summary's title is especially misleading because the amendment does not seek to proactively "protect" Ohioans from violations of constitutional rights. Instead, the nature of the amendment is to *abrogate*: specifically, governmental immunity and similar defenses available to defined government actors. Accordingly, the summary's title offers a subjective hypothesis (that eliminating such defenses will "protect" the constitutional rights of citizens) regarding the proposed amendment in lieu of an objective description of its character and purport (that it creates a cause of action notwithstanding those defenses). Given the Supreme Court's holding on the import of petition titles, I find that the proposed summary's title is not a fair and truthful recitation of the proposed amendment.

I can only assume that your decision to resubmit your petition for constitutional amendment without a title at all is to avoid having to be held to a title that is fair and truthful to Ohio's electors. Nonetheless, Ohio law does not permit you to circumvent the fair and truthful process by simply failing to submit a title for my evaluation under R.C. 3519.01(A). R.C. 3519.01(A) states, "Whoever seeks to propose a law or constitutional amendment by initiative petition shall, *by a written petition* signed by one thousand qualified electors, submit the proposed law or constitutional amendment and a summary of *it* to the attorney general for examination." R.C. 3519.01(A) also states, "Within ten days after the receipt of the written petition and the summary of *it*, the attorney general shall conduct an examination of the summary." In other words, the summary is intended to fairly and truthfully summarize both the proposed constitutional amendment and the written petition.

Ohio law clearly sets forth the form and substance that the petition must take. R.C. 3519.05(A) requires the petition to contain a title which must be "briefly expressed and printed in eight-point type." R.C. 3519.05 is the sole and exclusive guidance on the form that a petition for constitutional amendment must take. Thus, your petition for constitutional amendment that you submit to me for the fair and truthful determination under R.C. 3519.01(A), consistent with R.C. 3519.05(A), must contain a title. This also gives proper context to the fact that R.C. 3519.01(A) contemplates the petition as something more than just a perfunctory, ministerial vehicle.

Further, the title of the proposed constitutional amendment is an indispensable piece to determining whether the summary of it is fair and truthful. Indeed, Ohio law mandates that a petition for a constitutional amendment may not be presented to qualified electors for their signatures unless it contains the title of the amendment. For good reason. Again, a "title immediately alerts signers to the nature of the proposed legislation…there is no question that the title [] is material to a petition." *State ex rel. Hildreth v. LaRose*, No. 2023-1213, 2023-Ohio-3667, ¶ 17, quoting *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597, 575 N.E.2d 835 (1991). I cannot determine whether a summary of a proposed constitutional amendment is fair and truthful without also considering its title. In other words, the title and the text of a proposed amendment work hand in hand to define the character and import of a proposed constitutional amendment. To illustrate by example, a summary of an amendment concerning taxation of Ohioans might be fair and truthful if the title is accurately aligned with the text. But that same summary would not be fair and truthful of the same amendment if the title was "Everybody Gets Free Pizza and Weed".

2

The General Assembly assigned to this Office the task of insuring that the summary presented to Ohio electors is fair and truthful. Certification under R.C. 3519.01(A) is this Office's imprimatur that Ohio electors can rely on the summary to educate themselves on whether they will support or oppose the proposed amendment. By withholding the title of your proposed amendment from my fair and truthful determination, I cannot faithfully certify that your summary is fair and truthful.

The lack of a title alone provides sufficient cause to reject the submitted petition, and the petition is rejected on that basis. I reserve the right to address any additional defects or deficiencies that may exist in this petition or future petitions upon their submission to this office for review. Thus, without reaching the balance of the summary, and consistent with my past determinations, I am unable to certify the summary as a fair and truthful statement of the proposed amendment.

Yours,

Dave Yost
Ohio Attorney General

cc: Committee Representing the Petitioners

Cynthia Brown
1141 N. Highland Avenue
Girard, Ohio 44420

Carlos Buford
2130 Della Drive
Dayton, Ohio 45417

Jenny Sue Rowe
3340 Peterson Road
Mansfield, Ohio 44903

3

# Brown, et al. v. Yost

# EXHIBIT 7

County: _____          Number: _____

# INITIATIVE PETITION

Amendment to the Constitution

Proposed by Initiative Petition

To be submitted directly to the electors

# AMENDMENT

## TITLE

Ohio Wrongful Conviction and Justice Reform Amendment

## SUMMARY

The Ohio Wrongful Conviction and Justice Reform Amendment aims to address and rectify the serious issues of wrongful convictions within the state. This amendment establishes a framework for compensating individuals who have been wrongfully convicted, ensuring they receive financial support, reintegration assistance, and counseling services.

The amendment mandates comprehensive training for law enforcement personnel on proper investigative procedures and the importance of evidence integrity. Additionally, it introduces reforms to limit prosecutorial immunity, holding prosecutors accountable for misconduct, particularly when it involves suppressing exculpatory evidence.

To enhance oversight, the Amendment creates an independent committee responsible for reviewing wrongful conviction cases and investigating claims of police and prosecutorial misconduct. This committee's findings will inform ongoing reforms to prevent future injustices.

The Amendment will take effect immediately upon its passage, with the Ohio Court of Claims designated as the agency to manage wrongful imprisonment claims. By integrating these measures, the Ohio Wrongful Conviction and Justice Reform Amendment seeks to uphold justice for those wrongfully convicted and promote systemic reforms within the criminal justice system.

## CERTIFICATION OF THE ATTORNEY GENERAL

This certification of the Attorney General, pursuant to Ohio Revised Code §3519.01(A), will be inserted when it is provided. This initial petition must be submitted with at least one thousand (1,000) valid signatures of Ohio electors before the Attorney General will issue that certification.

## COMMITTEE TO REPRESENT THE PETITIONERS

The following persons are designated as committee to represent the petitioners in all matters relating to the petition or its circulation:

| | |
|---|---|
| Cynthia Brown | 1141 N Highland Avenue, Girard, Ohio 44420 |
| Carlos Buford | 2130 Della Drive, Dayton, Ohio 45417 |
| Jenny Sue Rowe | 3340 Peterson Road, Mansfield, Ohio 44903 |

# FULL TEXT OF THE PROPOSED AMENDMENT

Recognizing the grave injustice of wrongful convictions and the irreversible harm they cause, the State of Ohio hereby enacts the Ohio Wrongful Conviction and Justice Reform Amendment to ensure the integrity of the criminal justice system, to provide remedies for those wrongfully convicted, and to prevent future injustices through systemic reform.

Section 1: Title

    This Act may be cited as the "Ohio Wrongful Conviction and Justice Reform Amendment."

Section 2: Compensation for Wrongful Conviction

    The State of Ohio shall provide just compensation to individuals who have been wrongfully convicted and imprisoned, as per the procedures outlined in R.C. 2743.48. This includes financial compensation, reintegration support, and access to counseling services.

Section 3: Addressing Police Misconduct

    The State of Ohio shall implement mandatory training for all law enforcement officers on proper investigation techniques, evidence handling, and the importance of maintaining the integrity of the criminal justice process. Officers found guilty of misconduct shall face appropriate disciplinary actions.

Section 4: Prosecutorial Reform

    To address prosecutorial immunity, the State of Ohio shall revise Section 2744.03 of the Ohio Revised Code to limit the scope of immunity for prosecutors. Prosecutors shall be held accountable for intentional misconduct, including the suppression of exculpatory evidence.

Section 5: Oversight and Accountability

    An independent oversight committee shall be established to review cases of wrongful conviction and to recommend further reforms to prevent future occurrences. This committee shall have the authority to investigate claims of misconduct by police or prosecutors.

Section 6: Implementation

    This Act shall take effect immediately upon passage, with the Ohio Court of Claims designated as the fiduciary agent for processing claims of wrongful imprisonment.