IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Cynthia Brown, et al.,                                    Case No. 2:24-cv-1401

       Plaintiffs,                                         Judge Graham

    v.                                                 Magistrate Judge Deavers

David Yost, Ohio Attorney General,

       Defendant.

Opinion and Order

       Citizens of Ohio have the power to amend the state constitution. Proponents of an amendment must follow a process that culminates in their proposal being placed on the ballot at a general election, with voters deciding the amendment's fate. One early step requires proponents to prepare a summary of the amendment. The summary, if certified by the Ohio Attorney General as "fair and truthful," appears on petitions circulated to the public as supporters attempt to gather enough signatures to place the amendment on the ballot. O.R.C. § 3519.01(A).

       Plaintiffs are proponents of two amendments, and they have brought suit against Ohio Attorney General David Yost. This case presents the question whether plaintiffs' rights under the First Amendment to the United States Constitution are violated by the requirement that their summaries be examined and certified by the Attorney General as fair and truthful statements. The matter is before the Court on plaintiffs' motion for preliminary injunctive relief enjoining enforcement of the fair-and-truthful review requirement as to their summaries. For the reasons stated below, the Court grants the motion.

**I.**     **The Initiative Process**

       Ohio has reserved to the people the right to amend the Ohio Constitution by initiative. *See* Ohio Const. art. II, § 1a. Citizens who would exercise this right must form a committee of three to five individuals to represent them "in all matters relating to such petitions" for amendment. O.R.C. § 3519.02.

       To advance a proposed constitutional amendment, the committee must submit a written initiative petition with the Attorney General for review. O.R.C. § 3519.01(A). The petition must be signed by 1,000 qualified electors and include the full text and a summary of the amendment. *Id.*

1

The Attorney General conducts "an examination of the summary" within ten days of receipt. *Id.* If he finds that "the summary is a fair and truthful statement" of the amendment, he "shall so certify" and forward the petition to the Ohio Ballot Board. *Id.* If the Attorney General rejects the summary, the committee may seek review in the Ohio Supreme Court. O.R.C. § 3519.01(C).

The Ballot Board must, within ten days of receipt of a certified petition, examine it to "determine whether it contains only one proposed law or constitutional amendment so as to enable the voters to vote on a proposal separately." O.R.C. § 3505.062(A). If the petition passes muster as having a single subject, the Ballot Board certifies its approval to the Attorney General, who then files with the Secretary of State a verified copy of the proposed amendment, "together with its summary and the attorney general's certification of it." *Id.*; *accord* O.R.C. § 3519.01(A).

After clearing these steps, the committee may begin collecting signatures. Proponents must submit "the signatures of ten per centum of the electors." Ohio Const. art. II, § 1a. According to the Secretary of State's office, "proponents seeking to qualify a citizen-initiated constitutional amendment for the November 2025 ballot must submit at least 413,487 valid signatures." Doc. 59-1, Burnett Decl., ¶ 5.

Petitions circulated to the public must contain a heading that states:
> INITIATIVE PETITION
>
> Amendment to the Constitution
>
> Proposed by Initiative Petition
>
> To be submitted directly to the electors

O.R.C. § 3519.05(A); *accord* Ohio Const. art. II, § 1a. The summary of the proposed amendment must be included in the petition. O.R.C. § 3519.05(A). The summary, it has been said, "arguably helps potential signers understand the content of the law more efficiently than if they had to rely solely on a review of the entire law." *Schaller v. Rogers*, No. 08AP–591, 2008-Ohio-4464, ¶ 46, 2008 WL 4078446, at *10 (Ohio Ct. App. Sept. 4, 2008). Certified summaries are also made available to the public on the Secretary of State's website. O.R.C. § 3519.07(A)(2).

Initiative petitions circulated to the public must contain several more items, including the Attorney General's certification of the summary, names and addresses of the committee members, a place for signatures, and the full text of the proposed amendment. O.R.C. § 3519.05(A). Petitions are also to include a notice above the signature lines warning that certain fraudulent conduct, such as signing a name other than one's own, is subject to prosecution. *Id.* And petitions must contain a declaration to be completed by the circulator before submission to the Secretary of State. *Id.*

2

Signatures must be received by the Secretary of State at least 125 days before the general election at which the amendment is to appear on the ballot. Ohio Const. art. II, § 1a. The Secretary of State oversees the verification of the signatures. *See*, *e.g.*, O.R.C. §§ 3519.10, 3519.14, 3519.15, 3519.16. If the signatures are approved, the Ballot Board prescribes and certifies the ballot language for the proposed amendment no later than 75 days before the election. Ohio Const. art. II, § 1g; O.R.C. § 3505.062(D). Arguments or explanations both for and against the amendment are prepared and published to the public. Ohio Const. art. II, § 1g; O.R.C. § 3519.03. The proposed amendment is then placed on the ballot at the next general election. Ohio Const. art. II, §§ 1a, 1g; O.R.C. § 3519.16.

## II. Procedural Background

### A. Original Proceedings and Appeal

Plaintiffs Cynthia Brown, Carlos Buford, and Jenny Sue Rowe are members of a committee who wished to place a citizen-initiated constitutional amendment on the ballot for the November 5, 2024 general election. Their proposed amendment, entitled Protecting Ohioans' Constitutional Rights, would create a private cause of action for money damages against state government actors who have deprived a person's rights under the state constitution. The defense of qualified immunity would not be available to government actors. *See* Doc. 47 at PAGEID 528–29.

Backers of the amendment have tried many times to obtain the Attorney General's certification of a summary of the proposed amendment.[1] One effort occurred on March 5, 2024, when plaintiffs submitted a petition to the Attorney General with their summary, proposed constitutional amendment, and 1,000 supporting signatures. The Attorney General issued a decision on March 14 declining to certify plaintiffs' summary as fair and truthful. *See* Doc. 58-7 at PAGEID 660–62. The Attorney General found, among other deficiencies, that the summary contained misleading statements about the scope of the proposed amendment and confusing language about a statute of limitations.

---

[1] The Attorney General rejected a total of eight petitions prior to the filing of this suit. One petition sought to amend the Ohio Revised Code, rather than the Ohio Constitution. *See* Doc. 58-2. Another petition failed because it lacked enough valid signatures. *See* Sept. 1, 2021 Attorney General Letter, available at https://www.ohioattorneygeneral.gov/getattachment/9baf2841-6816-4099-b75c-0b0b599df80e/Civil-Action-for-Deprivation-of-Constitutional-Rights-Amendment-(Re-Submission).aspx. Putting aside those two attempts, the Attorney General rejected six summaries as failing the fair-and-truthful standard. *See* Docs. 58-1, 58-3, 58-4, 58-5, 58-6, 58-7.

Plaintiffs believed that the reasons given by the Attorney General were flawed and contradicted an earlier decision, issued November 17, 2023, in which he declined to certify a prior summary. *See* Doc. 58-6 at PAGEID 648–53. Plaintiffs exercised their right to direct judicial review in the Ohio Supreme Court by filing a complaint for writ of mandamus on March 20, 2024. The complaint alleged that the Attorney General's March 14, 2024 decision was arbitrary, capricious, and an abuse of discretion. Plaintiffs requested a writ directing the Attorney General to certify plaintiffs' summary and forward their petition to the Ballot Board. They also moved for expedited judicial review, which the Ohio Supreme Court denied on March 26. *See State ex rel. Brown v. Yost*, 173 Ohio St. 3d 1436, 229 N.E.3d 1216 (Ohio 2024) (unpublished table decision).

On March 27, plaintiffs filed suit in this Court and moved for preliminary injunctive relief. They argued that they had a First Amendment right to timely and de novo judicial review and resolution of the Attorney General's adverse certification decision. Having been denied expedited review by the Ohio Supreme Court, plaintiffs sought an injunction from this Court requiring the Attorney General to certify their summary as fair and truthful.

On April 25, the Court denied plaintiffs' motion for a preliminary injunction. *See* Doc. 21. The Court found that plaintiffs had not established standing because they could not trace the alleged harm – the Ohio Supreme Court's refusal to provide expedited review – to the defendant, the Attorney General. The Court also found that plaintiffs were unlikely to succeed on the merits of their facial and as-applied First Amendment claims, in part because the denial of expedited judicial review did not severely burden plaintiffs' First Amendment interests.

Plaintiffs appealed and a panel of the Sixth Circuit reversed. *See Brown v. Yost*, 103 F.4th 420 (6th Cir.), *vacated* en banc, 122 F.4th 597 (6th Cir. 2024) (per curiam). The panel found that plaintiffs had established standing and had also demonstrated a likelihood of success on the merits. The panel enjoined the Attorney General from enforcing O.R.C. § 3519.01 against plaintiffs and ordered him to advance their petition to the Ballot Board.

The Attorney General petitioned for rehearing en banc. The full Sixth Circuit granted the petition, vacated the panel opinion, and scheduled the rehearing for October 30, 2024. *See Brown v. Yost*, 104 F.4th 621 (6th Cir. 2024).

B. **Developments at the Ohio Supreme Court**

Plaintiffs applied for voluntary dismissal of the action they had filed in the Ohio Supreme Court, which granted their application to dismiss on May 22, 2024. *See State ex rel. Brown v. Yost*, 174 Ohio St. 3d 1422, 234 N.E.3d 472 (Ohio 2024) (unpublished table decision).

4

Plaintiffs submitted another petition and summary to the Attorney General on July 5, 2024. The Attorney General rejected the summary on July 15 because it did not have a title. *See* Doc. 47 at PAGEID 545–47. On July 19, plaintiffs again filed for a writ of mandamus in the Ohio Supreme Court. Plaintiffs sought and were denied expedited judicial review. *See State ex rel. Brown v. Yost*, 175 Ohio St. 3d 1413, 239 N.E.3d 408 (Ohio 2024) (unpublished table decision).

Meanwhile, a decision in a separate case impacted plaintiffs' situation. The Ohio Supreme Court ruled that the Attorney General's certification authority under § 3519.01(A) does not extend to the title of the summary. *See State ex rel. Dudley v. Yost*, 177 Ohio St. 3d 50, 250 N.E.3d 50 (Ohio 2024) (per curiam).

The *Dudley* decision caused plaintiffs and defendant to file a joint motion for the issuance a limited writ of mandamus requiring the Attorney General to examine anew plaintiffs' July 5 summary. The Ohio Supreme Court granted the writ on November 14, 2024. *See State ex rel. Brown v. Yost*, 175 Ohio St. 3d 1535, 245 N.E.3d 798 (Ohio 2024) (unpublished table decision).

### C. The Sixth Circuit's En Banc Decision

The en banc court issued a decision on November 21, 2024 dismissing the appeal as moot because plaintiffs' request for preliminary injunctive relief was directed at the November 5, 2024 election, which had just taken place. *See Brown v. Yost*, 122 F.4th 597 (6th Cir. 2024) (per curiam). The Sixth Circuit noted, however, that the underlying suit was not moot. *Id.* at 602 ("[T]he passing of the November 2024 election does not undercut the live nature of the dispute pending in the district court."). The court continued:

> On remand, Brown remains free to seek expedited resolution of the permanent injunction request. Nothing prevents either party from seeking expedited review of an adverse decision. And nothing prevents either party from seeking expedited en banc review. All of this by the way allows the district court to consider several other intervening developments: Brown's subsequent submission of a new summary intended for Ohio's November 2025 election, the Attorney General's rejection of it, a recent decision by the Ohio Supreme Court that undermines one of the Attorney General's prior rejections, *State ex rel. Dudley v. Yost*, ⸺ Ohio St.3d ⸺, ⸺ N.E.3d ⸺, 2024 WL 4610503 (Ohio 2024) (per curiam), a recent order by the Ohio Supreme Court requiring a response by the Attorney General, and the developing nature of both parties' theories with respect to the nature of the free-speech rights at issue. Because these issues all are "primarily if not entirely legal," the federal courts stand ready to resolve them quickly. [*Ohio v. EPA*, 969 F.3d 306, 309 (6th Cir. 2020)].

*Id.* at 603.

### D. External Developments after the En Banc Decision

On November 25, 2024, the Attorney General certified plaintiffs' July 5 summary as a fair and truthful statement of the proposed amendment. *See* Doc. 58-8 at PAGEID 670–71. The petition then advanced to the Ballot Board, which certified on December 4, 2024 that the proposed amendment satisfied Ohio's single-subject requirement. *See* Doc. 59-1 at PAGEID 768. Thus, plaintiffs are currently permitted to gather signatures and attempt to place their amendment on the November 4, 2025 ballot. Signatures are due by July 2, 2025. *See* Burnett Decl., ¶ 5.

On January 8, 2025, Governor Mike DeWine signed a bill into law which responds to the Ohio Supreme Court's decision in *Dudley*. *See* Substitute H.B. No. 74, 135th Gen. Assemb. (Ohio 2025). The new law gives the Attorney General authority to examine both the summary and the title of a proposed constitutional amendment in determining whether they are fair and truthful statements. The new law goes into effect on April 9, 2025. For proponents, like the plaintiffs, whose petition lacked a title but whose summary received the Attorney General's certification prior to April 9, the new law provides that their initiative petition will not be invalidated on the ground that a title was not certified by the Attorney General. *See* O.R.C. § 3519.01(D) (eff. Apr. 9, 2025).

### E. Proceedings on Remand

Following the issuance of the Sixth Circuit's mandate, the parties jointly moved for an extension until February 6, 2025 to file their report under Rule 26(f), Fed. R. Civ. P. The magistrate judge granted the motion. Plaintiffs then moved for leave to file an amended complaint, which defendant did not oppose. The magistrate judge granted leave, and the verified Amended Complaint was filed on January 30.

The Amended Complaint asserts facial and as-applied First Amendment claims. Plaintiffs have adjusted their First Amendment theory, with the focus shifting away from the lack of expedited state court review of the Attorney General's adverse certification decisions to § 3519.01's fair-and-truthful provision itself. Plaintiffs assert that the grant of authority to the Attorney General to review and reject the content of their summaries violates the First Amendment. They allege that it unlawfully empowers the Attorney General to censor their political speech and restrict their access to the initiative process.

The factual underpinnings of the claims have also been reshaped. Plaintiffs recognize that the Attorney General and Ballot Board have certified and advanced their July 2024 petition. But plaintiffs allege that the Attorney General's rejections of their previous summaries caused them to make unwanted changes. The changes included omitting the title, deleting a reference to the title in

6

the body of the summary, moving the phrase "or any subset thereof," and rewording the description of the statute of limitations. *Compare* Doc. 47 at PAGEID 528–29 (March 5, 2024 summary) *with id.* at PAGEID 538–39 (July 5, 2024 summary). Plaintiffs seek relief in the form of an order requiring the Attorney General to certify the March 5, 2024 summary.

In addition, plaintiffs plan to support another proposed constitutional amendment, entitled the Ohio Wrongful Conviction and Justice Reform Amendment. They are now gathering the initial 1,000 signatures needed for submitting a petition to the Attorney General. *See* Doc. 59-2, Brown Dep. at 103. Plaintiffs seek a pre-enforcement injunction prohibiting the Attorney General from exercising fair-and-truthful review of plaintiffs' summary and title.[2]

Plaintiffs have again moved for a preliminary injunction. They argue that § 3519.01's fair-and-truthful provision severely burdens their First Amendment rights and should be subject to strict scrutiny. They further argue that § 3519.01 does not survive strict scrutiny because it is not narrowly tailored to serve a compelling state interest.

Defendant conducted limited discovery. Defendant took the depositions of plaintiff Cynthia Brown and Kyle Pierce, the executive director of the Coalition to End Qualified Immunity. They testified about the petitioning efforts, plans, and resources of the proponents of the amendments.[3] Brown testified that plaintiffs are not currently gathering signatures in support of the certified July 2024 petition. Brown Dep. at 61–62. Nor have they retained a consultant to manage circulation efforts. *Id.* at 58. Defendant has also submitted the declaration of Brandon Lynaugh, a public policy and political consultant with Strategic Public Partners. Though defendant does not formally offer him as an expert, Lynaugh says he was engaged to "opine" on plaintiffs' ability to place a proposed amendment on the November 2025 ballot. Doc. 59-4, Lynaugh Decl., ¶ 1. In light of the deposition testimony and available information about the proponents' resources, Lynaugh believes "there is no realistic possibility" they can collect enough signatures to place an amendment on the November 2025 ballot. *Id.*, ¶¶ 12–13 (citing plaintiffs' lack of time, resources, and manpower).

Plaintiffs dispute defendant's characterization as speculation. Brown testified that the committee has interviewed potential consultants, has a plan for collecting signatures, and is "able

---

[2] Defendant has taken a preliminary position that plaintiffs' summary fails the fair-and-truthful standard. *See* Doc. 59 at PAGEID 699–700.

[3] Discovery primarily concerned the readiness of the committee backing the Protecting Ohioans' Constitutional Rights amendment, and not of the committee backing the Ohio Wrongful Conviction and Justice Reform Amendment.

7

and ready to go." Brown Dep. at 53, 58–59. Pierce testified that the committee has a budget plan and is collecting money. Doc. 59-3, Pierce Dep. at 29–31.

Despite these factual disputes, the relevant issues on remand are legal ones, as the Sixth Circuit anticipated. Plaintiffs' second motion for preliminary injunction is now fully briefed and ripe for adjudication.

### III. Standard of Review

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of justifying preliminary injunctive relief. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). A court balances four factors in considering a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).

### IV. Likelihood of Success on the Merits

#### A. The *Anderson-Burdick* Framework

The United States Constitution does not require states to create an initiative procedure. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). But when they do so, states "cannot place restrictions on its use that violate the federal Constitution." *Id.* According to plaintiffs, Ohio has violated the First Amendment by conditioning access to the initiative process on the Attorney General's certification of their summaries as fair and truthful statements of the proposed constitutional amendments. *See* O.R.C. § 3519.01(A). Courts in the Sixth Circuit examine First Amendment challenges to state election laws using the *Anderson-Burdick* framework. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992); *Daunt v. Benson*, 956 F.3d 396, 406–07 (6th Cir. 2020) (explaining the *Anderson-Burdick* test).

As a threshold matter, however, defendant proposes a departure from *Anderson-Burdick*. He argues that the fair-and-truthful review of plaintiffs' summaries does not even implicate the First Amendment. Defendant characterizes the requirement as a regulation of the lawmaking process. That is, plaintiffs' activity in submitting a summary of their proposed amendment represents an exercise of the legislative power reserved to the people. *See* Ohio Const. art. II, § 1a. Section 3519.01 should not be viewed as a restriction on political expression but as a procedural component akin to laws setting the number of signatures needed or limiting initiatives to a single subject.

8

Defendant cites as support Judge Thapar's concurring opinion in the *Brown* en banc decision, as well as authority from outside the Sixth Circuit. *See Brown*, 122 F.4th at 606 (Thapar, J., concurring) ("When initiative proponents submit their proposals for certification, they're like the legislators in the state house . . . . [W]hen the government regulates the content of initiative petitions and their summaries, it isn't regulating private speech based on content—it's regulating what sorts of laws citizens can enact."); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) (en banc); *Marijuana Pol'y Project v. United States*, 304 F.3d 82 (D.C. Cir. 2002).

If defendant is correct that this case does not implicate the First Amendment, then a court higher than this one must say so.[4] The Sixth Circuit has plainly required courts to apply the *Anderson-Burdick* framework to state election regulations such as § 3519.01. Notably, in *Thompson v. DeWine*, defendants contended that "*Anderson-Burdick* shouldn't apply to ballot initiative requirements because restrictions on the people's legislative powers (rather than political speech or voting) don't implicate the First Amendment." 959 F.3d 804, 808 n.2 (6th Cir. 2020) (per curiam). The court rejected the argument, stating that "until this court sitting en banc takes up the question of *Anderson-Burdick*'s reach, we will apply that framework in cases like this." *Id.*

Though bound to follow *Anderson-Burdick*, the Court would otherwise be inclined to consider an approach applying a diminished level of scrutiny. *See Schmitt v. LaRose*, 933 F.3d 628, 643 (6th Cir. 2019) (Bush, J., concurring) (arguing that even if the First Amendment applies to laws structuring the initiative process, a court should use rational basis review). Plaintiffs' activity involves more than ordinary petitioning or even ordinary lawmaking. They seek to amend the Ohio Constitution, the foundational document governing the state. Amendments to a constitution are of special importance and typically must satisfy heightened prerequisites because of the public's great interest in the stability of constitutional law. Having reserved for themselves the power to amend the constitution, the people of Ohio also provided a safeguard for those exercising the power. They gave the state's highest court exclusive and original jurisdiction over challenges to certain aspects of the initiative process. *See* Ohio Const. art. II, § 1g; O.R.C. § 3519.01(C). Federal courts should tread lightly before scrutinizing the state's own rules for amending its governing document.

The Court now turns to the *Anderson-Burdick* test. Substantial and sometimes competing interests are at issue when it comes to election regulations. Of "fundamental" and "vital" significance is a citizen's ability to engage in various forms of political expression, including access to

---

[4] In fairness to defendant, he recognized the Court would likely find itself obliged to apply *Anderson-Burdick*. *See* Doc. 59 at PAGEID 696.

9

the ballot. *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). Meanwhile, states have a significant interest in regulating "parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *see also Burdick*, 504 U.S. at 433 ("Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'") (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Against this backdrop, the *Anderson-Burdick* framework provides flexibility for courts to consider the relevant interests and determine if a state's chosen means of pursuing its interests unreasonably burdens an individual's rights under the First and Fourteenth Amendments. *See Green Party of Tennessee v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014).

Under *Anderson-Burdick*, a court begins by weighing "the character and magnitude of the burden the State's rule imposes" on a plaintiff's First Amendment rights against "the interests the State contends justify that burden" and considers "the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (internal quotation marks omitted). The magnitude of the burden determines the level of scrutiny. "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Id.*; *see also Thompson*, 959 F.3d at 808 (severe burdens include "exclusion or virtual exclusion from the ballot"). For regulations imposing minimally burdensome and "nondiscriminatory restrictions," courts apply rational basis review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). For regulations imposing a burden somewhere between these two extremes, courts weighs the intermediate burden against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

**B. The Burden Imposed on Plaintiffs**

The Court starts with the character and magnitude of the burden imposed on plaintiffs. Section 3519.01's fair-and-truthful review requirement might appear at first glance to be a neutral regulation of election mechanics – a step that anyone attempting to amend the constitution must complete, irrespective of the person or purpose behind the amendment. But further examination raises a red flag. Section 3519.01 expressly directs the Attorney General to review the content of the summary written by plaintiffs. Though the certification requirement fits within an overall scheme

10

governing how to place an initiative on the ballot, it authorizes the Attorney General to evaluate the substance of plaintiffs' summary.

The summary is a statement or expression of the political change for which plaintiffs advocate. Section 3519.01 requires them to compose the summary and submit it to the Attorney General for review. Upon certification, plaintiffs communicate their summary to the public by including it on petitions circulated to potential signers.[5] The summary, even if intended by the statute to be objective and fair, unavoidably conveys a political message. It signals that plaintiffs want to change the state constitution and describes how they would do it. *See Meyer v. Grant*, 486 U.S. 414, 421 (1988) ("The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change."). Section 3519.01 thus regulates plaintiffs' speech and restricts an aspect of their petitioning activity, which itself is "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* at 421–22 (footnote omitted).

The regulation is inherently content-based. The Attorney General must assess whether the summary is a fair and truthful statement of the proposed amendment. No express standards guide or restrain the Attorney General's consideration of what is fair or truthful. *Cf. New England Patriots Football Club, Inc. v. Univ. of Colorado*, 592 F.2d 1196, 1201 (1st Cir. 1979) ("What is fair is, basically, a subjective question."). The Attorney General's rejection letters commonly recited that he reviewed the summaries to determine if they contained "omissions and misstatements that, as a whole, would mislead a potential signer as the actual scope and effect of the proposed amendment." Doc. 58-3 as PAGEID 623. This confirms what would seem clear from the statute: the Attorney General reviews the substance of a summary and exercises significant discretion to reject it based on its content.

It is true that proponents who have had their summaries rejected can seek review in the Ohio Supreme Court. *See* O.R.C. § 3519.01(C). While this may provide due process protection, it does not remove the First Amendment burden. Proponents must craft, in the form of a summary, a statement of the constitutional change they desire and submit it for content-based review at the broad discretion of the Attorney General. If proponents fail and wish to challenge the denial of certification, they must pursue additional content-based examination at the broad discretion of another state governmental entity, the Ohio Supreme Court. *Cf. Schmitt*, 933 F.3d at 639 (finding

---

[5] Proponents must write the summary and later, if certified, communicate it to potential signatories regardless of whether they want to do so. It should be noted that plaintiffs do not allege they have been compelled to speak against their will.

11

that the Ohio Supreme Court's review of decisions by county boards of elections is "essentially" de novo).

Section 3519.01 on its face therefore imposes a severe burden on plaintiff's First Amendment interests. It subjects one component of plaintiffs' speech – the summary they compose and circulate to potential signers of their petition – to the state's editorial review. As even defendant acknowledges (albeit discussing a different point), the state "effectively controls the message because the Attorney General has final approval authority."[6] Doc. 59 at PAGEID 696 (internal quotation marks omitted). And the Attorney General's refusal to certify prevents plaintiffs from advancing their amendment to the next step of the initiative process.

As applied, plaintiffs' experience in having their summaries rejected multiple times exemplifies the burden. The Attorney General's reasons for rejecting the plaintiffs' attempts ranged from technical to substantive. He refused summaries based on them having duplicative language, placing a modifying phrase after a comma, not being "concise" enough, not adequately describing which courts would have venue of the right of action the amendment would create, not sufficiently explaining the amendment's impact on an award of attorney's fees to a prevailing plaintiff, and using the word "protect" in describing the amendment's purpose of protecting Ohioans' rights. *See* Docs. 58-1, 58-3, 58-4, 58-5, 58-6, 58-7. The Attorney General's written decisions establish that he did in fact review the content of the summaries and made subjective evaluations of what was fair and truthful.

The Attorney General's judgment calls over what could be misleading or confusing to potential signers led him to reject plaintiffs' summaries. *See Brown*, 122 F.4th at 623 (Kethledge, J., dissenting) ("Some eight times now, on grounds increasingly dubious, Ohio's Attorney General has refused to certify any iteration of the plaintiffs' summaries of their proposed amendment to the Ohio Constitution."). This left plaintiffs unable to begin their petitioning activity. *See id.* ("The result has been that, for about 21 months now, the plaintiffs have not been able to circulate their petitions—which is itself core political activity protected by the First Amendment."). In practical effect, each rejection caused plaintiffs to amend the content of their summary. The Attorney General's grounds for disapproval shaped the content of each successive version of the summary.

Defendant, however, argues that the end product – a summary certified to appear on petitions – represents government speech and not the speech of plaintiffs. This matters because

---

[6] Defendant's statement is inaccurate in that the Ohio Supreme Court has final authority if a committee challenges an Attorney General's adverse decision.

12

"[t]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). Defendant's argument focuses on the asserted similarity between a ballot and a petition. The state, of course, has a substantial interest in maintaining voting-day order and integrity. The state may "speak" on the ballot by including instructions on how to vote and a notice of the consequences of voting fraud. *See, e.g.*, *Kennedy v. Benson*, 119 F.4th 464, 472 (6th Cir. 2024) (Thapar, J., dissenting from the denial of rehearing en banc) ("And parts of the ballot are government speech—like instructions on how to vote."); *see also* O.R.C. § 3505.12. Defendant argues that a petition, like a ballot, is an official election document and the certified summary contained therein is government speech.

The Court finds defendant's argument to be unconvincing in light of the factors which distinguish government speech from private speech: the degree of government control, the history of the type of expression, and public perception of who is speaking. *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). The state maintains tight control over ballots, but far less so with petitions. Ballots are prepared, printed, and distributed by the state. *See* O.R.C. Chapter 3505. Petitions, though regulated in form, *see* O.R.C. § 3519.05, are produced and circulated by citizens, and the summary itself is originally written by proponents of an amendment. Historically, ballots "serve primarily to elect candidates, not as forums for political expression." *Timmons*, 520 U.S. at 363. A ballot is "not a bumper sticker," *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1016 (9th Cir. 2002), nor a "billboard for political advertising," *Timmons*, 520 U.S. at 365. Petitions have historically served at least two purposes. One is to demonstrate, by the gathering of a certain number of signatures, that a measure has a sufficient basis of support to warrant placement on the ballot. As importantly, petitioning gives proponents a natural opportunity to engage and persuade the public and thereby generate the needed basis of support. *See Meyer*, 486 U.S. at 421–22. Finally, citizens expect a certain sanctity to the polling place, free from intrusion by private speech. *See Burson v. Freeman*, 504 U.S. 191, 211 (1992) ("A long history, a substantial consensus, and simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right."). But the petition circulator and the common citizen at a town square or public market carry no such expectation. A public forum by tradition allows for "uninhibited, robust, and wide-open debate on public issues." *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (internal quotation marks omitted). Accordingly, for purposes of evaluating plaintiffs' likelihood of success on the merits, the Court finds that the certified summary is not government speech.

13

In sum, the Court concludes that Ohio's subjection of plaintiffs' summaries to fair-and-truthful review by the Attorney General imposes a severe burden on their First Amendment rights.

**C.     Strict Scrutiny**

When a state severely burdens a core political right, it faces a "'well-nigh insurmountable' obstacle to justify it." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 387 (6th Cir. 2008) (quoting *Meyer*, 486 U.S. at 425).  The court applies strict scrutiny, and the state must show that the regulation is "justified by a compelling state interest" and "narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022).

Defendant asserts an interest in maintaining the integrity of the initiative process by deterring fraud and confusion.  The state's interest goes to the reliability of petitions circulated to the public – that individuals who might sign a petition would have the ability to know exactly what they are being asked to support and to discern if the petition is genuine and would have legal effect once signed.  The state's interest in protecting the public from election-related fraud and confusion is one the Sixth Circuit has generally recognized as compelling.  *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473–74 (6th Cir. 2016) (citing cases).

The inquiry now turns to whether the fair-and-truthful certification requirement is narrowly tailored to advance the state's interest.  Defendant must demonstrate it used "the least restrictive means" to achieve its compelling interest.  *OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 784 (6th Cir. 2024).  The regulation must be "necessary . . . to meet [the state's] concerns." *Meyer*, 486 U.S. at 426.

The Court finds that defendant has not met this burden for purposes of the motion for preliminary injunctive relief.  A summary certified as fair and truthful is not necessary to ensure that potential signers can determine the nature of what they are being asked to support.  The petition itself must contain the full text of the proposed amendment.  *See* O.R.C. § 3519.05(A).  Potential signers thus already have a way to determine what the amendment would accomplish.  And they can engage in discourse with the circulator who is asking them to sign.  The amendment's full text may not be as easy to digest as a summary and the circulator might make misleading statements to win support, but our democracy relies on its citizens to determine for themselves how much research they will conduct on election-related matters and which campaign speech to believe and which to

14

discredit. We rely on the electorate to be able to sift through political speech and decide what is fair, what is truthful, and what change is desirable.[7]

As applied, the Attorney General's denials of plaintiffs' summaries reached a level of hyper-correctness which went beyond ensuring that citizens could ascertain what they were being asked to support. For instance, the Attorney General rejected plaintiffs' November 2023 summary in part because it did not explain that the amendment would apply to immunities or defenses available to government actors or "any subset thereof." Doc. 58-6 at PAGEID 652. In their March 2024 version, plaintiffs included the "any subset thereof" language, but the Attorney General still rejected it because he thought the placement of a comma made the added language confusing. Doc. 58-7 at PAGEID 661. He also rejected the March 2024 summary because it contained language that "repeats itself" regarding the statute of limitations. *Id.* In practice the Attorney General has not used the least restrictive means of examining plaintiffs' summaries. The Attorney General, one might say, has played the role of an antagonistic copyeditor, striking plaintiffs' work on technical grounds. *See Brown*, 122 F.4th at 619 (Moore, J., dissenting) (describing the Attorney General's reasons for denying certification as "petty and self-contradictory").

Finally, a summary certified as fair and truthful is not necessary to ensure that potential signers can discern if a petition is genuine. The Court will assume for argument's sake that a state certification of some sort helps signers identify a real petition. But the certification need not say the summary is a fair and truthful statement in order to achieve the purpose. The Attorney General could just as well certify that the committee had submitted the initial petition with 1,000 valid signatures and the full text of the proposed amendment. A certification that proponents had

---

[7] Two additional considerations, while not determinative, undercut defendant's position. An Ohio Supreme Court justice once expressed his belief that the summary obfuscates instead of educates: "[T]he public [should] be allowed to rely on the wording of the actual constitutional amendment, instead of a mere summary thereof. Such a summary restricts and circumvents, rather than facilitates, the people's important right to know what they are actually petitioning for." *State ex rel. Tulley v. Brown*, 29 Ohio St. 2d 235, 240, 281 N.E.2d 187, 191 (Ohio 1972) (Brown, J., dissenting). In *Tulley* the Ohio Supreme Court declined to consider the constitutionality of "the overall concept of the Attorney General's statutory power of preliminary examination concerning proposed constitutional amendments under R.C. Chapter 3519." *Id.*, 29 Ohio St. 2d at 236–37, 281 N.E.2d at 189 (per curiam).

Additionally, defendant himself has put forth opinion evidence that "[o]nly rarely will [a person] wish to read the summary for informational purposes." Lynaugh Decl., ¶ 17. If true, then summaries would appear to be an ineffective means of accomplishing the state's purpose.

15

satisfied a basic procedural requirement would be equally effective in giving potential signers confidence in the genuineness of the petition being presented to them.

The Court concludes that the fair-and-truthful certification requirement is not narrowly tailored to achieve a compelling state interest. Thus, plaintiffs have carried their burden of demonstrating a likelihood of success on the merits under the *Anderson-Burdick* framework.

### D. Sovereign Immunity

Defendant contends that plaintiffs are unlikely to succeed on their claim regarding the rejected March 5, 2024 summary because it does not fall within the *Ex parte Young* exception to Eleventh Amendment immunity. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Ex parte Young*, 209 U.S. 123 (1908)). The *Ex parte Young* exception permits a federal court to "issue prospective injunctive and declaratory relief compelling a state official to comply with federal law," but it does not "extend to any retroactive relief." *Id.* at 507–08. Defendant argues that any relief granted here would be backward-facing because it would entail reversing the Attorney General's March 14, 2024 decision that the summary was not fair and truthful.

The Court disagrees. Plaintiffs have not asked the Court to reverse or set aside the Attorney General's past decision. Rather, they seek relief to address an ongoing constitutional injury – that of their inability, due to the Attorney General's actions, to circulate to the public their petition with the summary containing their desired language. Injunctive relief would be forward-looking, requiring the Attorney General to advance plaintiffs' petition to the Ballot Board.

## V. Remaining Preliminary Injunction Factors

When plaintiff establishes a likelihood of success on the merits in a First Amendment case, the other preliminary injunction factors "follow in favor of granting the injunction." *ACLU of Ky. v. McCreary County*, 354 F.3d 438, 462 (6th Cir. 2003); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); *Bays*, 668 F.3d at 819 (stating that in First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits" because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action") (internal quotation marks and alterations omitted).

Defendant nonetheless argues that plaintiffs will not suffer irreparable injury absent injunctive relief. He cites evidence developed in discovery, *see supra* Part II.E, tending to show that plaintiffs lack the time, resources, and manpower to collect the 413,487 signatures needed to put

16

their amendments on the November 2025 ballot. Not granting an injunction would cause no real harm because plaintiffs lack a realistic hope of making the November 2025 ballot anyhow. *See* Doc. 59 at PAGEID 705 (arguing that "it is Plaintiffs' conduct, not the Attorney General's review, that will cause them to miss this year's election").

The Court rejects this argument because it overlooks the injury to plaintiffs' access to the initiative process. Plaintiffs ultimately might not gather enough signatures, but they have a protectible First Amendment interest in having the opportunity to try. *See Meyer*, 486 U.S. at 421–23; *Schmitt*, 933 F.3d at 641 (examining the burden imposed by Ohio's initiative regulations on plaintiffs' access to the ballot). Though defendant tries to minimize the practical impact of denying injunctive relief, "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

## VI. Conclusion

Accordingly, plaintiffs' motion for preliminary injunctive relief (doc. 40) is GRANTED. The Court enjoins the Ohio Attorney General from enforcing the requirement of a fair-and-truthful examination under O.R.C. § 3519.01(A) before certifying plaintiffs' March 5, 2024 summary of the Protecting Ohioans' Constitutional Rights amendment and plaintiffs' summary of the Ohio Wrongful Conviction and Justice Reform Amendment, *see* Doc. 47 at PAGEID 549. The Attorney General is further ordered to immediately certify plaintiffs' March 5, 2024 petition to the Ohio Ballot Board.

As part of the Court's equitable authority to mold injunctive relief to meet "changed conditions," *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932), the Court allows plaintiffs to update the March 5, 2024 summary to reflect the correct section number that an amendment would add to Article I of the Ohio Constitution (section 23 instead of section 22) and to remove reference to a now-past effective date of January 1, 2025.

The Court waives the posting of security under Rule 65(c), Fed. R. Civ. P., because the grant of relief does not pose a risk of economic harm to defendant. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (district courts have discretion to waive security).

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: March 14, 2025