IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CYNTHIA BROWN, et al., | : |
| | : |
| Plaintiffs, | : Case No. 2:24-cv-01401 |
| | : |
| v. | : Judge James Lowell Graham |
| | : |
| DAVID YOST, in his official capacity as Ohio Attorney General, | : Mag. Judge Elizabeth Preston Deavers |
| | : |
| Defendant. | : |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

When the Sixth Circuit vacated this Court's stay of the preliminary injunction, it did so in large part because of what it perceived to be evidentiary failures. For instance, the stay panel wrote that the Attorney General had not offered historical support explaining how petition summaries fall within the government-speech doctrine. And when assessing the burden his fair-and-truthful review puts on Plaintiffs under *Anderson-Burdick*, the Court expressed doubt as to whether he could justify the law as necessary to combat election fraud. So, when the Attorney General moved for summary judgment on remand, he submitted ample evidence demonstrating the State's historical control of circulating petitions as well as its current petition practices. Plaintiffs do not seriously grapple with that evidence; they offer unsupported conclusions and rote reference to the stay panel's opinion instead. But the Attorney General's summary judgment evidence was not before the stay panel, and Plaintiffs cannot avoid it with a sidestep.

Nor can they avoid the conclusions that the record on summary judgment compels. Certified summaries are government speech, the fair-and-truthful review is a minimal burden on

1

initiative petitioners, and the form of initiative petitions bears no resemblance to the private speech regulated in *Meyer v. Grant*. Most importantly, the record confirms that the Attorney General is entitled to summary judgment.

## LAW AND ARGUMENT

**I.  All record evidence confirms a certified summary is government speech.**

None of the record evidence—be it Plaintiffs' deposition testimony, the historical evidence, or evidence of contemporary petition practices—supports a finding that Plaintiffs' petition summary is their private political speech. Rather, all evidence points in the opposite direction. History reflects consistent State control over circulating petitions since the 1912 referendum scandals—control that vindicates the State's interests in combatting fraud and informing the electorate. Plaintiffs' own testimony bears this out: Because a certified summary bearing the State's imprimatur serves an informative rather than persuasive purpose, petition circulators do not treat it as their own political advocacy, and the public is unlikely to perceive it that way. Thus, all three government-speech factors set forth in *Shurtleff v. City of Boston* fall in the Attorney General's favor. *See* 596 U.S. 243, 252 (2022).

**A.  Plaintiffs fail to rebut the Attorney General's historical evidence.**

When the Sixth Circuit stay panel rejected Attorney General Yost's government-speech argument, it did so, in part, because it believed the Attorney General had not introduced sufficient evidence to explain "how summaries of proposed ballot initiatives have historically conveyed government messages." *Brown v. Yost*, 133 F.4th 725, 734 (2025). Thus, when the parties filed their motions for summary judgment on remand, the Attorney General submitted extensive historical evidence. Doc. 77 at PageID 1848–56. That evidence documents a century-old process by which the State has closely controlled circulating petitions—including their summaries—in order to inform the electorate and deter petition fraud.

Plaintiffs cannot rebut that evidence. So, they instead tell us not to believe our lying eyes. *See* Doc. 79 at PageID 2463 ("There is simply no historical evidence that [summaries] have ever been used to convey government messages.") (quotation marks omitted). Disregard the long history of control by the Attorney General, Plaintiffs say: A petition summary is private speech because "[s]ummaries and titles have always . . . been written by the petitioners themselves." *See id.* at PageID 2462. This is sleight of hand, meant to distract from the well-established principle that that the government's "assistance from nongovernmental sources in developing specific messages" does not transform its speech into private speech. *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005).

Ohio's solicitation of summaries from petitioners is a good example of this principle in action. Recall that most of a circulating petition's elements, including the main heading, the Attorney General's certification, the prosecution notice, and the circulator's declaration, are dictated by statute and have been since 1931. Doc. 77-1 at PageID 2356–59. In other words, the State has historically curated the form and content of a circulating petition: it drafts much of the petition's language and controls the typeface and order in which the language appears. Petitioners may not vary these elements to convey a private message.

Initiative petitioners—then and today—draft only the summary, title, and of course, the proposed amendment or statute itself. Doc. 77-1 at PageID 2356–59; *see also* Ohio Rev. Code § 3519.05(A). Plaintiffs say these components are therefore private political speech, particularly because petitioners aim to convince the public to enact the proposed amendment. But Plaintiffs overlook the key difference between the title and summary on the one hand, and the amendment or statute's text on the other. The title and summary must be reviewed and certified by the Attorney General as fair and truthful; the text of the proposed amendment, in contrast, is reviewed and

approved by no one. Aside from the proposed amendment itself, the State thus controls every other aspect of a circulating petition, either through compulsory language, Ohio Rev. Code § 3519.05, or through review and approval, Ohio Rev. Code § 3519.01(A). Whether the proposed amendment's text qualifies as private political speech is immaterial here, but it seems unquestionable that Plaintiffs would be on stronger footing were that their argument. Their position here—that language the State closely controls to inform the public and deter fraud is conveying their private political message—is far weaker. Instead, the circulating petition conveys this message from the State: "This is a petition to amend the Constitution that the State recognizes as official, and here is a fair description of what the amendment will do if enacted."

To drive home the historical support for the Attorney General: Petition summaries have *never* existed in Ohio law independently of the Attorney General's review. Ever since petition summaries first appeared in the Revised Code, they appeared alongside a process by which the Attorney General could review and say something about them. Doc. 77-1 at PageID 2319. ("Whoever proposes to file an initiative or referendum petition may submit to the attorney general a fair and impartial synopsis of such proposed law or amendment and if such synopsis is a truthful statement of the contents and purpose of such proposed law or amendment he shall so certify."). This bears repeating: since their inception, the purpose of petition summaries has been for the Attorney General to review them and either certify them as fair and truthful or not. They have never existed as an advocacy tool for petitioners to use persuasively; they have always been tethered to the Attorney General's review and thus controlled by the State. This history of control weighs heavily in favor of finding circulating petitions, including their summaries, to be government speech.

### B. Courts routinely find that speech authored by private parties qualifies as government speech when the government completely controls the final product.

Against a century's worth of plenary State control over petition summaries, Plaintiffs offer one fact: petitioners draft the summaries. But the case law shows that private authorship does not transform a circulating petition into private speech.

Take, for instance, *Cambridge Christian School, Inc. v. Florida High School Athletic Ass'n, Inc.*, 115 F.4th 1266 (11th Cir. 2024). *Cambridge Christian* involved a private Christian high school that wished to use a stadium's public address system to lead a prayer before a state championship football game. *Id.* at 1274. After the Florida High School Athletic Association refused, the school sued. The athletic association argued that the pregame announcements were government speech, and the Eleventh Circuit agreed. *Id.* at 1295. The court rejected the school's argument that "scripted promotional messages from sponsors . . . transform the pregame announcements speech into private speech," because of the athletic association's final approval authority: the sponsor messages would not be read unless "approved and added to the PA script by the [athletic association]." *Id.* at 1290. The athletic association thus "effectively controlled" the announcements' messaging, and the pregame announcements did not become private speech because they were solicited in part from private parties. *Id.*

Consider, in contrast, *Matal v. Tam*, 582 U.S. 218 (2017). In *Matal*, the plaintiff applied to trademark the name of his rock band, which was also a "derogatory term for persons of Asian descent" that the band sought to "reclaim." *Id.* at 223, 228. The Court held that trademarks were private and not government speech. In terms of government control, the Court reasoned that the government doesn't "dream up" or "edit marks submitted for registration." *Id.* at 235. To that point, the Court highlighted the Patent and Trademark Office's hands-off approach to registration: if a

5

PTO examiner finds that a mark is eligible for registration per the Lanham Act's viewpoint-neutral requirements, registration is mandatory and no senior official reviews the examiner's decision. *Id.*

This case resembles *Cambridge Christian,* not *Matal.* Unlike in *Matal*, the State *does* exercise editorial control over the speech at issue and has done so for almost a century. Indeed, a petition may not be circulated for ballot-placement signatures until the Attorney General approves the summary. Ohio Rev. Code § 3519.01(A). And both the Sixth Circuit panel and Plaintiffs agree that, ultimately, the Attorney General has final authority over petition summaries. *See Brown*, 133 F.4th at 733 ("Effectively, the law allows the Attorney General to control the content of that petition. . . . This is the very definition of editorial control."); *see also* Doc. 79 at PageID 2476 (the Attorney General has "full editorial control" over petition summaries).

Supreme Court precedent tells us that it is the State speaking—not private actors—when the State "has effectively controlled the messages [conveyed]" by, as the Attorney General does for petition summaries, "exercising final approval authority over their selection." *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.* ("*SCV*"), 576 U.S. 200, 200 (2015) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 473 (2009) (alteration in original)); *see also Johanns*, 544 U.S. at 550. Everyone, including the Sixth Circuit stay panel and Plaintiffs, agrees: the Attorney General's review gives him effective control over petition summaries regardless of who drafts them. Effective control is why the Eleventh Circuit held in *Cambridge Christian* that the pregame announcements were government speech despite being solicited, in part, from the public. 115 F.4th at 1290 (quoting *Johanns*, 544 U.S. at 550). And it is why the Court should hold the same for petition summaries here.

When it comes to control, however, Plaintiffs want to eat their cake and have it, too. When arguing that summaries are private speech, Plaintiffs disclaim State control. Summaries, they say,

6

are "drafted by initiative proponents with no input, involvement[,] or control by the State." Doc. 79 at PageID 2460. Elsewhere, when they believe it benefits them, they admit State control. Indeed, according to Plaintiffs, the General Assembly gave the Attorney General "*full* editorial control" over petition summaries, which they say runs afoul of the *Anderson-Burdick* doctrine. *Id.* at PageID 2476 (emphasis added). Plaintiffs cannot credibly argue that the State does not control petition summaries for purposes of government speech, but does control them for purposes of *Anderson-Burdick*. The Court should not be persuaded by Plaintiffs' doublespeak. There is a long history of State control over the content of circulating petitions and their summaries, and it weighs in favor of finding them to be the State's speech.

### C. Plaintiffs failed to rebut evidence that the public does not perceive—nor do petition circulators use—petition summaries as private speech.

In addition to historical evidence of state control over petition summaries, the Attorney General cited evidence in the record confirming that the public-perception element falls in his favor as well. Doc. 77 at PageID 1856–58. As with the historical evidence, Plaintiffs fail to grapple with this evidence as well. Doc. 79 at PageID 2465. Instead, they handwave the record away by simply concluding that the Attorney General does not "endors[e] any message" contained in the summary. *Id.* However, they do not meaningfully rebut the fact that, like the license plates in *SCV*, the summary is surrounded by language drafted and required by the State. Doc. 77 at PageID 1857–58. Their halfhearted attempt to distinguish *SCV*—on the basis that license plates are governmental documents like IDs, Doc. 79 at PageID 2464—does not persuade. Initiative petitions, too, appear to the public like official governmental documents. As the Attorney General's motion explains, the legal effects official circulating initiative petitions carry make the public especially likely to perceive them as government speech. Doc. 77 at PageID 1856–57. Plaintiffs fail to address those legal-effect arguments at all.

Further, Defendant pointed to evidence that Plaintiffs do not use the certified summary to advocate for their initiatives. *See* Doc. 77 at PageID 1857, 1866. Plaintiffs cannot muster any affirmative evidence to the contrary. They argue instead that the record is devoid of evidence that "the summaries they drafted were *not* meant to be persuasive." Doc. 79 at PageID 2466 (emphasis added). But summary judgment does not ask Defendant to prove a negative*, see Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021), and there is no evidence that the summaries are political speech. Plaintiffs cannot avoid that result by turning the summary judgment burden on its head; as explained, the record establishes that the public is likely to perceive a circulating petition, including its summary, as government speech. Thus, all three *Shurtleff* factors weigh in the Attorney General's favor.

Lastly, a brief word on *Meyer v. Grant*, 486 U.S. 414 (1988). Because a circulating petition—including its summary—is government speech outside the First Amendment's protections, *Meyer* does not apply. That case applied heightened scrutiny to laws regulating private speech within the initiative circulation process. But the fair-and-truthful review does not regulate the one-on-one exchange between petitioners and petition signers. It simply dictates the form and contents of the official circulating petition. *Meyer* has nothing to say about the State's ability to dictate the form of its own petitions. As explained above, even if the form of a circulating petition could somehow rise to the level of the core political speech described in *Meyer*, there is no evidence in the record that the certified summaries actually do so.

The evidence in the record instead confirms that the certified summary is the Attorney General's speech. And because it is government speech, the certified summary cannot also qualify as Plaintiffs' core political speech under *Meyer*. *See, e.g.*, *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 329 (1st Cir. 2009) (finding no First Amendment violation when town refused to provide

hyperlinks to websites containing plaintiffs' "partisan political speech" because the website constituted government speech); *Advance Colo. v. Griswold*, 99 F.4th 1234, 1240 n.5 (10th Cir. 2024) (refusing to classify ballot titles as plaintiffs' political speech because the titles were government speech). The government-speech doctrine does not give way just because the certified summaries appear on an official elections document. *Kidwell v. City of Union*, 462 F.3d 620, 625–26 (6th Cir. 2006) (rejecting plaintiff's argument that the government-speech doctrine should be less broad in the elections context). The certified summaries are government speech, so they cannot be core political speech under *Meyer*, and Attorney General is entitled to summary judgment as a result.

**II.     Plaintiffs' facial claim under *Anderson-Burdick* fails as a matter of law.**

    **A.  Editorial control is not a severe burden under the *Anderson-Burdick* doctrine, and the Court should decline to extend the doctrine here.**

Plaintiffs seek to topple the fair-and-truthful review through a startling extension of the *Anderson-Burdick* doctrine. Plaintiffs do not believe they need to prove exclusion or virtual exclusion from the ballot to show a severe burden under *Anderson-Burdick*. Instead, they ask this Court to find that the Attorney General's "editorial control" over petition summaries, standing alone, imposes a severe burden. This is true, they tell us, regardless of the effect on petitioners' ability to access the ballot. Indeed, access to the ballot is not even *relevant*, Plaintiffs say. *See* Doc. 79 at PageID 2471 ("[W]hether some petitioners might have succeeded in winning the Attorney General's certification is not relevant to resolving Plaintiffs' First Amendment complaint."). Editorial control, on its own, suffices.[1]

---

[1] Plaintiffs' current position departs from their earlier arguments on this issue. In their motion for preliminary injunction, Plaintiffs tethered the burden under *Anderson-Burdick* to ballot access. The Attorney General's fair-and-truthful review, they argued then, imposed a severe burden because

Plaintiff's position unmoors *Anderson-Burdick* from its traditional bearings. *Anderson-Burdick* assesses burdens on ballot access and the right to vote. A state's law constitutes a severe burden under *Anderson-Burdick* because it prevents someone from accessing or casting a ballot. Just consider the doctrine's namesake cases, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Anderson* challenged an Ohio statute setting an early filing deadline for independent candidates. The deadline excluded independent candidates from the ballot, depriving voters of the ability to elect an independent candidate who could serve as a rallying point for "like-minded citizens" on the issues of the day. *Id*. at 787–88. *Burdick* involved a ban on write-in voting, which eliminated one avenue for accessing the ballot, while leaving others, *e.g.*, party primaries or designated nonpartisan ballots, available. 504 U.S. at 435–36. The touchstone of each case was *ballot access*. The Court asked whether the States' laws severely restricted candidates' or voters' access to the ballot and matched the level of scrutiny to the ballot-access burden the laws imposed. *Anderson* was unlawful exclusion from the ballot; *Burdick* was a moderate burden on ballot access that could be justified by other regulatory interests.

For the next thirty years after *Burdick*, federal courts asked how the challenged law affected access to the ballot.[2] If the burden was severe, strict scrutiny resulted. The Sixth Circuit has said so many times over:

- "At bottom, a severe burden excludes or virtually excludes electors or initiatives from the ballot." *Thompson v. DeWine*, 976 F.3d 610, 617 (6th Cir. 2020) (quoting *Thompson v. DeWine*, 959 F.3d 804, 809 (6th Cir. 2020)).

---

they were unable to begin the signature-gathering process that would qualify their petition for the ballot. *See, e.g.*, Doc. 40-1 at PageID 463.
[2] *Anderson* also assessed the burden on "the right of individuals to associate for the advancement of political beliefs." 460 U.S. at 787. Plaintiffs do not attempt to quantify the fair-and-truthful review's burden on that right; they say that editorial control suffices.

- "But when States impose severe restrictions on the right to vote, such as poll taxes or limiting access to the ballot, strict scrutiny applies." *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020).

- "The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019) (quoting *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016)).

- "In deciding this claim, the district court properly applied the *Anderson-Burdick* test, which applies strict scrutiny to a State's law that severely burdens ballot access and intermediate scrutiny to a law that imposes lesser burdens." *Esshaki v. Whitmer*, 813 F. App'x 170, 171 (6th Cir. 2020) (citations omitted).

But now, Plaintiffs ask this Court to conclude that ballot access is not even relevant when assessing the burden. Rather, Plaintiffs say that state control alone constitutes a severe burden.

This would turn *Anderson-Burdick* inside out. The doctrine has always accepted as a given that States *must* control elections. In 1974, the Supreme Court observed that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."). The *Anderson-Burdick* doctrine developed as a method to determine which methods of state control unconstitutionally impeded access to the ballot. To hold that the mere existence of state control—editorial[3] or otherwise—severely burdens plaintiffs would extend *Anderson-Burdick* far beyond its traditional scope. The Court should decline Plaintiffs' invitation to expand the doctrine here.

---

[3] Whether the existence of editorial control, standing alone, could trigger heightened scrutiny under First Amendment doctrines other than *Anderson-Burdick* (or *Meyer v. Grant*) is not before this Court.

11

**B. Because the fair-and-truthful review imposes only a limited burden on petitioners, it survives Plaintiffs' facial challenge.**

Instead, the Court should hew to the traditional *Anderson-Burdick* analysis: it should consider whether the Attorney General's fair-and-truthful review severely burdens petitioners by excluding them from the ballot. And because this is a facial challenge, the Court should consider the burden on *all petitioners. See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 631 (6th Cir. 2016). Plaintiffs point to 27 rejected petition summaries to support their argument that the fair-and-truthful review results in a severe burden. Doc. 79 at PageID 2471. But they put no further evidence in the record of the "magnitude of the burden" on these petitioners. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008) (plurality op.).

Of course, many of the 27 cleared the fair-and-truthful review on their second or third attempts. Doc. 77 at PageID 1861, 2022–2281. Of the dozen or so who never obtained approval to circulate a petition, Plaintiffs offer no evidence that the fair-and-truthful review severely burdened them. We don't know whether these petitioners abandoned their petitioning efforts because of the fair-and-truthful review or for some other, unconnected reason. Perhaps the petitioners ran out of money; perhaps they decided to lobby the General Assembly in lieu of pursuing direct democracy; perhaps they never intended to circulate a petition at all but submitted a proposed petition to the Attorney General to drum up publicity. Or perhaps they, like Plaintiffs here, believed they would never obtain the Attorney General's approval and therefore abandoned their petitions. The possibilities are legion, but the "record says virtually nothing about the difficulties faced" by these petitioners. *Crawford*, 553 U.S. at 201. As in *Crawford*, the record thus offers no basis to "conclude that the statute imposes 'excessively burdensome requirements'" on anyone. *Id*. at 202 (quoting *Storer*, 415 U.S. at 738).

Without evidence of a severe burden, the State's "important regulatory interests" in the challenged law suffice. *Kowall v. Benson*, 18 F.4th 542, 546 (6th Cir. 2021). Here, Defendant articulated interests in preventing fraud, avoiding voter confusion, and preserving the fairness of the elections process. Doc. 77 at PageID 1862–63. Plaintiffs accept that Defendant has an interest in preventing petition fraud. They dispute, however, that the fair-and-truthful review sufficiently advances this interest. Plaintiffs point to the other petition-related reforms introduced after the "dismal failure" of Ohio's earliest referendum efforts and contend that these reforms adequately protect the State's interests. Doc. 79 at PageID 2474. But the State's prerogative to root out election fraud has never been confined to "the most blatant and specific attempts to impede elections." *Burson v. Freeman*, 504 U.S. 191, 207 (1992). Historical evidence shows that fraudsters misrepresented petition contents to induce signatures. Doc.77-1 at PageID 2312 ("[S]ome solicitors obtained signatures by misrepresenting the contents of the petition, by stating, for example, that it was a petition for the benefit of working men or to secure increased pensions."). So, the State decided to eliminate this opportunity to commit election fraud.

The certified summaries also further the State's interest in avoiding voter confusion. Plaintiffs do not dispute the existence of this interest. Nor do they introduce any evidence that the Attorney General's review has not advanced it. For the 27 rejections identified by Plaintiffs, a rejection letter carefully pinpointed each summary's deficiencies and explained why it would mislead would-be signers. Plaintiffs do not argue that the Attorney General got it wrong any of the 27 times. Stated differently, there is no evidence in the record that the Attorney General's interest in avoiding voter confusion failed to justify any of his rejections.

This failure of proof cannot sustain facial relief. *See Crawford*, 553 U.S. at 200 (finding no facial violation when the record failed to quantify the "portion of the burden imposed on [voters]

13

that is fully justified"). Facial invalidation is strong medicine," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), and it requires a "heavy burden of persuasion." *Crawford*, 553 U.S. at 200. Here, Plaintiffs have not identified a substantial number of unconstitutional applications that would call for Ohio Rev. Code § 3519.01's facial invalidation. Their facial challenge therefore fails as a matter of law.

A final point: Plaintiffs contend that their as-applied claim is "uncontested" because Defendant did not move for summary judgment on the as-applied claim under *Anderson-Burdick*. Doc. 79 at PageID 2459. Defendant did not move for summary judgment on the as-applied claim under *Anderson-Burdick*, but he certainly contests the as-applied claim. He argues that the First Amendment does not apply because the certified summary is his own speech. Further, Defendant preserves for appeal his argument that the First Amendment does not apply to lawmaking-process statutes like Ohio Rev. Code § 3519.01(A). Should Defendant ultimately prevail on either argument, Plaintiffs' as-applied claim would fail.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment in favor of the Attorney General.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Stephen P. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)
ANN YACKSHAW (0090623)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

14

                                      Tel: 614-466-2872 | Fax: 614-728-7592
                                      Stephen.Tabatowski@OhioAGO.gov
                                      Ann.Yackshaw@OhioAGO.gov

*Counsel for Defendant David Yost*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing. Parties have access to this filing through the Court's system.

                                      */s/ Stephen P. Tabatowski*
                                      STEPHEN P. TABATOWSKI (0099175)
                                      Assistant Attorney General